HARRISON J. FRAHN IV (BAR NO. 206822)
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002
hfrahn@stblaw.com

BRUCE D. ANGIOLILLO (*pro hac vice* application pending)
PAUL C. GLUCKOW (*pro hac vice* application pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502
bangiolillo@stblaw.com
pgluckow@stblaw.com

*Attorneys for Defendants/Respondents*
*Blackhawk Parent LLC and*
*EOP Operating Limited Partnership, LP*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| WARREN E. SPIEKER, JR., DENNIS E. SINGLETON, JOHN K. FRENCH, BRUCE E. HOSFORD, BLAKE FAMILY TRUST, GREGG R. DAUGHERTY, JOHN G. DAVENPORT, JAMES C. EDDY, JOHN A. FOSTER, DONALD S. JEFFERSON, VINCENT D. MULROY, RICHARD L. ROMNEY, JILL T. SCHNUGG, PETER H. SCHNUGG, JOHN B. SOUTHER, JR., CRAIG G. VOUGHT and JOEL BENOLIEL, | Case No. C 07-03001-RMW |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS/PETITIONERS' PETITION TO COMPEL ARBITRATION** |
| Plaintiffs/Petitioners, | |
| v. | **Date:   August 10, 2007**<br>**Time:   9:00 A.M.**<br>**Judge:  Ronald M. Whyte** |
| BLACKHAWK PARENT LLC, a Delaware limited liability company, and EOP OPERATING LIMITED PARTNERSHIP, a Delaware limited partnership, | |
| Defendants/Respondents. | |

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES     Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

**Table of Contents**

Page

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS ....................................................................................4

APPLICABLE LEGAL STANDARDS.......................................................................8

ARGUMENT .....................................................................................................9

I.    THE PETITION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
      JURISDICTION ..............................................................................................9

      A.    Petitioners Fail To Plead Diversity Jurisdiction .....................................10

      B.    Respondent EOP Is Not Diverse From Petitioners ..................................12

II.   THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS LACK
      STANDING .................................................................................................12

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER BLACKHAWK
      PARENT ....................................................................................................15

IV.   VENUE IS NOT PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA.........16

V.    NEITHER THE ISSUE OF INTERPRETING THE TERM "INDEPENDENT" NOR
      THE ISSUE OF DETERMINING THE LOCATION FOR ANY ARBITRATION IS
      PROPERLY BEFORE THIS COURT ..................................................................17

VI.   THE PETITION ALSO FAILS ON THE MERITS......................................................20

CONCLUSION.................................................................................................22

# Table of Authorities

Page

## CASES

*Abramoff v. Shake Consulting, L.L.C.*,
  288 F. Supp. 2d 1 (D.D.C. 2003) ...................................................................17

*Aerojet-General Corp. v. Am. Arbitration Ass'n*,
  478 F.2d 248 (9th Cir. 1973)........................................................................18

*AHS New Mexico Holdings, Inc. v. Healthsource, Inc.*,
  No. Civ.A. 2120-N, 2007 WL 431051 (Del. Ch. Feb. 2, 2007)....................21, n. 6

*Allstate Ins. Co. v. Hughes*,
  358 F.3d 1089 (9th Cir. 2004)......................................................................10

*American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*,
  362 F.3d 136 (1st Cir. 2004) ...........................................................10, 11, 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) .....................................................................................19

*Barclay Square Props. v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis*,
  893 F.2d 968 (8th Cir. 1990)..................................................................10, 12

*Barragan v. Wash. Mut. Bank*,
  No. C 06-01646-CRB, 2006 WL 2479125 (N.D. Cal. Aug. 28, 2006)...........18, 20

*Blake v. Dierdorff*,
  856 F.2d 1365 (9th Cir. 1988).....................................................................21

*Carden v. Arkoma Associates*,
  494 U.S. 185 (1990) ...............................................................................11, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)................................................................18, 19

*City of San Jose v. Price Waterhouse*,
  No. 91-16489, 1993 WL 83495 (9th Cir. Mar. 23, 1993) ...........................21

*Colt's Mfg. Co. v. Devteck Corp.*,
  961 F. Supp. 382 (D. Conn. 1997) ..............................................................13

*Concat LP v. Unilever, PLC*,
  350 F. Supp. 2d 796 (N.D. Cal. 2004)............................................................9

*Container Recovery, Inc. v. Shasta Northwest, Inc.*,
  No. 05-1749-PK, 2007 WL 1724937 (D. Or. June 11, 2007)........................21

*Doctor's Assocs., Inc. v. Hollingsworth*,
  949 F. Supp. 77 (D. Conn. 1996) ..................................................................9

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES        Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

- ii -

*Friday v. American Oil Corp.*,
No. Civ.A. 01-1598, 2006 WL 897744 (W.D. Pa. Apr. 6, 2006) ...........................................9

*Gladstone Realtors v. Vill. of Bellwood*,
441 U.S. 91 (1979) ...........................................................................................................13

*Green Tree Fin. Corp. v. Bazzle*,
539 U.S. 444 (2003) .........................................................................................................18

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005) .............................................................................................16

*Hartford Accident & Indem. Co. v. Equitas Reins. Ltd.*,
200 F. Supp. 2d 102 (D. Conn. 2002) ........................................................................13, 14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .....................................................................................................18, 20

*In re Ford Motor Co./Citibank (South Dakota), N.A.*,
264 F.3d 952 (9th Cir. 2003) ..............................................................................................9

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003) ...................................................................................16, 17

*John Wiley & Sons v. Livingston*,
376 U.S. 543 (1964) .........................................................................................................20

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) ......................................................................................11, 12

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) ......................................................................................10, 11

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) ...........................................................................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .........................................................................................................10

*Kuntz v. Lamar Corp.*,
385 F.3d 1177 (9th Cir. 2004) .....................................................................................10, 12

*Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*,
314 F. Supp. 2d 1045 (D. Or. 2004) ...................................................................................8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .........................................................................................................13

*McCarthy v. Providential Corp.*,
No. C 94-0627, 1994 WL 387852 (N.D. Cal. Jul. 18, 1994).................................................9

*McGann v. Ernst & Young*,
102 F.3d 390 (9th Cir. 1996).............................................................................................21

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES     Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

- iii -

*McNutt v. Gen. Motors Acceptance Corp. of Indiana*,
    298 U.S. 178 (1936) ...................................................................................................9

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...............................................................................................18, 19

*PaineWebber, Inc. v. Faragalli*,
    61 F.3d 1063 (3d Cir. 1995) ....................................................................................13

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .................................................................................15

*Quinn v. McGraw-Hill Cos.*,
    168 F.3d 331 (7th Cir. 1999) ...................................................................................11

*Salvadori v. Option One Mortgage Corp.*,
    420 F. Supp. 2d 349 (D.N.J. 2006) ...........................................................................9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .............................................................................15, 16

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) .................................................................................15

*Strawbridge v. Curtiss*,
    7 U.S. (3 Cranch) 267 (1806) ............................................................................10, 12

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
    971 F.2d 401 (9th Cir. 1992) ...................................................................................20

*Trustmark Ins. Co. v. Fire & Casualty Ins. Co. of Conn.*,
    No. 02 C 0934, 2002 WL 832567 (N.D. Ill. May 2, 2002) ........................18, 19, 21

*Ultimate Creations, Inc. v. Wright*,
    No. CV 05-3713-PHX-MHM,  2006 WL 2547324 (D. Ariz. Aug. 28, 2006) ..........16

*Vesta Fire Ins. Corp. v. Insurance Ventures, Inc.*,
    No. 6204CV0296GEBPAN, 2006 WL 314488 (E.D. Cal. Feb. 9, 2006) .................21

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995) .....................................................................................17

*Ytuarte v. Gruner & Jahr Printing and Pub'g Co.*,
    935 F.2d 971 (8th Cir. 1991) ...................................................................................15

## STATUTES

28 U.S.C. § 1332 ...................................................................................................2, 9, 11

9 U.S.C. § 4 ....................................................................................................................12

1

## **OTHER AUTHORITIES**

2   *Largest Firms Grow*, 12-98 J. Accountancy 16 (Dec. 1998) ......................................................21

3   Restatement (Second) of Contracts § 202(3)(a) (1981) ............................................................20

4   Securities Exchanges Audit Requirements, 15 U.S.C.A. § 78j-1(l) (2002) ................................21

5   William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure
Before Trial § 4:315 (2007) ...................................................................................................16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants/Respondents Blackhawk Parent LLC ("Blackhawk Parent") and EOP

2   Operating Limited Partnership ("EOP") (collectively "Respondents") respectfully submit this

3   Memorandum of Points and Authorities in opposition to the petition to compel arbitration

4   ("Petition" or "Pet.") of Plaintiffs/Petitioners Warren E. Spieker, Jr., Dennis E. Singleton, John K.

5   French, Bruce E. Hosford, Blake Family Trust, Gregg R. Daugherty, John G. Davenport, James C.

6   Eddy, John A. Foster, Donald S. Jefferson, Vincent D. Mulroy, Richard L. Romney, Jill T.

7   Schnugg, Peter H. Schnugg, John B. Souther, Jr., Craig G. Vought and Joel Benoliel (collectively

8   "Petitioners").

9                              **PRELIMINARY STATEMENT**

10    As will be demonstrated at the arbitration that Petitioners seem determined to delay

11   and manipulate, Petitioners' underlying claim is entirely without merit because Petitioners'

12   alleged tax liabilities were self-inflicted and do not trigger any indemnification obligation by

13   Respondents.  Like Petitioners' underlying claim, the Petition itself is fatally flawed and should be

14   dismissed with dispatch.

15    In 2001, EOP acquired Petitioners' Spieker Properties, L.P. for in excess of $7

16   billion (the "Spieker Transaction") and Petitioners became limited partners of EOP.  In a tax

17   protection agreement ("TPA") entered into in connection with that transaction, EOP agreed not to

18   "directly or indirectly sell, exchange, or otherwise dispose of" certain identified properties (the

19   "Protected Properties") and further agreed to pay certain taxes incurred as a result of any such

20   disposition.

21    In November 2006, affiliates of The Blackstone Group ("Blackstone") and Equity

22   Office Properties Trust ("EOPT"), the general partner of EOP, announced that they had entered

23   into an agreement whereby Blackstone would acquire EOPT (the "Blackstone Transaction").  In

24   early January 2007, Respondents provided Petitioners with a Confidential Election Memorandum

25   explaining that Petitioners, as limited partners in EOP, could exchange their limited partnership

26   units for cash consideration or remain limited partners in EOP.  In late January 2007, certain of the

27   Petitioners wrote to Respondents claiming that if they chose to receive cash consideration in

28   connection with the Blackstone Transaction, then Respondents would have to indemnify them

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES          Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1  under the TPA for taxes incurred as a result of such cash payments.  Respondents explained in a

2  letter dated January 30, 2007 that no such indemnification obligations existed because the

3  Blackstone Transaction did not involve the direct or indirect sale, exchange or disposition of any

4  of the Protected Properties under the TPA.  The transaction closed on February 9, 2007.  It is

5  undisputed that EOP owned all of the Protected Properties before and after the closing.

6          In connection with the closing, Petitioners chose to receive cash consideration of

7  more than $400 million rather than partnership units in the surviving entity.  Thus, any tax liability

8  owed by Petitioners is the direct result of Petitioners' decision to redeem their interests for cash

9  consideration rather than rolling over their partnership interests, which would not have resulted in

10  any tax liabilities.  Put differently, any taxes incurred by Petitioners are a result of gain realized on

11  the sale of their interests in EOP as distinguished from a sale of the Protected Properties.  In short,

12  Petitioners decided to cash out, but do not want to pay their taxes.

13          In the months that followed the closing, Petitioners persisted in their disingenuous

14  interpretation of the TPA.  Because the TPA calls for arbitration of all claims, without regard to

15  their merits or lack thereof, the parties began communicating concerning the selection of an

16  arbitrator and other procedural issues associated with the anticipated arbitration.  Those

17  discussions were active and ongoing when Petitioners violated the agreement to arbitrate set forth

18  in the TPA and filed their preemptive and premature Petition on June 8, 2007, seeking to litigate

19  issues related to the arbitrator selection process and the place of arbitration in order to gain some

20  perceived strategic advantage regarding certain aspects of the arbitration.

21          The Petition suffers from numerous fundamental defects and should be dismissed

22  out of hand.  *First*, the Petition should be dismissed for lack of subject matter jurisdiction.

23  Petitioners' only claimed basis for invoking the jurisdiction of this Court is diversity jurisdiction

24  under 28 U.S.C. § 1332.  However, Petitioners fail to allege any facts supporting their conclusory

25  assertion of diversity jurisdiction, and the actual facts demonstrate that the Court lacks diversity

26  jurisdiction.  As a threshold matter, Petitioners do not even allege the citizenship of any of the

27  Petitioners or Respondents.  Assuming that Petitioners are citizens of the states in which they

28

1   reside (including California and Oregon), then the Court lacks diversity jurisdiction because

2   limited partners of EOP are also citizens of those states.  *See infra* Point I.

3          *Second*, the Petition should be dismissed for lack of standing because Respondents

4   have never refused to arbitrate and, in fact, have consistently acknowledged that the parties'

5   dispute concerning the proper interpretation of the TPA must be resolved through arbitration.  *See*

6   *infra* Point II.  Ironically, it is *Petitioners* who have breached the agreement to arbitrate by filing

7   this Petition and walking away from the ongoing discussions concerning the proper composition

8   of the arbitral tribunal and the procedures that would govern the arbitration.  The TPA specifically

9   provides that the parties "shall jointly retain" the arbitrator.  The parties were engaged in that

10  process when Petitioners breached the parties' agreement by filing this Petition.  Respondents

11  provided Petitioners with a list of accounting firms as candidates to serve as arbitrator, but

12  Petitioners refused to provide Respondents with any such list.  If Petitioners had continued in

13  good-faith discussions concerning the selection of a mutually acceptable arbitrator, rather than

14  filing this meritless Petition, the parties could have selected an arbitrator by now and, if necessary,

15  the arbitrator could have determined the location of the arbitration.  Instead, Petitioners have

16  manufactured a dispute and filed a premature Petition in a transparent procedural ploy to gain

17  some perceived strategic "home field advantage."

18         Even if Petitioners could overcome these deficiencies (they cannot), the Petition

19  should still be denied because the Court lacks personal jurisdiction over Blackhawk Parent (*see*

20  *infra* Point III) and venue is not proper in the Northern District of California (*see infra* Point IV).

21  Finally, any issues concerning the meaning of the phrase "nationally recognized independent

22  public accounting firm," or the location of the arbitration, are not properly before this Court (*see*

23  *infra* Point V), and in any event, Petitioners' arguments fail on the merits (*see infra*  Point VI).

24

25

26

27

28

# STATEMENT OF FACTS[1]

### A.    The Spieker Transaction

In December 2000, Petitioner Craig Vought, then the Chief Executive Officer of Spieker Properties, Inc. ("Spieker Properties"), met in Chicago with Timothy Callahan, then the Chief Executive Officer of EOPT, to discuss a possible merger of their companies. (*See* June 6, 2001 EOPT S-4A, as amended, at 36, (Ex. A)[2] ("Spieker Proxy")).

On January 2, 2001, Spieker Properties and EOPT entered into a confidentiality agreement and the companies began due diligence. (*Id.*) On January 25, 2001, members of the senior management of Spieker Properties met with members of the senior management of EOPT to exchange information on the structure of their respective organizations and discuss management and personnel issues. (*Id.*)

On February 7, 2001, Vought met with Callahan and other EOPT executives in Chicago. (*Id.*) At that meeting, Callahan presented a proposal for a merger of Spieker Properties with EOPT. (*Id.*) On February 9, 2001, Callahan telephoned Vought to discuss EOPT's proposal. (*Id.* at 37.) Between February 9 and 12, 2001, the companies continued to discuss by telephone the structure of a merger. (*Id.*)

Beginning on February 20, 2001, representatives from Spieker Properties, EOPT, Goldman Sachs (financial advisor to Spieker Properties), Morgan Stanley (financial advisor to EOPT), Sullivan & Cromwell (legal counsel to Spieker Properties) and Hogan & Hartson LLP (legal counsel to EOPT) met in Hogan & Hartson's New York offices to negotiate a merger agreement and other related agreements, including the TPA. (*Id.* at 38; *see also* Declaration of Stanley M. Stevens ("Stevens Decl.") ¶ 4.) On February 22, 2001, Spieker Properties and EOPT executed the merger agreement (the "Spieker Merger Agreement"). (Spieker Proxy at 38.)

On July 2, 2001, pursuant to the Spieker Merger Agreement, Spieker Properties merged into EOPT. Each company's operating partnership — Spieker Properties L.P. and EOP —

---

[1]    The facts set forth herein, many of which are taken directly from the proxy statement filed in connection with the Spieker Transaction, are not in dispute.

[2]    All exhibits referenced as Exs. A-H are exhibits to the Declaration of Timothy J. Cornell.

1   also merged, with EOP surviving the merger.  After the merger, EOP owned the properties

2   previously held by Spieker Properties L.P., and Petitioners became limited partners of EOP.

3       **B.        The EOP Partnership Agreement And The TPA**

4               On July 2, 2001, in connection with the consummation of the Spieker Transaction,

5   the partners of EOP, including Petitioners, entered a Third Amended and Restated Agreement of

6   Limited Partnership of EOP Operating Limited Partnership (the "EOP Partnership Agreement").

7   (*See* EOP Partnership Agreement (Ex. B).)  The EOP Partnership Agreement was executed in

8   Chicago, Illinois, and is governed by Delaware law.  (Stevens Decl. ¶ 7; EOP Partnership

9   Agreement § 15.9.)

10              As part of the EOP Partnership Agreement, EOP agreed not to "directly or

11  indirectly sell, exchange, or otherwise dispose of" the Protected Properties formerly owned by

12  Spieker Properties and further agreed to pay certain taxes incurred as a result of any such

13  disposition.  This agreement was set forth in the TPA, which was included as part of a separate

14  exhibit to the EOP Partnership Agreement.  (*See* Exhibit E-9 to the EOP Partnership Agreement §

15  2(a)-2(c) (Ex. B).)  The terms of the TPA were negotiated in New York during February 2001.

16  (Stevens Decl. ¶ 6.)  The Protected Properties were specifically listed in Schedule 2 to Exhibit E-9

17  of the EOP Partnership Agreement.  (Ex. B at Sched. 2.)

18              The TPA requires that if Petitioners and EOP disagree over whether Petitioners are

19  entitled to any reimbursement for any alleged tax liability, Petitioners and Respondents are "to

20  negotiate in good faith to resolve any disagreements regarding any such breach or violation and

21  the amount of damages, if any . . . " (*Id.* § 2(d).)  The TPA further provides that, if, after 60 days,

22  the parties' disagreement cannot be resolved, Petitioners and Respondents "shall jointly retain a

23  nationally recognized independent public accounting firm to act as an arbitrator to resolve as

24  expeditiously as possible all points of any such disagreement . . . ." (*Id.* § 2(d).)

25      **C.      The Blackstone Transaction**

26              On November 19, 2006, affiliates of Blackstone and EOPT entered into an

27  agreement (the "Blackstone Merger Agreement") whereby Blackstone agreed to acquire all of the

28

1   common shares of EOPT.  (*See* December 29, 2006 EOPT Proxy, as amended, at 35 (Ex. C)

2   ("EOPT Proxy").)

3            The Blackstone Merger Agreement contemplated that immediately prior to the

4   merger of EOPT and Blackstone: (i) Blackhawk Acquisition, L.P., an affiliate of Blackstone,

5   would merge into EOP; (ii) Blackhawk Parent, also an affiliate of Blackstone, would become

6   EOP's general partner; and (iii) EOP would survive the transaction.  (*Id.* at 55.)  The Blackstone

7   Merger Agreement also provided that, upon the holder's election, each outstanding unit of

8   partnership interest in EOP would be rolled over as units in the surviving partnership on a one-for-

9   one basis.  (*Id.* at 58.)  Accordingly, the Blackstone Merger Agreement was specifically structured

10  to offer EOP limited partners such as Petitioners the opportunity to avoid incurring taxes through

11  the election to take units in the surviving entity, *i.e.*, the Merger itself was not a taxable event for

12  Petitioners.  Instead, any taxes incurred by Petitioners are a result of their unilateral decision to

13  redeem their interests for cash.

14           While EOP and Blackstone understood that certain limited partners might choose to

15  take cash as part of the merger, EOP had no indemnification obligation to EOP limited partners

16  under the TPA because the Blackstone transaction did not constitute a direct or indirect sale,

17  exchange or other disposition of any of the Protected Properties.  (*Id.* at 55.)  Instead, Blackhawk

18  Acquisition L.P. would be merged into EOP, and EOP would survive the merger and would

19  continue to own the Protected Properties after the merger.  (*Id.* at 55, 58-60.)  Respondents

20  advised the Petitioners of this before the Blackstone Transaction closed and even before the

21  shareholders voted in favor of the Blackstone Transaction.  (*See* January 30, 2007 letters from

22  Blackhawk Parent to Petitioners (Ex. D).)

23           **D.      Petitioners' Election To Take Cash Consideration**

24           On February 9, 2007, the transaction closed as contemplated by the Blackstone

25  Merger Agreement and the EOP limited partners, who made the requisite election, continued to be

26  limited partners in EOP.  Petitioners elected not to remain limited partners in EOP, but rather

27  chose to receive in excess of $400 million in cash for their EOP partnership units.  (Pet. ¶ 37.)

28

1    After deciding to liquidate their interests in EOP, Petitioners decided they did not want to pay the

2    tax obligations that arose from that decision.

3    **E.    The Continuing Arbitration Discussions**

4    When Petitioners persisted in asserting their unmeritorious claim that they were

5    entitled to indemnification notwithstanding their decision to take cash rather than remain limited

6    partners in EOP, the parties recognized that this dispute was subject to arbitration under the TPA.

7    On May 10, 2007, counsel for Respondents wrote to counsel for Petitioners stating that the parties

8    should begin to discuss the procedures for the anticipated arbitration and identifying certain issues

9    to be addressed in connection with the arbitration, including:  selecting an arbitrator, including

10   exchanging lists of nationally recognized independent public accounting firms that could act as

11   arbitrator; discussing the procedures to be employed if the parties could not agree on a nationally

12   recognized independent public accounting firm; deciding the arbitration rules and procedures that

13   would govern the arbitration; and deciding the place of the arbitration.  (*See* May 10, 2007 Letter

14   from Angiolillo to Steinberg (Ex. E).)  Counsel for Respondents proposed that the parties

15   exchange lists of potential arbitrators early the following week; that if the parties could not agree

16   on an arbitrator, then the International Institute for Conflict Prevention and Resolution ("CPR")

17   could choose the arbitrator;[3] that the arbitration proceeding be governed by the CPR Rules; and

18   that the place of arbitration be New York, New York (where the TPA was negotiated).  (*Id.*)

19   By letter dated May 14, 2007, Petitioners' counsel indicated that they would be

20   ready to exchange lists of nationally recognized independent public accounting firms by early the

21   following week (though, to date, they have never provided any such list).  (*See* May 14, 2007

22   Letter from Steinberg to Angiolillo (Ex. F).)  Petitioners' counsel also stated that they believed it

23   was "premature" to discuss the question of which organization might assist the parties in selecting

24   an arbitrator (but then filed the Petition in this Court less than a month later).  (*Id.*)  Petitioners'

25

26   [3]    It should be noted that two lawyers from Petitioners' counsel's firm serve on CPR
       Committees, and the firm itself is a CPR Sponsor.  *See* http://www.cpradr.org/arb-

27   advcomm.asp?M=9.2.2.3; http://www.cpradr.org/commMembers.asp?filnm=ARBN;
       http://www.cpradr.org/commMembers.asp?filnm=EDSC;

28   http://www.cpradr.org/CPR_CorpDin07.asp.

1   counsel also stated that they were considering the suggestion of Respondents' counsel to use the

2   CPR Rules, but never provided any further response on this topic.  (*Id.*)  Petitioners' counsel said

3   that they thought California would be a more appropriate forum for arbitration, but also stated that

4   they would "consider any reasons you may offer for preferring New York."  (*Id.*)

5           On May 23, 2007, Petitioners' counsel spoke with Respondents' counsel by

6   telephone.  Respondents' counsel advised Petitioners' counsel that Respondents were amenable to

7   using any of the "big four" accounting firms — Deloitte Touche Tohmatsu, Ernst & Young,

8   KPMG, and PricewaterhouseCoopers — to arbitrate Petitioners' claims.  (May 31, 2007 Letter

9   from Gluckow to Edgar (Ex. H).)  Petitioners' counsel was not prepared to provide Petitioners' list

10  at that time.

11          On May 25, 2007, Petitioners' counsel wrote to Respondents' counsel proposing

12  that the parties exchange information concerning "which nationally recognized public accounting

13  firms meet the definition of 'independent' under" Respondents' interpretation of the TPA.  (May

14  25, 2007 Letter from Edgar to Gluckow (Ex. G).)

15          On May 31, 2007, Respondents' counsel wrote to Petitioners' counsel noting that

16  Respondents had already proposed four potential arbitrators and that Petitioners had not provided

17  their list to Respondents.  (May 31, 2007 Letter from Gluckow to Edgar (Ex. H).)  Respondents'

18  counsel also explained that once Petitioners provided Respondents with their list, the parties

19  would be in a position to "discuss which of the proposed candidates might be mutually acceptable

20  to the parties" so as to avoid getting bogged down in endless debates about definitions.  (*Id.*)

21          Respondents were awaiting a response to their May 31, 2007 letter when

22  Petitioners filed their Petition on June 8, 2007, breaching the parties' agreement to arbitrate and

23  inappropriately seeking to involve this Court in issues related to the selection of the arbitrator and

24  the place of arbitration.

25          **APPLICABLE LEGAL STANDARDS**

26          When a petition to compel arbitration is challenged for lack of jurisdiction, the

27  "jurisdictional dispute[] . . . must be resolved before the court considers the merits."  *See Legacy*

28  *Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1048 (D. Or. 2004).

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES          Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1    Once challenged, the burden of establishing the court's jurisdiction by a preponderance of the

2    evidence lies with the party invoking the court's jurisdiction. *McNutt v. Gen. Motors Acceptance*

3    *Corp. of Indiana*, 298 U.S. 178, 189 (1936); *In re Ford Motor Co./Citibank (South Dakota), N.A.*,

4    264 F.3d 952, 957 (9th Cir. 2003); *Doctor's Assocs., Inc. v. Hollingsworth*, 949 F. Supp. 77, 81

5    (D. Conn. 1996) (holding that on a motion to compel arbitration, movants have the burden of

6    establishing subject matter jurisdiction).  As set forth below, Petitioners have not met this burden.

7            If a court has jurisdiction over the subject matter of a petition, it applies "a standard

8    similar to the summary judgment standard of Fed. R. Civ. P. 56" to the merits of the petition.

9    *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting *McCarthy v.*

10   *Providential Corp.*, No. C 94-0627, 1994 WL 387852, at *2 (N.D. Cal. Jul. 18, 1994)).

11   Accordingly, the petitioner must prove that there is no genuine issue of material fact and that the

12   petitioner is entitled to judgment as a matter of law. *Salvadori v. Option One Mortgage Corp.*,

13   420 F. Supp. 2d 349, 353 (D.N.J. 2006) (applying the summary judgment standard to a motion to

14   compel arbitration) (citing Fed. R. Civ. P. 56(c)); *Friday v. American Oil Corp.*, No. Civ.A. 01-

15   1598, 2006 WL 897744, at *1 (W.D. Pa. Apr. 6, 2006) (same).  Similarly, the Court must consider

16   all of the non-moving party's evidence and construe all reasonable inferences in the light most

17   favorable to the non-moving party. *Friday*, 2006 WL 897744, at *1 (citing *Anderson v. Liberty*

18   *Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Salvadori*, 420 F. Supp. 2d at 353.

19                                  **ARGUMENT**

20   **I.     THE PETITION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
             JURISDICTION**

21

22           Petitioners concede there is no federal question presented by the Petition, that the

23   Federal Arbitration Act ("FAA") does not provide a basis for subject matter jurisdiction, and that

24   their sole claimed basis for subject matter jurisdiction in this Court is diversity jurisdiction.  (*See*

25   Petitioners' Memorandum of Points and Authorities ("Mem.") at 6 n. 2; Pet. ¶ 24.)  As to

26   diversity, the Petition contains only a single conclusory statement that "this Court has subject

27   matter jurisdiction over this controversy under 28 U.S.C. § 1332 because Petitioners are of diverse

28   citizenship . . . ."  (Pet. ¶ 24.)  Beyond this naked allegation, Petitioners have failed to allege any

1  factual basis for diversity jurisdiction.  Indeed, Petitioners cannot make the requisite diversity

2  allegations because Respondents are not completely diverse from Petitioners.

3        Since federal district courts are courts of limited jurisdiction, it is axiomatic that

4  "[i]n the absence of jurisdiction, a court is powerless to act."  *American Fiber & Finishing, Inc. v.*

5  *Tyco Healthcare Group, LP*, 362 F.3d 136, 138 (1st Cir. 2004).  Moreover, "[i]t is to be presumed

6  that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests

7  upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

8  377 (1994) (citations omitted); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857–58 (9th

9  Cir. 2001) (declaring that "the party asserting diversity jurisdiction bears the burden of proof").

10        In order to establish a basis for diversity jurisdiction, "there must be complete

11  diversity of citizenship between the parties opposed in interest." *Kuntz v. Lamar Corp.*, 385 F.3d

12  1177, 1181 (9th Cir. 2004) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)).

13  Therefore, if any of the seventeen Petitioners is not of diverse citizenship from any of the two

14  Respondents, this Court lacks subject matter jurisdiction over the Petition.  And where, as here,

15  subject matter jurisdiction is allegedly premised upon diversity and complete diversity of

16  citizenship has not and cannot be established, a district court must "dismiss[] the action." *Allstate*

17  *Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004).

18        **A.    Petitioners Fail To Plead Diversity Jurisdiction**

19        It is well-settled that "[w]hen jurisdiction is based on diversity of citizenship, the

20  pleadings, to establish diversity, must set forth with specificity the citizenship of the parties."

21  *Barclay Square Props. v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis*, 893 F.2d 968, 969

22  (8th Cir. 1990); *see also Kanter*, 265 F.3d at 857 (holding that Defendants' "failure to specify

23  Plaintiffs' state citizenship was fatal to Defendants' assertion of diversity jurisdiction").  While the

24  failure to allege specifically the citizenship of even one of the Respondents would be fatal to an

25  assertion of diversity jurisdiction, Petitioners inexplicably fail to allege the citizenship of *any* of

26  the Respondents, or *any* of the Petitioners.

27        For purposes of diversity jurisdiction, a natural person is a citizen of the state in

28  which he or she is domiciled.  *Kanter*, 265 F.3d at 857; *Kantor v. Wellesley Galleries, Ltd.*, 704

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES          Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

F.2d 1088, 1090 (9th Cir. 1983). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter*, 265 F.3d at 857.

The Petition alleges the residence of fourteen of the seventeen Petitioners. (Pet. ¶¶ 9–22.) According to the Petition, eight of those are residents of California, four are residents of Washington, and two are residents of Oregon. (*Id.*) But mere "[a]llegations of residence are insufficient for purposes of establishing jurisdiction under 28 U.S.C. § 1332." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334, n.1 (7th Cir. 1999); *see also Kanter*, 265 F.3d at 857. Petitioners fail to allege the domicile of any of these fourteen Petitioners.

Regarding two other Petitioners, John K. French and John A. Foster, the Petition is silent even as to residence. Thus, the Petition fails to allege the citizenship of these sixteen Petitioners who are natural persons and should therefore be dismissed.

The Petition further fails to allege the citizenship of the seventeenth Petitioner, Blake Family Trust. The Blake Family Trust is alleged to be a living trust organized under the laws of the State of California. (Pet. ¶ 12.) However, the Ninth Circuit has explained that "[a] trust has the citizenship of its trustee or trustees." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Petitioners have neither identified the trustee or trustees of the Blake Family Trust nor have they alleged their citizenship. The Petition should be dismissed for the additional reason that Petitioners fail to allege the citizenship of the Blake Family Trust.

Further, Petitioners fail to plead the citizenship of the Respondents. Petitioners allege that EOP is a Delaware limited partnership with its headquarters in Illinois and that Blackhawk Parent is a Delaware limited liability company headquartered in New York, New York. (Pet. ¶ 23.) These allegations are inadequate to plead citizenship. In *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990), the Supreme Court unequivocally established that "diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of all the members." *See also American Fiber*, 362 F.3d at 137 ("a limited partnership is deemed to be a citizen of every state of which any of its general or limited partners are citizens"); *Johnson*, 437 F.3d at 899 (same). Similarly, a limited liability company is treated "like a partnership," having citizenship "in every state of which its owners/members are citizens." *Johnson*, 437 F.3d at 899.

1    Therefore, EOP is a citizen of every state of which any of EOP's general or limited partners are

2    citizens, and, similarly, Blackhawk Parent is a citizen of every state of which its members are

3    citizens.

4        There are no allegations in the Petition addressing the citizenship of EOP's partners

5    or Blackhawk Parent's members.  Petitioners' failure to allege the citizenship of each of the EOP

6    partners and Blackhawk Parent members renders the Petition insufficient as a matter of law.  *See*

7    *Barclay Square Props.*, 893 F.2d at 969.

8        Having omitted any allegations of the citizenship of both Petitioners and

9    Respondents, Petitioners fail to satisfy their burden of pleading complete diversity.  Absent

10    sufficient allegations of diversity jurisdiction, this Court must dismiss the Petition.

11        **B.    Respondent EOP Is Not Diverse From Petitioners**

12        In any event, assuming that Petitioners are citizens of California, Oregon, and/or

13    Washington, the Petition fails because there is no diversity of citizenship between Respondents

14    and Petitioners.  Respondent EOP's limited partners are citizens of multiple states, including

15    California and Oregon.  (Declaration of Matthew Koritz ("Koritz Decl.") ¶¶ 3-6.)  Because EOP

16    has limited partners who are citizens of California and Oregon, EOP is a citizen of those states.

17    *See Carden*, 494 U.S. at 195–96; *Johnson*, 437 F.3d at 899; *American Fiber*, 362 F.3d at 137.

18    Accordingly, there is no complete diversity and no basis for diversity jurisdiction.  *See Kuntz*, 385

19    F.3d at 1181 (citing *Strawbridge*, 7 U.S. (3 Cranch) at 267).  Therefore, this Court must dismiss

20    the Petition for lack of subject matter jurisdiction.

21    **II.    THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS LACK
    STANDING**

22

23        This Court should also dismiss the Petition for lack of standing because there has

24    been no refusal to arbitrate as required under § 4 of the Federal Arbitration Act.  *See* 9 U.S.C. § 4;

25    (*see also* Pet. ¶ 55.)  To the contrary, when the Petition was filed, the parties were in the midst of

26    deciding how the arbitration would proceed.  Petitioners have not suffered an "injury in fact" and

27    there is no actual justiciable controversy.

28

1    Whether a petitioner has standing to bring suit is a threshold question in every case;

2    courts must dismiss outright petitions that fail to make out an actual case or controversy.  *See*

3    *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).  There are three constitutional

4    requirements of standing: (1) the petitioner must have suffered an "injury in fact;" (2) there must

5    be a causal connection between the injury and the conduct complained of; and (3) it must be

6    likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

7    *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  An "injury in fact" is "an invasion

8    of a legally protected interest which is . . . concrete and particularized, and . . . actual or imminent,

9    not conjectural or hypothetical."  *Id.* (internal citations omitted).

10    To meet this standing requirement, at a minimum a "petition to compel arbitration

11    must allege that the adverse party has failed, neglected or refused to arbitrate."  *Hartford Accident*

12    *& Indem. Co. v. Equitas Reins. Ltd.*, 200 F. Supp. 2d 102, 104 (D. Conn. 2002).  Failure to do so

13    results in dismissal of the petition.  *Id.* at 110.  The decision in *Hartford* is illustrative of why

14    Petitioners lack standing.  In *Hartford*, petitioners sent a demand to respondents requesting that

15    the defendants name their arbitrator.  *Id.* at 105-06.  Before the respondents responded to the

16    demand, the *Hartford* petitioners filed a petition to compel arbitration in which they speculatively

17    alleged that respondents "do not intend to arbitrate, and will refuse to arbitrate."  *Id.* at 106.  The

18    *Hartford* court held that under Section 4 of the FAA, the party seeking to compel arbitration must

19    be "aggrieved" before the court can direct arbitration.  *Id.* at 108 ("Absent a refusal by the other

20    party to arbitrate, arbitration cannot be compelled under Section 4.") (internal quotations omitted);

21    *see also Colt's Mfg. Co. v. Devteck Corp.*, 961 F. Supp. 382, 384-85 (D. Conn. 1997) ("Canada

22    has not refused to arbitrate, but instead, has gone forward with arbitration . . . . Since Colt is not an

23    'aggrieved party' it is not entitled to an order compelling arbitration under Section 4 of the FAA

24    with Canada.") (internal quotations omitted).  That is, to meet the standing requirement, the

25    petitioner must allege facts that demonstrate that there has been an actual refusal to arbitrate:

26    Requiring a petitioner to allege that the adverse party has actually failed,
    neglected, or refused to arbitrate assures the court that there is, in fact, a

27    dispute concerning whether the parties should arbitrate. If the adverse party
    has not refused to arbitrate, or will agree to arbitrate, there is no reason for

28    court involvement in the first place . . . 'It is doubtful that a petition to

1

2

compel filed before the "adverse" party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance.'

3

4

5

6

*Hartford*, 200 F. Supp. 2d at 108, n.8 (quoting *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995)).  The refusal must be "clear," "express" and "unequivocal."  *PaineWebber*, 61 F.3d at 1067.  The petitioners in *Hartford*, like the Petitioners here, failed to meet this pleading standard and their petition was dismissed.  *Hartford*, 200 F. Supp. 2d at 108.

7

8

9

10

11

12

13

14

15

16

17

18

19

Petitioners do not — and cannot — allege that Respondents made a clear, express and unequivocal refusal to arbitrate.  In fact, there has been no refusal to arbitrate.  It is undisputed that both the Petitioners and Respondents have agreed to arbitrate this dispute.  (*See, e.g.,* Exs. B, E, F.)  The parties were in the midst of discussing the procedures for the anticipated arbitration, including who would act as arbitrator, what rules would govern, and where the arbitration would occur, when Petitioners filed their premature Petition.  (*See, e.g.,* Exs. G, H; Pet. ¶¶ 39-54.)  Respondents provided Petitioners with a list of accounting firms that they believe can act as arbitrator and were awaiting a similar list from Petitioners.  (Ex. H.)  Petitions cannot create standing by refusing to negotiate the procedures for arbitration or refusing to appoint a mutually agreeable arbitrator.  The Petition itself demonstrates that Respondents have consistently been willing to arbitrate, engaging in conscientious back-and-forth communications with Petitioners to first determine the need for arbitration, (Pet. ¶¶ 40, 43, 45), and to then work towards selecting an arbitrator and arbitration location.  (Pet. ¶¶ 48, 50, 53.)

20

21

22

23

24

Indeed, Petitioners' decision to run into court to gain some strategic advantage, while the parties were engaged in negotiations, demonstrates Petitioners' — not Respondents' — unwillingness to resolve disputes according to the terms of the TPA's arbitration provision.  However, despite this premature attempt to derail the Parties' negotiations, Respondents remain willing to continue to discuss the selection of an arbitrator and related issues with Petitioners.

25

26

Because there is no case or controversy presented by the Petition, the Petition should be dismissed.

27

28

III.    **THIS COURT LACKS PERSONAL JURISDICTION OVER BLACKHAWK PARENT**

Petitioners fail to allege any adequate basis for the assertion of personal jurisdiction over Blackhawk Parent, EOP's general partner. Petitioners recognize that Blackhawk Parent is a limited liability company organized under the laws of Delaware and is an affiliate of Blackstone, headquartered in New York, New York. (Pet. ¶ 23.) However, Petitioners do not allege any relevant connection between Blackhawk Parent and California.

Importantly, jurisdiction over a partnership does not confer jurisdiction over its partners. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *see also Ytuarte v. Gruner & Jahr Printing and Pub'g Co.*, 935 F.2d 971, 972-973 (8th Cir. 1991) (declining to find jurisdiction over the partners even though there was jurisdiction over the partnership and the managing partners were responsible for managing partnership property in the forum). Simply because Blackhawk Parent is the General Partner of EOP does not mean that this Court has personal jurisdiction over Blackhawk Parent. Rather, for this Court to assert personal jurisdiction over Blackhawk Parent, Petitioners must demonstrate that Blackhawk Parent, independent of its relationship to EOP, has "minimum contacts" with California. *See Sher*, 911 F.2d at 1361, 1365; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (holding that the "plaintiff bears the burden of demonstrating that jurisdiction is appropriate").

Petitioners have the burden of establishing that Blackhawk Parent has "performed some act or consummated some transaction within the forum or otherwise purposefully availed [itself] of the privileges of conducting activities in the forum" and that "the claim arises out of or results from" those forum related-activities. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Moreover, the exercise of jurisdiction by this Court must be "reasonable." *Id*. Petitioners fail to meet this burden.

Petitioners have not demonstrated, as they must, that Blackhawk Parent has engaged in any transaction in California relevant to the Petition. The Petition alleges a disagreement about the interpretation of an arbitration clause in the TPA. Blackhawk Parent did not even exist when the TPA was negotiated or executed.

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES    Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1        Petitioners do not allege any facts that otherwise tie Blackhawk Parent to

2   California.  Petitioners do not allege — let alone allege facts — that Blackhawk Parent has

3   purposefully availed itself of, or directed its activities to, this forum, nor do Petitioners allege a

4   claim arising from conduct of Blackhawk Parent in this forum.  *See Schwarzenegger*, 374 F.3d at

5   802–03 (declaring that if a plaintiff fails to demonstrate both purposeful availment of the forum

6   and a claim arising from such purposeful availment, personal jurisdiction cannot be established).

7   Petitioners' failure to plead such requisite facts warrants dismissal of the Petition as to Blackhawk

8   Parent for lack of personal jurisdiction.

9   **IV.      VENUE IS NOT PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA**

10       Petitioners allege that a "substantial part of the property that is the subject of the

11  action" is located in California.  (Pet. ¶ 26.)  But property in the Northern District of California is

12  not the subject of this action.  This action is about a disagreement over the interpretation of an

13  arbitration clause.  (*See* Pet. ¶ 8.)  Thus, that property owned by EOP, either at the time the

14  Petitioners were limited partners or afterward, is located in this venue is irrelevant both to the

15  dispute before the Court and the underlying dispute to be arbitrated by the parties.

16       Petitioners also allege that "a substantial part of the events and omissions on which

17  Petitioners' claims are based occurred in the district."  (Pet. ¶ 26.)  But "[o]nly the events that

18  directly give rise to a claim are relevant."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th

19  Cir. 2003); *see also* William W. Schwarzer, et al., California Practice Guide: Federal Civil

20  Procedure Before Trial § 4:315 (2007) (same).  Moreover, "of the places where the events have

21  taken place, only those locations hosting a 'substantial part' of the events are to be considered."

22  *Jenkins Brick*, 321 F.3d at 1371; *see also Ultimate Creations, Inc. v. Wright*, No. CV 05-3713-

23  PHX-MHM, 2006 WL 2547324, at *4 (D. Ariz. Aug. 28, 2006) ("[F]or venue to be proper,

24  significant events or omissions material to the plaintiff's claim must have occurred in the district

25  in question . . . . It would be error, for instance, to treat the venue statute's 'substantial part' test as

26  mirroring the minimum contacts test employed in personal jurisdiction inquiries.") (quoting *Gulf*

27  *Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

28

1    The TPA • the sole document upon which Petitioners' claims are based • was

2    negotiated in New York, New York and executed in Chicago, Illinois. (Spieker Proxy at 37-38;

3    Stevens Decl. ¶¶ 6-7.) Indeed, the Spieker Proxy filed with the SEC puts the lie to Petitioners'

4    disingenuous claim concerning "the lack of any nexus between the Protection Agreement and its

5    negotiation and New York." (Mem. at 5; *see also* Mem. at 9 (claiming that the TPA was

6    negotiated in California).)

7    Respondents, allegedly located in Delaware, New York, and Illinois (*see* Pet. ¶ 23),

8    stand accused of failing to meet their obligations under the arbitration clause because they have

9    not provided a list of their relationships with accounting firms. (Pet. ¶ 6.) That alleged omission

10   has occurred where Respondents are located. *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.

11   1995) ("Congress meant to require courts to focus on relevant activities of the defendant, not of

12   the plaintiff"); *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003) (stating

13   that because "the general-venue statute protects the defendant, courts often focus on the relevant

14   activities of the defendant, rather than the plaintiff, in determining where a substantial part of the

15   underlying events occurred"). Accordingly, if, as Petitioners allege, Respondents failed to meet

16   their obligations, they did so in either Chicago or New York.

17   Furthermore, Petitioners allege that they are entitled to indemnification for tax

18   liabilities incurred as a result of the Blackstone Transaction. (Pet. ¶¶ 3, 4.) That transaction was

19   negotiated and executed in New York and Chicago, not the Northern District of California.

20   (EOPT Proxy at 35.)

21   Petitioners do not and cannot demonstrate that a substantial part of the relevant

22   events or omissions occurred in the Northern District of California, and, therefore, venue here is

23   improper. *Jenkins Brick*, 321 F.3d at 1371.

24   **V.    NEITHER THE ISSUE OF INTERPRETING THE TERM "INDEPENDENT" NOR THE ISSUE OF DETERMINING THE LOCATION FOR ANY ARBITRATION IS PROPERLY BEFORE THIS COURT**

25

26   The Petition violates the unambiguous terms of the TPA, in which the Parties

27   agreed to arbitrate "all points" of any disagreement related to the sale, exchange, or other

28   disposition of a Protected Property, and nowhere carved out an exception for the issues that

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES          Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1   Petitioners ask this Court to decide.  (*See* TPA §§ 2(a), 2(d).)  Petitioners' decision to run into

2   court, halting the process they were engaged in with Respondents, should not be tolerated in the

3   face of the valid and sweeping arbitration provision in the TPA.

4          A court's role in enforcing arbitration is very limited.  A party may not litigate

5   claims in federal court that are properly referable to an arbitration proceeding.  *Chiron Corp. v.*

6   *Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).  "The court's role under the

7   [Federal Arbitration] Act is [ ] limited to determining (1) whether a valid agreement to arbitrate

8   exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Id.* (citations

9   omitted); *Barragan v. Wash. Mut. Bank*, No. C 06-01646-CRB, 2006 WL 2479125, at *3 (N.D.

10  Cal. Aug. 28, 2006) (stating that "the Supreme Court has preserved a 'limited role for the federal

11  courts to play in interpreting arbitration agreements.  Specifically, . . . whether the parties have

12  submitted a particular dispute to arbitration.'") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537

13  U.S. 79, 83-84 (2002)).

14         "By contrast, other types of disputes about arbitration clauses are generally beyond

15  the purview of the judiciary."  *Barragan*, 2006 WL 2479125, at *3; *see also Green Tree Fin.*

16  *Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (finding that the question of whether a contract forbid

17  class arbitration was a question of contract interpretation and arbitration procedures, and as such

18  was rightly for the arbitrator, not the court, to decide); *Howsam*, 537 U.S. at 79 (stating that the

19  "question of arbitrability" is "an issue for judicial determination") (citations and internal quotation

20  marks omitted) (emphasis in original); *Trustmark Ins. Co. v. Fire & Casualty Ins. Co. of Conn.*,

21  No. 02 C 0934, 2002 WL 832567, at *2 (N.D. Ill. May 2, 2002) ("The parties' disagreement about

22  the location of the arbitration, instead of being a refusal to arbitrate, is merely a dispute about a

23  contract requirement.").

24         Moreover, "as a matter of federal law, any doubts concerning the scope of

25  arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses H. Cone Mem'l. Hosp. v.*

26  *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Aerojet-General Corp. v. Am. Arbitration*

27  *Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) ("The use of arbitration as a means of settling disputes

28  has been accorded specific Congressional endorsement in the Federal Arbitration Act, . . . and

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES        Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1    should be encouraged by the federal courts.") (citation omitted).  Where, as here, the parties

2    included a broad arbitration clause in their contract, courts are required to allow disputes related to

3    the contract to be resolved through arbitration unless "it may be said with positive assurance that

4    the arbitration clause is not susceptible of any interpretation that covers the asserted dispute.

5    Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of*

6    *Am.,* 475 U.S. 643, 650 (1986) (internal citation and quotations omitted).

7            The questions Petitioners attempt to bring before this Court, regarding the meaning

8    of "nationally recognized independent public accounting firm" and the location of the arbitration,

9    undoubtedly do not fall within the narrow category of "questions of arbitrability" that federal

10    courts are tasked with deciding.  Rather, in line with the Parties' intent that all disputes be

11    arbitrated, such a determination should be made outside of court.[4]  *See Moses Hosp.*, 460 U.S. at

12    24-25 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should

13    be resolved in favor of arbitration . . . ."); *Chiron Corp.*, 207 F.3d at 1130 ("The court's role under

14    the [Federal Arbitration] Act is [ ] limited . . . .").  As the court stated in *Trustmark*:  "[O]ne of the

15    parties cannot . . . insist on a forum it chooses by filing a petition to compel arbitration . . . .

16    Because the broad language of paragraph A provides 'any dispute or difference of opinion

17    hereafter arising with respect to this Contract shall be submitted to arbitration,' the court

18    concludes that the issue of a mutually agreeable location for the underlying dispute is itself an

19    arbitrable issue." *Trustmark*, No. 02 C 0934, 2002 WL 832567, at *2-3.

20            By dismissing the Petition and forcing the parties to continue discussions (and,

21    failing that, allowing the parties to follow the procedures of an arbitration organization), this Court

22    would uphold the intentions and contractual agreement of the parties to arbitrate "all points" of

---

[4]    Arbitration organizations such as the International Institute for Conflict Prevention and Resolution ("CPR") and the American Arbitration Association ("AAA") have devised widely-recognized procedures for selection of an arbitrator where parties have agreed to arbitrate all disputes.  *See* CPR Rules for Non-Administered Arbitration, Rule 5 (providing for selection of an arbitrator by the parties), Rule 6 (providing for selection of an arbitrator by CPR in the event that the parties fail in any number of ways to appoint an arbitrator), *available at* http://www.cpradr.org/pdfs/arb-rules2005.pdf; AAA Commercial Arbitration Rules and Mediation (2005), Rule R-11 (providing for appointment of an arbitrator in the event that parties have not selected one), Rule R-12 (providing for appointment of an arbitrator by the parties), *available at* http://www.adr.org/sp.asp?id=22440.

1   their dispute.  *See also Howsam*, 537 U.S. at 84 (citing *John Wiley & Sons v. Livingston*, 376 U.S.

2   543, 557 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance

3   procedure were completed, where these steps are prerequisites to arbitration)); *Barragan*, 2006

4   WL 2479125, at *3 ("[T]here is a presumption that courts should not decide 'procedural

5   questions' relating to an arbitration agreement.").  As such, this Court should refrain from

6   deciding these matters in favor of allowing the parties to fulfill their obligations to honor their

7   agreed-upon arbitration clause.[5]

8   **VI.    THE PETITION ALSO FAILS ON THE MERITS**

9            For the reasons discussed above, the Court should dismiss the Petition without

10  reaching the merits of the Petition, but the Petition fails on the merits as well.

11           The word "independent" as used in the TPA cannot be isolated and divorced from

12  the term of which it is a part •  "nationally recognized independent public accounting firm."  The

13  TPA requires the selection of a "nationally recognized independent public accounting firm."

14  (TPA § 2(d)).

15           It is well-settled that contract terms are given their ordinary meaning unless such

16  terms are specifically defined by the parties to the contract.  *Sutter Home Winery, Inc. v. Vintage*

17  *Selections, Ltd.*, 971 F.2d 401, 410 (9th Cir. 1992) ("No agreement is ever entirely free of

18  ambiguity. There is always the possibility that the parties actually intended a contract term to have

19  an unconventional meaning. However, unless this intention is manifested in some way, the term

20  will be given its generally accepted meaning.") (citing Restatement (Second) of Contracts §

21  202(3)(a) (1981) ("Unless a different intention is manifested . . . where language has a generally

22  prevailing meaning, it is interpreted in accordance with that meaning.")).

23           The term "nationally recognized independent accounting firm" is a common term

24  of art used to refer to a category of stand-alone (*i.e.* not captive), reputable, widely used and

[5]   Contemporaneously with the filing of this Memorandum, Respondents are filing a Petition to Compel Arbitration in Illinois.  Respondents were forced to take this step to protect their interests given Petitioners' recourse to the Court in contravention of the parties' arbitration agreement and discussions.  Respondents seek an order requiring Petitioners to meet and confer in good faith with Respondents to resolve their disagreements and, failing that, referring the parties to an arbitration institution such as the CPR or the AAA.

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES        Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1    recognized accounting firms.  *See e.g.,* Securities Exchanges Audit Requirements, 15 U.S.C.A. §

2    78j-1(l) (2002) (referring to "independent public accounting firm" as a type of accounting firm

3    without reference to the firm's relationships with third parties); American Institute of Certified

4    Public Accountants, *Largest Firms Grow*, 12-98 J. Accountancy 16 (Dec. 1998) ("As a group, the

5    100 largest independent public accounting firms experienced revenue growth for the third straight

6    year."); *McGann v. Ernst & Young*, 102 F.3d 390, 391 (9th Cir. 1996) (using "independent

7    accounting firm" as a term of art to describe a category of accounting firms); *City of San Jose v.*

8    *Price Waterhouse*, No. 91-16489, 1993 WL 83495, at *1 (9th Cir. Mar. 23, 1993) (same); *Blake v.*

9    *Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988) (same); *see also Container Recovery, Inc. v.*

10   *Shasta Northwest, Inc.*, No. 05-1749-PK, 2007 WL 1724937, at *4 (D. Or. June 11, 2007) (same);

11   *Vesta Fire Ins. Corp. v. Insurance Ventures, Inc.*, No. 6204CV0296GEBPAN, 2006 WL 314488,

12   at *1 (E.D. Cal. Feb. 9, 2006) (same).[6]  Respondents proposed to address any issues concerning

13   the impartiality of the proposed arbitrators after receiving Petitioners' candidates.  However,

14   Petitioners have refused to provide any such list.

15           In addition, entry of an order that the parties conduct the arbitration in this District,

16   as requested by Petitioners, would be inappropriate for the same reasons that venue is not proper

17   in this District — the key events (including the negotiation and execution of the TPA) occurred

18   outside this District.  *See supra* Point IV.  And, as discussed, this is an issue that should be decided

19   by the arbitrator.  *See supra* Point V; *see also Trustmark*, No. 02 C 0934, 2002 WL 832567, at *2-

20   3.  If the Court is inclined to order any relief, it should order Petitioners to meet and confer in

---

22   [6]    The authorities cited by Petitioners to support their current interpretation of "independent
23          accounting firm" are inapposite.  (*See* Petitioners' Memorandum, at 8).  For example, in
             *AHS New Mexico Holdings, Inc. v. Healthsource, Inc.*, No. Civ.A. 2120-N, 2007 WL
24           431051 (Del. Ch. Feb. 2, 2007), the parties decided voluntarily to not use a particular
             accounting firm if such firm had worked for one of the parties during the three years prior.
25           "Section 2.8 [of the parties' agreement] stated that Deloitte & Touche LLP would
             determine the Adjusted Net Worth, unless the firm had been engaged by either party in the
26           preceding three years. In fact, Deloitte & Touche LLP did work for one of the parties in the
             three years preceding the commencement of this dispute. Consequently, the parties agreed
27           to retain Crowe Chizek and Company LLC ("Crowe Chizek") instead in March, 2006."  *Id.*
             at *3, n. 11.  Even the Black's Law Dictionary definition cited by Petitioners does not
28           provide support for their interpretation of "independent"; rather, it suggests only that the
             auditor must be an "outside person or firm," *i.e.* a non-employee.

RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES        Case No. C 07-03001-RMW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

1   good faith with Respondents to resolve their disagreements and, failing that, to proceed before an

2   arbitration institution such as the CPR or the AAA.

3                                          **CONCLUSION**

4           For all the reasons set forth herein, the Petition should be dismissed.

5   Dated:  July 20, 2007                          SIMPSON THACHER & BARTLETT LLP

6

7                                          By   /s/ Harrison J. Frahn IV
                                                Harrison J. Frahn IV (Bar No. 206822)
8                                               SIMPSON THACHER & BARTLETT LLP
                                                2550 Hanover Street
9                                               Palo Alto, CA 94304
                                                Telephone: (650) 251-5000
10                                              Facsimile: (650) 251-5002

11                                              Bruce D. Angiolillo (*pro hac vice* application
                                                pending)
12                                              Paul C. Gluckow (*pro hac vice* application
                                                pending)
13                                              SIMPSON THACHER & BARTLETT LLP
                                                425 Lexington Avenue
14                                              New York, NY  10017-3954
                                                Telephone: (212) 455-2000
15                                              Facsimile:  (212) 455-2502
                                                Attorneys for Defendants/Respondents
16                                              BLACKHAWK PARENT LLC and
                                                EOP OPERATING LIMITED PARTNERSHIP

17

18

19

20

21

22

23

24

25

26

27

28