49

Partner's determination that the opinion delivered within fifteen days by the General Partner is not reasonably satisfactory), then the General Partner is hereby authorized and empowered to take such actions as it deems necessary and appropriate to mitigate, prevent, or cure such adverse consequences as might result to an ERISA Partner from the underlying assets of the Partnership being assets of an ERISA Partner or the underlying assets of the General Partner being assets of any ERISA Partner.

SECTION 7.10  RELIANCE BY THIRD PARTIES

Notwithstanding anything to the contrary in this Agreement, any Person dealing with the Partnership shall be entitled to assume that the General Partner has full power and authority, without consent or approval of any other Partner or Person, to encumber, sell or otherwise use in any manner any and all assets of the Partnership, to enter into any contracts on behalf of the Partnership and to take any and all actions on behalf of the Partnership, and such Person shall be entitled to deal with the General Partner as if the General Partner were the Partnership's sole party in interest, both legally and beneficially. Each Limited Partner hereby waives any and all defenses or other remedies which may be available against such Person to contest, negate or disaffirm any action of the General Partner in connection with any such dealing. In no event shall any Person dealing with the General Partner or its representatives be obligated to ascertain that the terms of this Agreement have been complied with or to inquire into the necessity or expedience of any act or action of the General Partner or its representatives. Each and every certificate, document or other instrument executed on behalf of the Partnership by the General Partner or its representatives shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i) at the time of the execution and delivery of such certificate, document or instrument, this Agreement was in full force and effect, (ii) the Person executing and delivering such certificate, document or instrument was duly authorized and empowered to do so for and on behalf of the Partnership, and (iii) such certificate, document or instrument was duly executed and delivered in accordance with the terms and provisions of this Agreement and is binding upon the Partnership.

SECTION 7.11  RESTRICTIONS ON GENERAL PARTNER'S AUTHORITY

A.      Consent Required. The General Partner may not take any action in contravention of an express prohibition or limitation of this Agreement without the written Consent of (i) all Partners adversely affected or (ii) such lower percentage of the Limited Partnership Interests as may be specifically provided for under a provision of this Agreement or the Act.

B.      Sale of All Assets of the Partnership. Except as provided in Article XIII, the General Partner may not, directly or indirectly, cause the Partnership to sell, exchange, transfer or otherwise dispose of all or substantially all of the Partnership's assets in a single transaction or a series of related transactions (including by way of merger (including a triangular merger), consolidation or other combination with any other Persons) (i) if such merger, sale or other transaction is in connection with a Termination Transaction permitted under Section 11.2.B hereof, without the Consent of the Partners

-43-

50

holding at least a majority of the then outstanding Partnership Units (including any Partnership Units held by the General Partner), or (ii) otherwise, without the Consent of the Outside Limited Partners.

        C.      Communications Act Investors. Unless otherwise approved in writing by each affected Communications Act Investor (hereinafter defined), the General Partner may not, directly or indirectly, cause the Partnership to invest in any Property or otherwise take any action that (i) would result in the Communications Act Investor being placed in a position whereby it would have or be deemed to have the right to act for any third party in selecting or dealing with any interexchange carrier (which, for purposes hereof, shall include satellite telecommunication service) in providing long distance service between local access and transport areas which originates in any State within the region in which the affected Communications Act Investor (or the operating company affiliate thereof) provides wireline telephone local exchange service, (but in no event shall the foregoing be deemed to prohibit the Partnership from contracting with a third party to perform such functions on a discretionary basis as part of its property management duties where such activity is a necessary adjunct to an investment and such activities, in the aggregate, are not significant in relation to the Partnership's business activities taken as a whole), or (ii) would cause a significant percentage of the Partnership's gross income from any Property to be attributable to either the provision or resale of long distance service between local access and transport areas which originates in any State within the region in which the affected Communications Act Investor (or the operating company affiliate thereof) provides wireline telephone local exchange service, or the manufacture of telecommunications, customer premises or related equipment. In addition, the Partnership will not engage in any telecommunications activities other than those that may be ancillary to the ownership or operation of its investments or make an investment in a cable television system that would violate the cable-telephone cross-ownership restriction in the Communications Act of 1934, as amended, with regard to the local exchange service area of a Communications Act Investor (or the operating company affiliate thereof). Notwithstanding the foregoing, the Partnership is not precluded from engaging in any telecommunications business or cable business unless such business is found to place the Communications Act Investor in violation of law. The General Partner shall have a period of 120 days following a finding by a court or regulatory body that such a violation exists to use its reasonable best efforts to prevent or eliminate such violation, including, but not limited to, correction of the condition giving rise to the violation, amendment to this Agreement or sale of the relevant property or the interest of the Communications Act Investor therein. A "Communications Act Investor" is a Partner or shareholder of the General Partner that has notified the General Partner that it is subject to the Communications Act of 1934, as amended.


SECTION 7.12  LOANS BY THIRD PARTIES

        The Partnership may incur Debt, or enter into similar credit, guarantee, financing or refinancing arrangements for any purpose (including, without limitation, in connection with any acquisition of property) with any Person upon such terms as the General Partner determines appropriate.

51

## ARTICLE VIII
## RIGHTS AND OBLIGATIONS OF LIMITED PARTNERS

### SECTION 8.1    LIMITATION OF LIABILITY

The Limited Partners shall have no liability under this Agreement except as expressly provided in this Agreement, including Section 10.5, or under the Act.

### SECTION 8.2    MANAGEMENT OF BUSINESS

No Limited Partner or Assignee (other than the General Partner, any of its Affiliates, or any officer, director, employee, partner, agent or trustee of the General Partner, the Partnership or any of their Affiliates, in their capacity as such) shall take part in the operation, management or control (within the meaning of the Act) of the Partnership's business, transact any business in the Partnership's name or have the power to sign documents for or otherwise bind the Partnership. The transaction of any such business by the General Partner, any of its Affiliates or any officer, director, employee, partner, agent or trustee of the General Partner, the Partnership or any of their Affiliates, in their capacity as such, shall not affect, impair or eliminate the limitations on the liability of the Limited Partners or Assignees under this Agreement.

### SECTION 8.3    OUTSIDE ACTIVITIES OF LIMITED PARTNERS

Subject to Section 7.5 hereof, and subject to any agreements entered into pursuant to Section 7.6.C hereof and to any other agreements entered into by a Limited Partner or its Affiliates with the Partnership or a Subsidiary, any Limited Partner (other than the General Partner) and any officer, director, employee, agent, trustee, Affiliate or shareholder of any Limited Partner shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including business interests and activities in direct or indirect competition with the Partnership. Neither the Partnership nor any Partners shall have any rights by virtue of this Agreement in any business ventures of any Limited Partner or Assignee. None of the Limited Partners (other than the General Partner) or any other Person shall have any rights by virtue of this Agreement or the partnership relationship established hereby in any business ventures of any other Person (other than the General Partner to the extent expressly provided herein), and such Person shall have no obligation pursuant to this Agreement to offer any interest in any such business ventures to the Partnership, any Limited Partner or any such other Person, even if such opportunity is of a character which, if presented to the Partnership, any Limited Partner or such other Person, could be taken by such Person.

### SECTION 8.4    RETURN OF CAPITAL

Except pursuant to the right of redemption set forth in Section 8.6, no Limited Partner shall be entitled to the withdrawal or return of its Capital Contribution, except to the extent of distributions made pursuant to this Agreement or upon termination of the Partnership as provided herein. No Limited Partner or Assignee shall have priority

-45-

52

over any other Limited Partner or Assignee either as to the return of Capital Contributions (except as permitted by Section 4.2.A) or, except to the extent provided by Exhibit C or as permitted by Sections 4.2.A, 5.1.B(i), 6.1.A(ii) and 6.1.B(i), or otherwise expressly provided in this Agreement, as to profits, losses, distributions or credits.

SECTION 8.5    RIGHTS OF LIMITED PARTNERS RELATING TO THE PARTNERSHIP

A.    General. In addition to other rights provided by this Agreement or by the Act, and except as limited by Section 8.5.D, each Limited Partner shall have the right, for a purpose reasonably related to such Limited Partner's interest as a limited partner in the Partnership, upon written demand with a statement of the purpose of such demand and at such Limited Partner's own expense:

(1)    to obtain a copy of the most recent annual and quarterly reports filed with the Securities and Exchange Commission by either the General Partner Entity or the Partnership pursuant to the Exchange Act;

(2)    to obtain a copy of the Partnership's federal, state and local income tax returns for each Partnership Year;

(3)    to obtain a current list of the name and last known business, residence or mailing address of each Partner;

(4)    to obtain a copy of this Agreement and the Certificate and all amendments thereto, together with executed copies of all powers of attorney pursuant to which this Agreement, the Certificate and all amendments thereto have been executed; and

(5)    to obtain true and full information regarding the amount of cash and a description and statement of any other property or services contributed by each Partner and which each Partner has agreed to contribute in the future, and the date on which each became a Partner.

B.    Notice of Conversion Factor. The Partnership shall notify each Limited Partner upon request of the then current Conversion Factor and any changes that have been made thereto.

C.    Notice of Extraordinary Transaction of the General Partner Entity. The General Partner Entity shall not make any extraordinary distributions of cash or property to its shareholders or effect a merger (including, without limitation, a triangular merger), a sale of all or substantially all of its assets or any other similar extraordinary transaction without notifying the Limited Partners of its intention to make such distribution or effect such merger, sale or other extraordinary transaction at least twenty (20) Business Days prior to the record date to determine shareholders eligible to receive such distribution or to vote upon the approval of such merger, sale or other extraordinary

-46-

53

transaction (or, if no such record date is applicable, at least twenty (20) business days before consummation of such merger, sale or other extraordinary transaction); provided, however, that the General Partner, in its sole discretion, may shorten the required notice period of not less than twenty (20) business days prior to the record date to determine the shareholders eligible to vote upon a merger transaction (but not any of the other transactions covered by this Section 8.5.C.) to a period of not less than ten (10) calendar days (thereby continuing to afford the holders of Units the opportunity to redeem Units under Section 8.6 on or prior to the record date for the shareholder vote on the merger transaction) so long as (i) the General Partner Entity will be the surviving entity in such merger transaction, (ii) immediately following the merger transaction, Persons who held voting securities of the General Partner Entity immediately prior to such merger transaction will hold, solely by reason of the ownership of voting securities of the General Partner Entity immediately prior to the merger transaction, voting securities of the General Partner Entity representing not less than fifty-one percent (51%) of the total combined voting power of all outstanding voting securities of the General Partner Entity after such merger, and (iii) in the event that in connection with such merger transaction the Partnership will merge with another entity, the Partnership will be the surviving entity in such merger. This provision for such notice shall not be deemed (i) to permit any transaction that otherwise is prohibited by this Agreement or requires a Consent of the Partners or (ii) to require a Consent on the part of any one or more of the Limited Partners to a transaction that does not otherwise require Consent under this Agreement. Each Limited Partner agrees, as a condition to the receipt of the notice pursuant hereto, to keep confidential the information set forth therein until such time as the General Partner Entity has made public disclosure thereof and to use such information during such period of confidentiality solely for purposes of determining whether to exercise the Redemption Right; provided, however, that a Limited Partner may disclose such information to its attorney, accountant and/or financial advisor for purposes of obtaining advice with respect to such exercise so long as such attorney, accountant and/or financial advisor agrees to receive and hold such information subject to this confidentiality requirement.

D.       Confidentiality. Notwithstanding any other provision of this Section 8.5, the General Partner may keep confidential from the Limited Partners, for such period of time as the General Partner determine in its sole and absolute discretion to be reasonable, any information that (i) the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business or (ii) the Partnership is required by law or by agreements with unaffiliated third parties to keep confidential.

SECTION 8.6    REDEMPTION RIGHT

A.       General. (i) Subject to Section 8.6.C, at any time on or after the first anniversary date of the issuance of a Partnership Unit to a Limited Partner pursuant to Article IV hereof (which one-year period shall commence upon the issuance of such Partnership Unit regardless of whether such Partnership Unit is designated upon issuance as a Class A Unit, a Class B Unit or otherwise and shall include the period of time from the date such Partnership Unit is issued to such Limited Partner as other than a Class A Unit until the date such Partnership Unit is converted automatically to a Class A Unit pursuant

-47-

54

to Section 4.2.C hereof), or on or after such date prior to the expiration of such one-year period as the General Partner, in its sole and absolute discretion, designates with respect to any or all Class A Units then outstanding, the holder of a Partnership Unit (if other than the General Partner or the General Partner Entity or any Subsidiary of either the General Partner or the General Partner Entity) shall have the right (the "Redemption Right") to require the Partnership to redeem such Partnership Unit, with such redemption to occur on the Specified Redemption Date and at a redemption price equal to and in the form of the Cash Amount to be paid by the Partnership. Any such Redemption Right shall be exercised pursuant to a Notice of Redemption delivered to the Partnership (with a copy to the General Partner) by the Limited Partner who is exercising the Redemption Right (the "Redeeming Partner"). A Limited Partner may exercise the Redemption Right from time to time, without limitation as to frequency, with respect to part or all of the Units that it owns, as selected by the Limited Partner, provided that a Limited Partner may not exercise the Redemption Right for less than one thousand (1,000) Partnership Units unless such Redeeming Partner then holds less than one thousand (1,000) Partnership Units, in which event such Redeeming Partner must exercise the Redemption Right for all of the Partnership Units held by such Redeeming Partner.

(ii)     The Redeeming Partner shall have no right with respect to any Partnership Units so redeemed to receive any distributions paid after the Specified Redemption Date with respect to such Partnership Units.

(iii)    The Assignee of any Limited Partner may exercise the rights of such Limited Partner pursuant to this Section 8.6, and such Limited Partner shall be deemed to have assigned such rights to such Assignee and shall be bound by the exercise of such rights by such Limited Partner's Assignee. In connection with any exercise of such rights by such Assignee on behalf of such Limited Partner, the Cash Amount shall be paid by the Partnership directly to such Assignee and not to such Limited Partner.

(iv)     If the General Partner Entity provides notice to the Limited Partners, pursuant to Section 8.5.C hereof, the Redemption Right shall be exercisable, without regard to whether the Partnership Units have been outstanding for any specified period, during the period commencing on the date on which the General Partner Entity provides such notice and ending on the record date to determine shareholders eligible to receive such distribution or to vote upon the approval of such merger, sale or other extraordinary transaction (or, if no such record date is applicable, at least twenty (20) business days before the consummation of such merger, sale or other extraordinary transaction). If this subparagraph (iv) applies, the Specified Redemption Date is the date on which the Partnership and the General Partner receive notice of exercise of the Redemption Right, rather than ten (10) Business Days after receipt of the notice of redemption.

B.     General Partner Assumption of Right. (i) If a Limited Partner has delivered a Notice of Redemption, the General Partner may, in its sole and absolute discretion (subject to the limitations on ownership and transfer of Shares set forth in the Declaration of Trust), elect to assume directly and satisfy a Redemption Right by paying to the Redeeming Partner either the Cash Amount or the Shares Amount, as the General Partner determines in its sole and absolute discretion (provided that payment of the

-48-

55

Redemption Amount in the form of Shares shall be in Shares registered for resale under Section 12 of the Exchange Act and listed for trading on the exchange or national market on which the Shares are Publicly Traded and, provided further that, if the Shares are not Publicly Traded at the time a Redeeming Partner exercises its Redemption Right, the Redemption Amount shall be paid only in the form of the Cash Amount unless the Redeeming Partner, in its sole and absolute discretion, consents to payment of the Redemption Amount in the form of the Shares Amount), on the Specified Redemption Date, whereupon the General Partner shall acquire the Partnership Units offered for redemption by the Redeeming Partner and shall be treated for all purposes of this Agreement as the owner of such Partnership Units. Unless the General Partner, in its sole and absolute discretion, shall exercise its right to assume directly and satisfy the Redemption Right, the General Partner shall not have any obligation to the Redeeming Partner or to the Partnership with respect to the Redeeming Partner's exercise of the Redemption Right. If the General Partner shall exercise its right to satisfy the Redemption Right in the manner described in the first sentence of this Section 8.6B and shall fully perform its obligations in connection therewith, the Partnership shall have no right or obligation to pay any amount to the Redeeming Partner with respect to such Redeeming Partner's exercise of the Redemption Right, and each of the Redeeming Partner, the Partnership and the General Partner shall, for federal income tax purposes, treat the transaction between the General Partner and the Redeeming Partner as a sale of the Redeeming Partner's Partnership Units to the General Partner. Nothing contained in this Section 8.6.B shall imply any right of the General Partner to require any Limited Partner to exercise the Redemption Right afforded to such Limited Partner pursuant to Section 8.6.A.

(ii)    If the General Partner determines to pay the Redeeming Partner the Redemption Amount in the form of Shares, the total number of Shares to be paid to the Redeeming Partner in exchange for the Redeeming Partner's Partnership Units shall be the applicable Shares Amount. If this amount is not a whole number of Shares, the Redeeming Partner shall be paid (i) that number of Shares which equals the nearest whole number less than such amount plus (ii) an amount of cash which the General Partner determines, in its reasonable discretion, to represent the fair value of the remaining fractional Share which would otherwise be payable to the Redeeming Partner.

(iii)    Each Redeeming Partner agrees to execute such documents as the General Partner may reasonably require in connection with the issuance of Shares upon exercise of the Redemption Right.

C.    Exceptions to Exercise of Redemption Right. Notwithstanding the provisions of Sections 8.6.A and 8.6.B, a Partner shall not be entitled to exercise the Redemption Right pursuant to Section 8.6.A if (but only as long as) the delivery of Shares to such Partner on the Specified Redemption Date (i) would be prohibited under the Declaration of Trust or (ii) would be prohibited under applicable federal or state securities laws or regulations (in each case regardless of whether the General Partner would in fact assume and satisfy the Redemption Right).

D.    No Liens on Partnership Units Delivered for Redemption. Each Limited Partner covenants and agrees with the General Partner that all Partnership Units delivered for redemption shall be delivered to the Partnership or the General Partner, as

-49-

56

the case may be, free and clear of all liens; and, notwithstanding anything contained herein to the contrary, neither the General Partner nor the Partnership shall be under any obligation to acquire Partnership Units which are or may be subject to any liens. Each Limited Partner further agrees that, if any state or local property transfer tax is payable as a result of the transfer of its Partnership Units to the Partnership or the General Partner, such Limited Partner shall assume and pay such transfer tax.

     E.     Additional Partnership Interests. If the Partnership issues Partnership Interests to any Additional Limited Partner pursuant to Article IV, the General Partner shall make such revisions to this Section 8.6 as it determines are necessary to reflect the issuance of such Partnership Interests (including setting forth any restrictions on the exercise of the Redemption Right with respect to such Partnership Interests).

ARTICLE IX<br>BOOKS, RECORDS, ACCOUNTING AND REPORTS

SECTION 9.1   RECORDS AND ACCOUNTING

     The General Partner shall keep or cause to be kept at the principal office of the Partnership appropriate books and records with respect to the Partnership's business, including, without limitation, all books and records necessary to provide to the Limited Partners any information, lists and copies of documents required to be provided pursuant to Section 9.3. Any records maintained by or on behalf of the Partnership in the regular course of its business may be kept on, or be in the form of, punch cards, magnetic tape, photographs, micrographics or any other information storage device, provided that the records so maintained are convertible into clearly legible written form within a reasonable period of time. The books of the Partnership shall be maintained, for financial and tax reporting purposes, on an accrual basis in accordance with generally accepted accounting principles.

SECTION 9.2   FISCAL YEAR

     The fiscal year of the Partnership shall be the calendar year.

SECTION 9.3   REPORTS

     A.     Annual Reports. As soon as practicable, but in no event later than the date on which the General Partner Entity mails its annual report to its shareholders, the General Partner Entity shall cause to be mailed to each Limited Partner an annual report, as of the close of the most recently ended Partnership Year, containing financial statements of the Partnership, or of the General Partner Entity if such statements are prepared solely on a consolidated basis with the Partnership, for such Partnership Year, presented in accordance with generally accepted accounting principles, such statements to be audited by a nationally recognized firm of independent public accountants selected by the General Partner Entity.

-50-

57

B.    Quarterly Reports. If and to the extent that the General Partner Entity mails quarterly reports to its shareholders, as soon as practicable, but in no event later than the date on such reports are mailed, the General Partner Entity shall cause to be mailed to each Limited Partner a report containing unaudited financial statements, as of the last day of such calendar quarter, of the Partnership, or of the General Partner Entity if such statements are prepared solely on a consolidated basis with the Partnership, and such other information as may be required by applicable law or regulation, or as the General Partner determines to be appropriate.

ARTICLE X
TAX MATTERS

SECTION 10.1  PREPARATION OF TAX RETURNS

The General Partner shall arrange for the preparation and timely filing of all returns of Partnership income, gains, deductions, losses and other items required of the Partnership for federal and state income tax purposes and shall use all reasonable efforts to furnish, within ninety (90) days of the close of each taxable year, the tax information reasonably required by Limited Partners for federal and state income tax reporting purposes.

SECTION 10.2  TAX ELECTIONS

Except as otherwise provided herein, the General Partner shall, in its sole and absolute discretion, determine whether to make any available election pursuant to the Code; provided, however, that the General Partner shall make the election under Section 754 of the Code in accordance with applicable regulations thereunder. The General Partner shall have the right to seek to revoke any such election (including, without limitation, the election under Section 754 of the Code) upon the General Partner's determination in its sole and absolute discretion that such revocation is in the best interests of the Partners.

SECTION 10.3  TAX MATTERS PARTNER

A.    General. The General Partner shall be the "tax matters partner" of the Partnership for federal income tax purposes. Pursuant to Section 6223(c)(3) of the Code, upon receipt of notice from the IRS of the beginning of an administrative proceeding with respect to the Partnership, the tax matters partner shall furnish the IRS with the name, address, taxpayer identification number and profit interest of each of the Limited Partners and any Assignees; provided, however, that such information is provided to the Partnership by the Limited Partners.

B.    Powers. The tax matters partner is authorized, but not required:

(1)    to enter into any settlement with the IRS with respect to any administrative or judicial proceedings for the adjustment of Partnership items required to be taken into account by a

-51-

58

Partner for income tax purposes (such administrative proceedings being referred to as a "tax audit" and such judicial proceedings being referred to as "judicial review"), and in the settlement agreement the tax matters partner may expressly state that such agreement shall bind all Partners, except that such settlement agreement shall not bind any Partner (i) who (within the time prescribed pursuant to the Code and Regulations) files a statement with the IRS providing that the tax matters partner shall not have the authority to enter into a settlement agreement on behalf of such Partner or (ii) who is a "notice partner" (as defined in Section 6231(a)(8) of the Code) or a member of a "notice group" (as defined in Section 6223(b)(2) of the Code);

(2)     if a notice of a final administrative adjustment at the Partnership level of any item required to be taken into account by a Partner for tax purposes (a "final adjustment") is mailed to the tax matters partner, to seek judicial review of such final adjustment, including the filing of a petition for readjustment with the Tax Court or the filing of a complaint for refund with the United States Claims Court or the District Court of the United States for the district in which the Partnership's principal place of business is located;

(3)     to intervene in any action brought by any other Partner for judicial review of a final adjustment;

(4)     to file a request for an administrative adjustment with the IRS at any time and, if any part of such request is not allowed by the IRS, to file an appropriate pleading (petition or complaint) for judicial review with respect to such request;

(5)     to enter into an agreement with the IRS to extend the period for assessing any tax which is attributable to any item required to be taken into account by a Partner for tax purposes, or an item affected by such item; and

(6)     to take any other action on behalf of the Partners of the Partnership in connection with any tax audit or judicial review proceeding to the extent permitted by applicable law or regulations.

The taking of any action and the incurring of any expense by the tax matters partner in connection with any such proceeding, except to the extent required by law, is a matter in the sole and absolute discretion of the tax matters partner and the provisions relating to indemnification of the General Partner set forth in Section 7.7 shall be fully applicable to the tax matters partner in its capacity as such.

59

      C.      Reimbursement. The tax matters partner shall receive no compensation for its services. All third party costs and expenses incurred by the tax matters partner in performing its duties as such (including legal and accounting fees and expenses) shall be borne by the Partnership. Nothing herein shall be construed to restrict the Partnership from engaging an accounting firm and/or law firm to assist the tax matters partner in discharging its duties hereunder, so long as the compensation paid by the Partnership for such services is reasonable.


SECTION 10.4   ORGANIZATIONAL EXPENSES

      The Partnership shall elect to deduct expenses, if any, incurred by it in organizing the Partnership ratably over a sixty (60) month period as provided in Section 709 of the Code.


SECTION 10.5   WITHHOLDING

      Each Limited Partner hereby authorizes the Partnership to withhold from or pay on behalf of or with respect to such Limited Partner any amount of federal, state, local, or foreign taxes that the General Partner determines that the Partnership is required to withhold or pay with respect to any amount distributable or allocable to such Limited Partner pursuant to this Agreement, including, without limitation, any taxes required to be withheld or paid by the Partnership pursuant to Section 1441, 1442, 1445, or 1446 of the Code. Any amount paid on behalf of or with respect to a Limited Partner shall constitute a loan by the Partnership to such Limited Partner, which loan shall be repaid by such Limited Partner within fifteen (15) days after notice from the General Partner that such payment must be made unless (i) the Partnership withholds such payment from a distribution which would otherwise be made to the Limited Partner or (ii) the General Partner determines, in its sole and absolute discretion, that such payment may be satisfied out of the available funds of the Partnership which would, but for such payment, be distributed to the Limited Partner. Any amounts withheld pursuant to the foregoing clauses (i) or (ii) shall be treated as having been distributed to such Limited Partner. Each Limited Partner hereby unconditionally and irrevocably grants to the Partnership a security interest in such Limited Partner's Partnership Interest to secure such Limited Partner's obligation to pay to the Partnership any amounts required to be paid pursuant to this Section 10.5. If a Limited Partner fails to pay any amounts owed to the Partnership pursuant to this Section 10.5 when due, the General Partner may, in its sole and absolute discretion, elect to make the payment to the Partnership on behalf of such defaulting Limited Partner, and in such event shall be deemed to have loaned such amount to such defaulting Limited Partner and shall succeed to all rights and remedies of the Partnership as against such defaulting Limited Partner (including, without limitation, the right to receive distributions). Any amounts payable by a Limited Partner hereunder shall bear interest at the base rate on corporate loans at large United States money center commercial banks, as published from time to time in the Wall Street Journal, plus four (4) percentage points (but not higher than the maximum lawful rate under the laws of the State of Illinois) from the date such amount is due (i.e., fifteen (15) days after demand) until such amount is paid in full. Each Limited Partner shall take such actions as the

-53-

60

Partnership or the General Partner shall request to perfect or enforce the
security interest created hereunder.

ARTICLE XI
TRANSFERS AND WITHDRAWALS

SECTION 11.1  TRANSFER

     A.     Definition. The term "transfer," when used in this Article XI
with respect to a Partnership Interest or a Partnership Unit, shall be deemed to
refer to a transaction by which the General Partner purports to assign all or
any part of its General Partnership Interest to another Person or by which a
Limited Partner purports to assign all or any part of its Limited Partnership
Interest to another Person, and includes a sale, assignment, gift, pledge,
encumbrance, hypothecation, mortgage, exchange or any other disposition by law
or otherwise. The term "transfer" when used in this Article XI does not include
any redemption or repurchase of Partnership Units by the Partnership from a
Partner or acquisition of Partnership Units from a Limited Partner by the
General Partner pursuant to Section 8.6 or otherwise. No part of the interest of
a Limited Partner shall be subject to the claims of any creditor, any spouse for
alimony or support, or to legal process, and may not be voluntarily or
involuntarily alienated or encumbered except as may be specifically provided for
in this Agreement.

     B.     General. No Partnership Interest shall be transferred, in
whole or in part, except in accordance with the terms and conditions set forth
in this Article XI. Any transfer or purported transfer of a Partnership Interest
not made in accordance with this Article XI shall be null and void.

SECTION 11.2  TRANSFERS OF PARTNERSHIP INTERESTS OF GENERAL PARTNER

     A.     Except for transfers of Partnership Units to the Partnership
as provided in Section 7.5 or Section 8.6, the General Partner may not transfer
any of its Partnership Interest (including both its General Partnership Interest
and its Limited Partnership Interest) except in connection with a transaction
described in Section 11.2.B or as otherwise expressly permitted under this
Agreement, nor shall the General Partner withdraw as the General Partner except
in connection with a transaction described in Section 11.2.B.

     B.     The General Partner shall not engage in any merger (including
a triangular merger), consolidation or other combination with or into another
person, sale of all or substantially all of its assets or any reclassification,
recapitalization or change of outstanding Shares (other than a change in par
value, or from par value to no par value, or as a result of a subdivision or
combination as described in the definition of "Conversion Factor") ("Termination
Transaction"), unless the Termination Transaction has been approved by the
Consent of the Partners holding at least a majority of the then outstanding
Partnership Units (including any Partnership Units held by the General Partner)
and in connection with which all Limited Partners either will receive, or will
have the right to elect to receive, for each Partnership Unit an amount of cash,
securities, or

61

other property equal to the product of the Conversion Factor multiplied by the greatest amount of cash, securities or other property paid to a holder of Shares corresponding to such Partnership Unit in consideration of one such Share at any time during the period from and after the date on which the Termination Transaction is consummated; provided that if, in connection with the Termination Transaction, a purchase, tender or exchange offer shall have been made to and accepted by the holders of more than fifty percent (50%) of the outstanding Shares, each holder of Partnership Units shall receive, or shall have the right to elect to receive without any right of Consent set forth above in this subsection B, the greatest amount of cash, securities, or other property which such holder would have received had it exercised the Redemption Right and received Shares in exchange for its Partnership Units immediately prior to the expiration of such purchase, tender or exchange offer and had thereupon accepted such purchase, tender or exchange offer.

SECTION 11.3  LIMITED PARTNERS' RIGHTS TO TRANSFER

    A.       General. Subject to the provisions of Sections 11.3.C, 11.3.D, 11.3.E, 11.4 and 11.6, a Limited Partner (other than the General Partner) may transfer with or without the consent of the General Partner, all or any portion of its Partnership Interest, or any of such Limited Partner's rights as a Limited Partner, provided that prior written notice of such proposed transfer is delivered to the General Partner. Notwithstanding the foregoing, any Limited Partner may, at any time, without the consent of the General Partner, (i) transfer all or any portion of its Partnership Interest to the General Partner, (ii) transfer all or any portion of its Partnership Interest to an Affiliate, another original Limited Partner or to an Immediate Family member, subject to the provisions of Section 11.6, (iii) transfer all or any portion of its Partnership Interest to a trust for the benefit of a charitable beneficiary or to a charitable foundation, subject to the provisions of Section 11.6, and (iv) subject to the provisions of Section 11.6, pledge (a "Pledge") all or any portion of its Partnership Interest to a lending institution, which is not an Affiliate of such Limited Partner, as collateral or security for a bona fide loan or other extension of credit, and transfer such pledged Partnership Interest to such lending institution in connection with the exercise of remedies under such loan or extension or credit. Each Limited Partner or Assignee (resulting from a transfer made pursuant to clauses (i) - (iv) of the proviso of the preceding sentence) shall have the right to transfer all or any portion of its Partnership Interest, subject to the provisions of Section 11.6 and the satisfaction of each of the following conditions (in addition to the right of each such Limited Partner or Assignee to continue to make any such transfer permitted by clauses (i) - (iv) of such proviso without satisfying either of the following conditions):

        (a)      GENERAL PARTNER RIGHT OF FIRST REFUSAL. The transferring Partner shall give written notice of the proposed transfer to the General Partner, which notice shall state (i) the identity of the proposed transferee, and (ii) the amount and type of consideration proposed to be received for the transferred Partnership Units. The General Partner shall have ten (10) days upon which to give the transferring Partner notice of its election to acquire the Partnership Units on the proposed terms. If it so elects, it shall purchase the Partnership Units on

-55-

62

such terms within ten (10) days after giving notice of such election. If it does not so elect, the transferring Partner may transfer such Partnership Units to a third party, on economic terms no more favorable to the transferee than the proposed terms, subject to the other conditions of this Section 11.3.

(b)    QUALIFIED TRANSFEREE. Any transfer of a Partnership Interest shall be made only to Qualified Transferees.

It is a condition to any transfer otherwise permitted hereunder (excluding Pledges of a Partnership Interest, but including any transfer of the pledged Partnership Interest, whether to the secured party or otherwise, pursuant to the secured party's exercise of its remedies under such Pledge or the related loan or extension of credit) that the transferee assumes by operation of law or express agreement all of the obligations of the transferor Limited Partner under this Agreement with respect to such transferred Partnership Interest and no such transfer (other than pursuant to a statutory merger or consolidation wherein all obligations and liabilities of the transferor Partner are assumed by a successor corporation by operation of law) shall relieve the transferor Partner of its obligations under this Agreement without the approval of the General Partner, in its reasonable discretion. Notwithstanding the foregoing, any transferee of any transferred Partnership Interest shall be subject to any and all ownership limitations contained in the Declaration of Trust. Any transferee, whether or not admitted as a Substituted Limited Partner, shall take subject to the obligations of the transferor hereunder. Unless admitted as a Substitute Limited Partner, no transferee, whether by a voluntary transfer, by operation of law or otherwise, shall have rights hereunder, other than the rights of an Assignee as provided in Section 11.5.

B.    Incapacitated Limited Partners. If a Limited Partner is subject to Incapacity, the executor, administrator, trustee, committee, guardian, conservator or receiver of such Limited Partner's estate shall have all the rights of a Limited Partner, but not more rights than those enjoyed by other Limited Partners for the purpose of settling or managing the estate and such power as the Incapacitated Limited Partner possessed to transfer all or any part of its interest in the Partnership. The Incapacity of a Limited Partner, in and of itself, shall not dissolve or terminate the Partnership.

C.    No Transfers Violating Securities Laws. The General Partner may prohibit any transfer of Partnership Units by a Limited Partner unless it receives a written opinion of legal counsel (which opinion and counsel shall be reasonably satisfactory to the Partnership) to such Limited Partner that such transfer would not require filing of a registration statement under the Securities Act or would not otherwise violate any federal, or state securities laws or regulations applicable to the Partnership or the Partnership Unit or, at the option of the Partnership, an opinion of legal counsel to the Partnership to the same effect.

D.    No Transfers Affecting Tax Status of Partnership. No transfer of Partnership Units by a Limited Partner (including a redemption or exchange pursuant to

-56-

63

Section 8.6) may be made to any Person if (i) in the opinion of legal counsel
for the Partnership, it would result in the Partnership being treated as an
association taxable as a corporation for federal income tax purposes or would
result in a termination of the Partnership for federal income tax purposes
(except as a result of the redemption or exchange for Shares of all Partnership
Units held by all Limited Partners other than the General Partner or the General
Partner Entity or any Subsidiary of the General Partner or the General Partner
Entity or pursuant to a transaction expressly permitted under Section 7.11.B or
Section 11.2), (ii) in the opinion of legal counsel for the Partnership, it
would adversely affect the ability of the General Partner Entity to continue to
qualify as a REIT or would subject the General Partner Entity to any additional
taxes under Section 857 or Section 4981 of the Code or (iii) such transfer is
effectuated through an "established securities market" or a "secondary market
(or the substantial equivalent thereof)" within the meaning of Section 7704 of
the Code (provided that this clause (iii) shall not be the basis for limiting or
restricting in any manner the exercise of the Redemption Right under Section 8.6
unless, and only to the extent that, outside tax counsel provides to the General
Partner an opinion to the effect that, in the absence of such limitation or
restriction, there is a significant risk that the Partnership will be treated as
a "publicly traded partnership" and, by reason thereof, taxable as a
corporation).

          E.        No Transfers to Holders of Nonrecourse Liabilities. No Pledge
or transfer of any Partnership Units may be made to a lender to the Partnership
or any Person who is related (within the meaning of Section 1.752-4(b) of the
Regulations) to any lender to the Partnership whose loan constitutes a
Nonrecourse Liability unless (i) the General Partner is provided notice thereof
and (ii) the lender enters into an arrangement with the Partnership and the
General Partner to exchange or redeem for the Redemption Amount any Partnership
Units in which a security interest is held simultaneously with the time at which
such lender would be deemed to be a partner in the Partnership for purposes of
allocating liabilities to such lender under Section 752 of the Code.

SECTION 11.4  SUBSTITUTED LIMITED PARTNERS

          A.        Consent of General Partner. No Limited Partner shall have the
right to substitute a transferee as a Limited Partner in its place. The General
Partner shall, however, have the right to consent to the admission of a
transferee of the interest of a Limited Partner pursuant to this Section 11.4 as
a Substituted Limited Partner, which consent may be given or withheld by the
General Partner in its sole and absolute discretion. The General Partner's
failure or refusal to permit a transferee of any such interests to become a
Substituted Limited Partner shall not give rise to any cause of action against
the Partnership or any Partner. The General Partner hereby grants its consent to
the admission as a Substituted Limited Partner to any bona fide financial
institution that loans money or otherwise extends credit to a holder of Units
and thereafter becomes the owner of such Units pursuant to the exercise by such
financial institution of its rights under a Pledge of such Units granted in
connection with such loan or extension of credit.

          B.        Rights of Substituted Limited Partner. A transferee who has
been admitted as a Substituted Limited Partner in accordance with this Article
XI shall have all the rights and powers and be subject to all the restrictions
and liabilities of a Limited Partner under this Agreement. The admission of any
transferee as a Substituted Limited

-57-

64

Partner shall be conditioned upon the transferee executing and delivering to the Partnership an acceptance of all the terms and conditions of this Agreement (including, without limitation, the provisions of Section 15.11) and such other documents or instruments as may be required to effect the admission.

C.    Partner Registry. Upon the admission of a Substituted Limited Partner, the General Partner shall include the name, address, Capital Account, number of Partnership Units, and Percentage Interest of such Substituted Limited Partner on the Partner Registry and eliminate or adjust, if necessary, the name, address, Capital Account, number of Partnership Units and Percentage Interest of the predecessor of such Substituted Limited Partner on the Partner Registry.


SECTION 11.5  ASSIGNEES

If the General Partner, in its sole and absolute discretion, does not consent to the admission of any permitted transferee under Section 11.3 as a Substituted Limited Partner, as described in Section 11.4, such transferee shall be considered an Assignee for purposes of this Agreement. An Assignee shall be entitled to all the rights of an assignee of a limited partnership interest under the Act, including the right to receive distributions from the Partnership and the share of Net Income, Net Losses, gain, loss and Recapture Income attributable to the Partnership Units assigned to such transferee, and shall have the rights granted to the Limited Partners under Section 8.6, but shall not be deemed to be a holder of Partnership Units for any other purpose under this Agreement, and shall not be entitled to vote such Partnership Units in any matter presented to the Limited Partners for a vote (such Partnership Units being deemed to have been voted on such matter in the same proportion as all other Partnership Units held by Limited Partners are voted). If any such transferee desires to make a further assignment of any such Partnership Units, such transferee shall be subject to all the provisions of this Article XI to the same extent and in the same manner as any Limited Partner desiring to make an assignment of Partnership Units.


SECTION 11.6  GENERAL PROVISIONS

A.    Withdrawal of Limited Partner. No Limited Partner may withdraw from the Partnership other than as a result of a permitted transfer of all of such Limited Partner's Partnership Units in accordance with this Article XI or pursuant to redemption of all of its Partnership Units under Section 8.6.

B.    Termination of Status as Limited Partner. Any Limited Partner who shall transfer all of its Partnership Units in a transfer permitted pursuant to this Article XI or pursuant to redemption of all of its Partnership Units under Section 8.6 shall cease to be a Limited Partner.

C.    Timing of Transfers. Transfers pursuant to this Article XI may only be made upon three business days prior notice, unless the General Partner otherwise agrees.

65

D.      Allocations. If any Partnership Interest is transferred during any quarterly segment of the Partnership's fiscal year in compliance with the provisions of this Article XI or redeemed or transferred pursuant to Section 8.6, Net Income, Net Losses, each item thereof and all other items attributable to such interest for such fiscal year shall be divided and allocated between the transferor Partner and the transferee Partner by taking into account their varying interests during the fiscal year in accordance with Section 706(d) of the Code, using the interim closing of the books method (unless the General Partner, in its sole and absolute discretion, elects to adopt a daily, weekly, or a monthly proration period, in which event Net Income, Net Losses, each item thereof and all other items attributable to such interest for such fiscal year shall be prorated based upon the applicable method selected by the General Partner). Solely for purposes of making such allocations, each of such items for the calendar month in which the transfer or redemption occurs shall be allocated to the Person who is a Partner as of midnight on the last day of said month. All distributions of Available Cash attributable to any Partnership Unit with respect to which the Partnership Record Date is before the date of such transfer, assignment or redemption shall be made to the transferor Partner or the Redeeming Partner, as the case may be, and, in the case of a transfer or assignment other than a redemption, all distributions of Available Cash thereafter attributable to such Partnership Unit shall be made to the transferee Partner.

E.      Additional Restrictions. In addition to any other restrictions on transfer herein contained, including without limitation the provisions of this Article XI, in no event may any transfer or assignment of a Partnership Interest by any Partner (including pursuant to Section 8.6) be made without the express consent of the General Partner, in its sole and absolute discretion, (i) to any person or entity who lacks the legal right, power or capacity to own a Partnership Interest; (ii) in violation of applicable law; (iii) of any component portion of a Partnership Interest, such as the Capital Account, or rights to distributions, separate and apart from all other components of a Partnership Interest; (iv) if in the opinion of legal counsel to the Partnership such transfer would cause a termination of the Partnership for federal or state income tax purposes (except as a result of the redemption or exchange for Shares of all Partnership Units held by all Limited Partners or pursuant to a transaction expressly permitted under Section 7.11.B or Section 11.2); (v) if in the opinion of counsel to the Partnership, such transfer would cause the Partnership to cease to be classified as a partnership for federal income tax purposes (except as a result of the redemption or exchange for Shares of all Partnership Units held by all Limited Partners or pursuant to a transaction expressly permitted under Section 7.11.B or Section 11.2); (vi) if such transfer would cause the Partnership Interests of "benefit plan investors" to become "significant," as those terms are used in Section 7.9.E., or would cause the Partnership to become, with respect to any employee benefit plan subject to Title I of ERISA, a "party-in-interest" (as defined in Section 3(14) of ERISA) or a "disqualified person" (as defined in Section 4975(c) of the Code); (vii) if such transfer would, in the opinion of counsel to the Partnership, cause any portion of the assets of the Partnership to constitute assets of any employee benefit plan pursuant to Department of Labor Regulations Section 2510.1-101; (viii) if such transfer requires the registration of such Partnership Interest pursuant to any applicable federal or state securities laws; (ix) if such transfer is effectuated through an "established securities market" or a "secondary market" (or the substantial equivalent thereof) within the meaning of Section 7704 of the Code or such transfer causes the Partnership to become a "publicly traded partnership," as

66

such term is defined in Section 469(k)(2) or Section 7704(b) of the Code (provided that this clause (ix) shall not be the basis for limiting or restricting in any manner the exercise of the Redemption Right under Section 8.6 unless, and only to the extent that, outside tax counsel provides to the General Partner an opinion to the effect that, in the absence of such limitation or restriction, there is a significant risk that the Partnership will be treated as a "publicly traded partnership" and, by reason thereof, taxable as a corporation); (x) if such transfer subjects the Partnership to regulation under the Investment Company Act of 1940, the Investment Advisors Act of 1940 or ERISA, each as amended; (xi) such transfer could adversely affect the ability of the General Partner Entity to remain qualified as a REIT; or (xii) if in the opinion of legal counsel for the transferring Partner (which opinion and counsel shall be reasonably satisfactory to the Partnership) or legal counsel for the Partnership, such transfer would adversely affect the ability of the General Partner Entity to qualify as a REIT or subject the General Partner Entity to any taxes under Section 857 or Section 4981 of the Code.

    F.    Avoidance of "Publicly Traded Partnership" Status. The General Partner shall monitor the transfers of interests in the Partnership to determine (i) if such interests are being traded on an "established securities market" or a "secondary market (or the substantial equivalent thereof)" within the meaning of Section 7704 of the Code and (ii) whether additional transfers of interests would result in the Partnership being unable to qualify for at least one of the "safe harbors" set forth in Regulations Section 1.7704-1 (or such other guidance subsequently published by the IRS setting forth safe harbors under which interests will not be treated as "readily tradable on a secondary market (or the substantial equivalent thereof)" within the meaning of Section 7704 of the Code) (the "Safe Harbors"). The General Partner shall take all steps reasonably necessary or appropriate to prevent any trading of interests or any recognition by the Partnership of transfers made on such markets and, except as otherwise provided herein, to insure that at least one of the Safe Harbors is met; provided, however, that the foregoing shall not authorize the General Partner to limit or restrict in any manner the right of any holder of a Partnership Unit to exercise the Redemption Right in accordance with the terms of Section 8.6 unless, and only to the extent that, outside tax counsel provides to the General Partner an opinion to the effect that, in the absence of such limitation or restriction, there is a significant risk that the Partnership will be treated as a "publicly traded partnership" and, by reason thereof, taxable as a corporation.

ARTICLE XII
ADMISSION OF PARTNERS

SECTION 12.1  ADMISSION OF A SUCCESSOR GENERAL PARTNER

    A successor to all of the General Partner's General Partnership Interest pursuant to Section 11.2 who is proposed to be admitted as a successor General Partner shall be admitted to the Partnership as the General Partner, effective upon such transfer. Any such successor shall carry on the business of the Partnership without dissolution. In such case, the admission shall be subject to such successor General Partner executing and delivering to the Partnership an acceptance of all of the terms and conditions of this Agreement and such other documents or instruments as may be required to effect the admission.

67

SECTION 12.2  ADMISSION OF ADDITIONAL LIMITED PARTNERS

A.      General. No Person shall be admitted as an Additional Limited Partner without the consent of the General Partner, which consent shall be given or withheld in the General Partner's sole and absolute discretion. A Person who makes a Capital Contribution to the Partnership in accordance with this Agreement, including without limitation, under Section 4.1.C, or who exercises an option to receive Partnership Units shall be admitted to the Partnership as an Additional Limited Partner only with the consent of the General Partner and only upon furnishing to the General Partner (i) evidence of acceptance in form satisfactory to the General Partner of all of the terms and conditions of this Agreement, including, without limitation, the power of attorney granted in Section 15.11 and (ii) such other documents or instruments as may be required in the discretion of the General Partner to effect such Person's admission as an Additional Limited Partner. The admission of any Person as an Additional Limited Partner shall become effective on the date upon which the name of such Person is recorded on the books and records of the Partnership, following the consent of the General Partner to such admission.

B.      Allocations to Additional Limited Partners. If any Additional Limited Partner is admitted to the Partnership on any day other than the first day of a Partnership Year, then Net Income, Net Losses, each item thereof and all other items allocable among Partners and Assignees for such Partnership Year shall be allocated among such Additional Limited Partner and all other Partners and Assignees by taking into account their varying interests during the Partnership Year in accordance with Section 706(d) of the Code, using the interim closing of the books method (unless the General Partner, in its sole and absolute discretion, elects to adopt a daily, weekly or monthly proration method, in which event Net Income, Net Losses, and each item thereof would be prorated based upon the applicable period selected by the General Partner). Solely for purposes of making such allocations, each of such items for the calendar month in which an admission of any Additional Limited Partner occurs shall be allocated among all the Partners and Assignees including such Additional Limited Partner. All distributions of Available Cash with respect to which the Partnership Record Date is before the date of such admission shall be made solely to Partners and Assignees other than the Additional Limited Partner, and all distributions of Available Cash thereafter shall be made to all the Partners and Assignees including such Additional Limited Partner.


SECTION 12.3  AMENDMENT OF AGREEMENT AND CERTIFICATE OF LIMITED PARTNERSHIP

For the admission to the Partnership of any Partner, the General Partner shall take all steps necessary and appropriate under the Act to amend the records of the Partnership and, if necessary, to prepare as soon as practical an amendment of this Agreement and, if required by law, shall prepare and file an amendment to the Certificate and may for this purpose exercise the power of attorney granted pursuant to Section 15.11 hereof.

68

ARTICLE XIII
DISSOLUTION AND LIQUIDATION

SECTION 13.1  DISSOLUTION

The Partnership shall not be dissolved by the admission of Substituted Limited Partners or Additional Limited Partners or by the admission of a successor General Partner in accordance with the terms of this Agreement. Upon the withdrawal of the General Partner, any successor General Partner shall continue the business of the Partnership. The Partnership shall dissolve, and its affairs shall be wound up, upon the first to occur of any of the following ("Liquidating Events"):

(i)    the expiration of its term as provided in Section 2.4 hereof;

(ii)    an event of withdrawal of the General Partner, as defined in the Act (other than an event of bankruptcy), unless within ninety (90) days after the withdrawal a "majority in interest" (as defined below) of the remaining Partners Consent in writing to continue the business of the Partnership and to the appointment, effective as of the date of withdrawal, of a substitute General Partner;

(iii)    through December 31, 2046, an election to dissolve the Partnership made by the General Partner with the consent of Limited Partners who hold ninety percent (90%) of the outstanding Units held by Limited Partners (including Units held by the General Partner);

(iv)    an election to dissolve the Partnership made by the General Partner, in its sole and absolute discretion after December 31, 2046;

(v)    entry of a decree of judicial dissolution of the Partnership pursuant to the provisions of the Act;

(vi)    the sale of all or substantially all of the assets and properties of the Partnership for cash or for marketable securities; or

(vii)    a final and non-appealable judgment is entered by a court of competent jurisdiction ruling that the General Partner is bankrupt or insolvent, or a final and non-appealable order for relief is entered by a court with appropriate jurisdiction against the General Partner, in each case under any federal or state bankruptcy or insolvency laws as now or hereafter in effect, unless prior to or at the time of the entry of such order or judgment a "majority in interest" (as defined below) of the remaining Partners Consent in writing to continue the business of the Partnership and to the appointment, effective as of a date prior to the date of such order or judgment, of a substitute General Partner.

As used in this Article XIII, a "majority in interest" shall refer to Partners (excluding the General Partner) who hold more than fifty percent (50%) of the outstanding Percentage Interests not held by the General Partner.

-62-

69

## SECTION 13.2  WINDING UP

A.      General. Upon the occurrence of a Liquidating Event, the Partnership shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and Partners. No Partner shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Partnership's business and affairs. The General Partner (or, if there is no remaining General Partner, any Person elected by a majority in interest of the Limited Partners (the "Liquidator")) shall be responsible for overseeing the winding up and dissolution of the Partnership and shall take full account of the Partnership's liabilities and property and the Partnership property shall be liquidated as promptly as is consistent with obtaining the fair value thereof, and the proceeds therefrom (which may, to the extent determined by the General Partner, include equity or other securities of the General Partner or any other entity) shall be applied and distributed in the following order:

(1)     First, to the payment and discharge of all of the Partnership's debts and liabilities to creditors other than the Partners;

(2)     Second, to the payment and discharge of all of the Partnership's debts and liabilities to the General Partner;

(3)     Third, to the payment and discharge of all of the Partnership's debts and liabilities to the Limited Partners;

(4)     Fourth, to the holders of Partnership Interests that are entitled to any preference in distribution upon liquidation in accordance with the rights of any such class or series of Partnership Interests, including without limitation, Series A Preferred Units, Series B Preferred Units, and Series C Preferred Units (and, within each such class or series, to each holder thereof pro rata based on the proportion of the total number of outstanding units of such class or series represented by such holder's units of such series or class); and

(5)     The balance, if any, to the Partners in accordance with their Capital Accounts, after giving effect to all contributions, distributions, and allocations for all periods.

The General Partner shall not receive any additional compensation for any services performed pursuant to this Article XIII.

B.      Deferred Liquidation. Notwithstanding the provisions of Section 13.2.A which require liquidation of the assets of the Partnership, but subject to the order of priorities set forth therein, if prior to or upon dissolution of the Partnership the Liquidator determines that an immediate sale of part or all of the Partnership's assets would be impractical or would cause undue loss to the Partners, the Liquidator may, in its sole and absolute discretion, defer for a reasonable time the liquidation of any assets except those necessary to satisfy liabilities of the Partnership (including to those Partners as

70

creditors) or distribute to the Partners, in lieu of cash, as tenants in common and in accordance with the provisions of Section 13.2.A, undivided interests in such Partnership assets as the Liquidator deems not suitable for liquidation. Any such distributions in kind shall be made only if, in the good faith judgment of the Liquidator, such distributions in kind are in the best interest of the Partners, and shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operation of such properties at such time. The Liquidator shall determine the fair market value of any property distributed in kind using such reasonable method of valuation as it may adopt.


SECTION 13.3   COMPLIANCE WITH TIMING REQUIREMENTS OF REGULATIONS; RESTORATION OF DEFICIT CAPITAL ACCOUNTS

        A.        Timing of Distributions. If the Partnership is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), distributions shall be made under this Article XIII to the General Partner and Limited Partners who have positive Capital Accounts in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(2). In the discretion of the General Partner, a pro rata portion of the distributions that would otherwise be made to the General Partner and Limited Partners pursuant to this Article XIII may be: (A) distributed to a trust established for the benefit of the General Partner and Limited Partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership and paying any contingent or unforeseen liabilities or obligations of the Partnership or of the General Partner arising out of or in connection with the Partnership (in which case the assets of any such trust shall be distributed to the General Partner and Limited Partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the General Partner and Limited Partners pursuant to this Agreement); or (B) withheld to provide a reasonable reserve for Partnership liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Partnership; provided that such withheld amounts shall be distributed to the General Partner and Limited Partners as soon as practicable.

        B.        Restoration of Deficit Capital Accounts Upon Liquidation of the Partnership. If any Partner has a deficit balance in its Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), such Partner shall have no obligation to make any contribution to the capital of the Partnership with respect to such deficit, and such deficit shall not be considered a debt owed to the Partnership or to any other Person for any purpose whatsoever, except as otherwise set forth in this Section 13.3.B, or as otherwise expressly agreed in writing by the affected Partner and the Partnership after the date hereof. Notwithstanding the foregoing, (i) if the General Partner has a deficit balance in its Capital Account (after giving effect to all contributions, distributions, and allocations for all Partnership Years or portions thereof, including the year during which such liquidation occurs), the General Partner shall contribute to the capital of the Partnership the amount necessary to restore such deficit balance to zero in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(3); (ii) if a Protected Partner has a deficit balance in its Capital Account (after giving effect to all contributions, distributions, and allocations for all Partnership Years or portions thereof, including the year during which such liquidation

-64-

71

occurs), such Protected Partner shall be obligated to make a contribution to the Partnership with respect to any such deficit balance in such Protected Partner's Capital Account upon a liquidation of the Partnership in an amount equal to the lesser of such deficit balance or such Protected Partner's Protected Amount; and (iii) the first sentence of this Section 13.3.B shall not apply with respect to any other Partner to the extent, but only to such extent, that such Partner previously has agreed in writing, with the consent of the General Partner, to undertake an express obligation to restore all or any portion of a deficit that may exist in its Capital Account upon a liquidation of the Partnership (including, without limitations, those Partners who have undertaken "deficit restoration obligations" as defined in Exhibit E). No Limited Partner shall have any right to become a Protected Partner, to increase its Protected Amount, or otherwise agree to restore any portion of any deficit that may exist in its Capital Account, except, and only to the extent, provided in Exhibits E-1 through E-9 (or the agreements described therein), without the express written consent of the General Partners, in its sole and absolute discretion. Any contribution required of a Partner under this Section 13.3.B. shall be made on or before the later of (i) the end of the Partnership Year in which the interest is liquidated or (ii) the ninetieth (90th) day following the date of such liquidation. The proceeds of any contribution to the Partnership made by a Protected Partner with respect to a deficit in such Protected Partner's Capital Account balance shall be treated as a Capital Contribution by such Protected Partner and the proceeds thereof shall be treated as assets of the Partnership to be applied as set forth in Section 13.2.A.

    C.      Restoration of Deficit Capital Accounts Upon a Liquidation of a Partner's Interest by Transfer. If a Protected Partner's interest in the Partnership is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) (other than in connection with a liquidation of the Partnership) which term shall include a redemption by the Partnership of such Protected Partner's interest upon exercise of the Redemption Right, and such Protected Partner is designated on Exhibit E as Part II Protected Partner, such Protected Partner shall be required to contribute cash to the Partnership equal to the lesser of (i) the amount required to increase its Capital Account balance as of such date to zero, or (ii) such Protected Partner's Protected Amount. For this purpose, (i) the Protected Partner's deficit Capital Account balance shall be determined by taking into account all contributions, distributions, and allocations for the portion of the Partnership Year ending on the date of the liquidation or redemption, and (ii) solely for purposes of determining such Protected Partner's Capital Account balance, the General Partner shall redetermine the Carrying Value of the Partnership's assets on such date based upon the principles set forth in Sections 1.D.(3) and (4) of Exhibit B hereto, and shall take into account the Protected Partner's allocable share of any Unrealized Gain or Unrealized Loss resulting from such redetermination in determining the balance of its Capital Account. The amount of any payment required hereunder shall be due and payable within the time period specified in the second to last sentence of Section 13.3.B.

    D.      Effect of the Death of a Protected Partner. After the death of a Protected Partner who is an individual, the executor of the estate of such Protected Partner may elect to reduce (or eliminate) the Protected Amount of such Protected Partner. Such elections may be made by such executor by delivering to the General Partner within two hundred and seventy (270) days of the death of such Limited Partner, a written notice setting forth the maximum deficit balance in its Capital Account that such executor agrees

-65-

72

to restore under this Section 13.3, if any. If such executor does not make a timely election pursuant to this Section 13.3 (whether or not the balance in the applicable Capital Account is negative at such time), then the Protected Partner's estate (and the beneficiaries thereof who receive distributions of Partnership Interests therefrom) shall be deemed a Protected Partner with a Protected Amount in the same amount as the deceased Protected Partner. Any Protected Partner which itself is a partnership may likewise elect, after the date of its partner's death to reduce (or eliminate) its Protected Amount by delivering a similar notice to the General Partner within the time period specified above, and in the absence of any such notice the Protected Amount of such Protected Partner shall not be reduced to reflect the death of any of its partners.

SECTION 13.4  RIGHTS OF LIMITED PARTNERS

Except as otherwise provided in this Agreement, each Limited Partner shall look solely to the assets of the Partnership for the return of its Capital Contributions and shall have no right or power to demand or receive property other than cash from the Partnership. Except as otherwise expressly provided in this Agreement, no Limited Partner shall have priority over any other Limited Partner as to the return of its Capital Contributions, distributions, or allocations.

SECTION 13.5  NOTICE OF DISSOLUTION

If a Liquidating Event occurs or an event occurs that would, but for provisions of an election or objection by one or more Partners pursuant to Section 13.1, result in a dissolution of the Partnership, the General Partner shall, within thirty (30) days thereafter, provide written notice thereof to each of the Partners and to all other parties with whom the Partnership regularly conducts business (as determined in the discretion of the General Partner).

SECTION 13.6  CANCELLATION OF CERTIFICATE OF LIMITED PARTNERSHIP

Upon the completion of the liquidation of the Partnership cash and property as provided in Section 13.2, the Partnership shall be terminated and the Certificate and all qualifications of the Partnership as a foreign limited partnership in jurisdictions other than the State of Delaware shall be canceled and such other actions as may be necessary to terminate the Partnership shall be taken.

SECTION 13.7  REASONABLE TIME FOR WINDING UP

A reasonable time shall be allowed for the orderly winding up of the business and affairs of the Partnership and the liquidation of its assets pursuant to Section 13.2, to minimize any losses otherwise attendant upon such winding-up, and the provisions of this Agreement shall remain in effect among the Partners during the period of liquidation.

73

SECTION 13.8  WAIVER OF PARTITION

Each Partner hereby waives any right to partition of the Partnership property.

SECTION 13.9  LIABILITY OF LIQUIDATOR

The Liquidator shall be indemnified and held harmless by the Partnership in the same manner and to the same degree as an Indemnitee may be indemnified pursuant to Section 7.7.

ARTICLE XIV
AMENDMENT OF PARTNERSHIP AGREEMENT; MEETINGS

SECTION 14.1  AMENDMENTS

A.      General. Amendments to this Agreement may be proposed by the General Partner or by any Limited Partners holding twenty-five percent (25%) or more of the Partnership Interests. Following such proposal (except an amendment pursuant to Section 14.1.B), the General Partner shall submit any proposed amendment to the Limited Partners. The General Partner shall seek the written vote of the Partners on the proposed amendment or shall call a meeting to vote thereon and to transact any other business that it may deem appropriate. For purposes of obtaining a written vote, the General Partner may require a response within a reasonable specified time, but not less than fifteen (15) days, and failure to respond in such time period shall constitute a vote which is consistent with the General Partner's recommendation with respect to the proposal. Except as provided in Section 14.1.B, 14.1.C or 14.1.D, a proposed amendment shall be adopted and be effective as an amendment hereto if it is approved by the General Partner and it receives the Consent of Partners holding a majority of the Percentage Interests of the Limited Partners (including Limited Partnership Interests held by the General Partner).

B.      Amendments Not Requiring Limited Partner Approval. Notwithstanding Section 14.1.A or 14.1.C, the General Partner shall have the power, without the consent of the Limited Partners, to amend this Agreement as may be required to facilitate or implement any of the following purposes:

(1)     to add to the obligations of the General Partner or surrender any right or power granted to the General Partner or any Affiliate of the General Partner for the benefit of the Limited Partners;

(2)     to reflect the admission, substitution, termination, or withdrawal of Partners in accordance with this Agreement;

(3)     to set forth the designations, rights, powers, duties, and preferences of the holders of any additional Partnership Interests issued pursuant to Article IV;

-67-

74

      (4)      to reflect a change that does not adversely affect the Limited Partners in any material respect, or to cure any ambiguity, correct or supplement any provision in this Agreement not inconsistent with law or with other provisions of this Agreement, or make other changes with respect to matters arising under this Agreement that will not be inconsistent with law or with the provisions of this Agreement; and

      (5)      to satisfy any requirements, conditions, or guidelines contained in any order, directive, opinion, ruling or regulation of a federal, state or local agency or contained in federal, state or local law.

The General Partner shall notify the Limited Partners when any action under this Section 14.1.B is taken in the next regular communication to the Limited Partners; provided, however, that no notice need be given of any amendment of this Agreement to reflect the admission, substitution, termination, or withdrawal of Partners in accordance with this Agreement. For purposes of the immediately preceding sentence, notwithstanding any other means by which the General Partner may provide any such notice to the Limited Partners, such notice requirement shall be deemed to have been satisfied upon the filing with the Securities and Exchange Commission by the Partnership of any amendment to this Agreement permitted under this Section 14.1.B as an exhibit to (i) a registration statement filed by the Partnership under the Securities Act or (ii) any report or other document filed by the Partnership under the Exchange Act.

      C.      Amendments Requiring Limited Partner Approval (Excluding the General Partner). Notwithstanding Section 14.1.A, without the Consent of the Outside Limited Partners, the General Partner shall not amend Section 4.2.A, Section 5.1.E, Section 7.1.A (second sentence only), Section 7.5, Section 7.6, Section 7.8, Section 7.11.B, Section 11.2, Section 13.1 (other than Section 13.1(iii) which can be amended only with a Consent of 90% of the Partnership Units (including Partnership Units held by the General Partner)), the last sentence of Section 11.4.A (provided that no such amendment shall in any event adversely affect the rights of any lender who made a loan or who extended credit and received in connection therewith a Pledge of Units prior to the date such amendment is adopted unless, and only to the extent such lender consents thereto), this Section 14.1.C or Section 14.2.

      D.      Other Amendments Requiring Certain Limited Partner Approval. Notwithstanding anything in this Section 14.1 to the contrary, this Agreement shall not be amended with respect to any Partner adversely affected without the Consent of such Partner, or any Assignee who is a bona fide financial institution that loans money or otherwise extends credit to a holder of Units, adversely affected if such amendment would (i) convert a Limited Partner's interest in the Partnership into a general partner's interest, (ii) modify the limited liability of a Limited Partner, (iii) amend Section 7.11.A, (iv) amend Article V or Article VI (except as permitted pursuant to Sections 4.2, 5.1.E, 5.4, 6.2 and 14.1(B)(3)), (v) amend Section 8.6 or any defined terms set forth in Article I that relate to the Redemption Right (except as permitted in Section 8.6.E), or (vi) amend Sections 11.3 or 11.5, or any additional restrictions from Section 11.6.E or amend Sections 14.1.B(4) or

-68-

75

14.1.D. This Section 14.1.D does not require unanimous consent of all Partners adversely affected unless the amendment is to be effective against all Partners adversely affected.

SECTION 14.2  MEETINGS OF THE PARTNERS

     A.      General. Meetings of the Partners may be called by the General Partner and shall be called upon the receipt by the General Partner of a written request by Limited Partners holding twenty-five percent (25%) or more of the Partnership Interests. The call shall state the nature of the business to be transacted. Notice of any such meeting shall be given to all Partners not less than seven (7) days nor more than thirty (30) days prior to the date of such meeting. Partners may vote in person or by proxy at such meeting. Whenever the vote or Consent of Partners is permitted or required under this Agreement, such vote or Consent may be given at a meeting of Partners or may be given in accordance with the procedure prescribed in Section 14.1.A. Except as otherwise expressly provided in this Agreement, the Consent of holders of a majority of the Percentage Interests held by Limited Partners (including Limited Partnership Interests held by the General Partner) shall control.

     B.      Actions Without a Meeting. Any action required or permitted to be taken at a meeting of the Partners may be taken without a meeting if a written consent setting forth the action so taken is signed by a majority of the Percentage Interests of the Partners (or such other percentage as is expressly required by this Agreement). Such consent may be in one instrument or in several instruments, and shall have the same force and effect as a vote of a majority of the Percentage Interests of the Partners (or such other percentage as is expressly required by this Agreement). Such consent shall be filed with the General Partner. An action so taken shall be deemed to have been taken at a meeting held on the effective date so certified.

     C.      Proxy. Each Limited Partner may authorize any Person or Persons to act for him by proxy on all matters in which a Limited Partner is entitled to participate, including waiving notice of any meeting, or voting or participating at a meeting. Every proxy must be signed by the Limited Partner or its attorney-in-fact. No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the Limited Partner executing it, such revocation to be effective upon the Partnership's receipt of written notice thereof.

     D.      Conduct of Meeting. Each meeting of Partners shall be conducted by the General Partner or such other Person as the General Partner may appoint pursuant to such rules for the conduct of the meeting as the General Partner or such other Person deem appropriate.

-69-

76

ARTICLE XV
GENERAL PROVISIONS

SECTION 15.1  ADDRESSES AND NOTICE

Any notice, demand, request or report required or permitted to be given or made to a Partner or Assignee under this Agreement shall be in writing and shall be deemed given or made when delivered in person or when sent by first class United States mail or by other means of written communication to the Partner or Assignee at the address set forth in the Partner Registry or such other address as the Partners shall notify the General Partner in writing.

SECTION 15.2  TITLES AND CAPTIONS

All article or section titles or captions in this Agreement are for convenience only. They shall not be deemed part of this Agreement and in no way define, limit, extend or describe the scope or intent of any provisions hereof. Except as specifically provided otherwise, references to "Articles" "Sections" and "Exhibits" are to Articles, Sections and Exhibits of this Agreement.

SECTION 15.3  PRONOUNS AND PLURALS

Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns, pronouns and verbs shall include the plural and vice versa.

SECTION 15.4  FURTHER ACTION

The parties shall execute and deliver all documents, provide all information and take or refrain from taking action as may be necessary or appropriate to achieve the purposes of this Agreement.

SECTION 15.5  BINDING EFFECT

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors, legal representatives and permitted assigns.

SECTION 15.6  CREDITORS

Other than as expressly set forth herein with regard to any Indemnitee, none of the provisions of this Agreement shall be for the benefit of, or shall be enforceable by, any creditor of the Partnership.

-70-

77

SECTION 15.7  WAIVER

No failure by any party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement or condition.

SECTION 15.8  COUNTERPARTS

This Agreement may be executed in counterparts, all of which together shall constitute one agreement binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart. Each party shall become bound by this Agreement immediately upon affixing its signature hereto.

SECTION 15.9  APPLICABLE LAW

This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Delaware, without regard to the principles of conflicts of law.

SECTION 15.10 INVALIDITY OF PROVISIONS

If any provision of this Agreement is or becomes invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be affected thereby.

SECTION 15.11 POWER OF ATTORNEY

A.      General. Each Limited Partner and each Assignee who accepts Partnership Units (or any rights, benefits or privileges associated therewith) is deemed to irrevocably constitute and appoint the General Partner, any Liquidator and authorized officers and attorneys-in-fact of each, and each of those acting singly, in each case with full power of substitution, as its true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead to:

(1)      execute, swear to, acknowledge, deliver, file and record in the appropriate public offices (a) all certificates, documents and other instruments (including, without limitation, this Agreement and the Certificate and all amendments or restatements thereof) that the General Partner or any Liquidator deems appropriate or necessary to form, qualify or continue the existence or qualification of the Partnership as a limited partnership (or a partnership in which the limited partners have limited liability) in the State of Delaware and in all other jurisdictions in which the Partnership may conduct business or own property, (b) all instruments that the General Partner or any Liquidator deem appropriate or necessary to

-71-

78

reflect any amendment, change, modification or restatement of this Agreement in accordance with its terms, (c) all conveyances and other instruments or documents that the General Partner or any Liquidator deems appropriate or necessary to reflect the dissolution and liquidation of the Partnership pursuant to the terms of this Agreement, including, without limitation, a certificate of cancellation, (d) all instruments relating to the admission, withdrawal, removal or substitution of any Partner pursuant to, or other events described in, Article XI, XII or XIII hereof or the Capital Contribution of any Partner and (e) all certificates, documents and other instruments relating to the determination of the rights, preferences and privileges of Partnership Interests; and

(2)     execute, swear to, acknowledge and file all ballots, consents, approvals, waivers, certificates and other instruments appropriate or necessary, in the sole and absolute discretion of the General Partner or any Liquidator, to make, evidence, give, confirm or ratify any vote, consent, approval, agreement or other action which is made or given by the Partners hereunder or is consistent with the terms of this Agreement or appropriate or necessary, in the sole discretion of the General Partner or any Liquidator, to effectuate the terms or intent of this Agreement.

Nothing contained in this Section 15.11 shall be construed as authorizing the General Partner or any Liquidator to amend this Agreement except in accordance with Article XIV hereof or as may be otherwise expressly provided for in this Agreement.

B.     Irrevocable Nature. The foregoing power of attorney is hereby declared to be irrevocable and a power coupled with an interest, in recognition of the fact that each of the Partners will be relying upon the power of the General Partner or any Liquidator to act as contemplated by this Agreement in any filing or other action by it on behalf of the Partnership, and it shall survive and not be affected by the subsequent Incapacity of any Limited Partner or Assignee and the transfer of all or any portion of such Limited Partner's or Assignee's Partnership Units and shall extend to such Limited Partner's or Assignee's heirs, successors, assigns and personal representatives. Each such Limited Partner or Assignee hereby agrees to be bound by any representation made by the General Partner or any Liquidator, acting in good faith pursuant to such power of attorney; and each such Limited Partner or Assignee hereby waives any and all defenses which may be available to contest, negate or disaffirm the action of the General Partner or any Liquidator, taken in good faith under such power of attorney. Each Limited Partner or Assignee shall execute and deliver to the General Partner or the Liquidator, within fifteen (15) days after receipt of the General Partner's or Liquidator's request therefor, such further designation, powers of attorney and other instruments as the General Partner or the Liquidator, as the case may be, deems necessary to effectuate this Agreement and the purposes of the Partnership.

-72-

79

SECTION 15.12 ENTIRE AGREEMENT

This Agreement contains the entire understanding and agreement among the Partners with respect to the subject matter hereof and supersedes any prior written oral understandings or agreements among them with respect thereto.


SECTION 15.13 NO RIGHTS AS SHAREHOLDERS

Nothing contained in this Agreement shall be construed as conferring upon the holders of the Partnership Units any rights whatsoever as shareholders of the General Partner, including, without limitation, any right to receive dividends or other distributions made to shareholders of the General Partner or to vote or to consent or receive notice as shareholders in respect to any meeting of shareholders for the election of trustees of the General Partner or any other matter.


SECTION 15.14 LIMITATION TO PRESERVE REIT STATUS

To the extent that any amount paid or credited to the General Partner or any of its officers, trustees, employees or agents pursuant to Section 7.4 or Section 7.7 would constitute gross income to the General Partner for purposes of Section 856(c)(2) or 856(c)(3) of the Code (a "General Partner Payment") then, notwithstanding any other provision of this Agreement, the amount of such General Partner Payment for any fiscal year shall not exceed the lesser of:

(i)    an amount equal to the excess, if any, of (a) 4.20% of the General Partner's total gross income (but not including the amount of any General Partner Payments) for the fiscal year which is described in subsections (A) though (H) of Section 856(c)(2) of the Code over (b) the amount of gross income (within the meaning of Section 856(c)(2) of the Code) derived by the General Partner from sources other than those described in subsections (A) through (H) of Section 856(c)(2) of the Code (but not including the amount of any General Partner Payments); or

(ii)    an amount equal to the excess, if any of (a) 25% of the General Partner's total gross income (but not including the amount of any General Partner Payments) for the fiscal year which is described in subsections (A) through (I) of Section 856(c)(3) of the Code over (b) the amount of gross income (within the meaning of Section 856(c)(3) of the Code) derived by the General Partner from sources other than those described in subsections (A) through (I) of Section 856(c)(3) of the Code (but not including the amount of any General Partner Payments); provided, however, that General Partner Payments in excess of the amounts set forth in subparagraphs (i) and (ii) above may be made if the General Partner, as a condition precedent, obtains an opinion of tax counsel that the receipt of such excess amounts would not adversely affect the General Partner's ability to qualify as a REIT. To the extent General Partner Payments may not be made in a year due to the foregoing limitations, such General Partner Payments shall carry over and be treated as arising in the following year, provided, however, that such amounts shall not carry over for more than five years, and if not paid within such five year period, shall expire; provided further, that (i) as General Partner Payments are made, such payments

-73-

80

shall be applied first to carry over amounts outstanding, if any, and (ii) with respect to carry over amounts for more than one Partnership Year, such payments shall be applied to the earliest Partnership Year first.

-74-

81

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

GENERAL PARTNER:

EQUITY OFFICE PROPERTIES TRUST

By: /s/ STANLEY M. STEVENS
------------------------------------
Name: Stanley M. Stevens
------------------------------------
Title: Executive Vice President, Chief
------------------------------------
Legal Counsel and Secretary

LIMITED PARTNERS:

By:    Equity Office Properties Trust,
as Attorney-in-Fact for the
Limited Partners

By: /s/ STANLEY M. STEVENS
------------------------------------
Name: Stanley M. Stevens
------------------------------------
Title: Executive Vice President, Chief
------------------------------------
Legal Counsel and Secretary

For purposes of Section 8.6 hereof:
EQUITY OFFICE PROPERTIES TRUST

By: /s/ STANLEY M. STEVENS
------------------------------------
Name: Stanley M. Stevens
------------------------------------
Title: Executive Vice President, Chief
------------------------------------
Legal Counsel and Secretary

-75-

82

EXHIBIT A

FORM OF PARTNER REGISTRY

|  | CLASS A AND CLASS B UNITS | | |
| --- | --- | --- | --- |
| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | INITIAL CAPITAL ACCOUNT | PERCENTAGE INTEREST (1) |
| GENERAL PARTNER: | | | |
| Equity Office Properties Trust Two North Riverside Plaza Suite 2100 Chicago, Illinois 60606 | | | |
| LIMITED PARTNERS: | | | |
| TOTAL CLASS A AND CLASS B UNITS | | | 100.00000% |

|  | SERIES A PREFERRED UNITS | | |
| --- | --- | --- | --- |
| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | INITIAL CAPITAL ACCOUNT | PERCENTAGE INTEREST (1) |
| TOTAL SERIES A PREFERRED UNITS | | | 100.00000% |

83

| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | SERIES B PREFERRED UNITS | |
|---|---|---|---|
| | | INITIAL CAPITAL ACCOUNT | PERCENTAGE INTEREST (1) |
| TOTAL SERIES B PREFERRED UNITS | | | 100.00000% |

| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | SERIES C PREFERRED UNITS | |
|---|---|---|---|
| | | INITIAL CAPITAL ACCOUNT | PERCENTAGE INTEREST (1) |
| TOTAL SERIES C PREFERRED UNITS | | | 100.00000% |

| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | SERIES D PREFERRED UNITS | |
|---|---|---|---|
| | | INITIAL CAPITAL ACCOUNT | PERCENTAGE INTEREST (1) |
| TOTAL SERIES D PREFERRED UNITS | | | 100.00000% |

A-2

84

| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | SERIES E PREFERRED UNITS | | PERCENTAGE INTEREST (1) |
|---|---|---|---|---|
| | | INITIAL CAPITAL ACCOUNT | | |
| | | | | |
| TOTAL SERIES E PREFERRED UNITS | | | | 100.00000% |

| NAME AND ADDRESS OF PARTNER | PARTNERSHIP UNITS | SERIES F PREFERRED UNITS | | PERCENTAGE INTEREST (1) |
|---|---|---|---|---|
| | | INITIAL CAPITAL ACCOUNT | | |
| | | | | |
| TOTAL SERIES F PREFERRED UNITS | | | | 100.00000% |

NOTES:

(1)  For purposes of this calculation, the Class A Units and Class B Units are
     treated as one class. Of the aggregate Partnership Interests currently
     outstanding, the percentage of each class and series are as follows:

| | |
|---|---|
| Class A and B Units (collectively) | % |
| Series A Preferred Units | % |
| Series B Preferred Units | % |
| Series C Preferred Units | % |
| Series D Preferred Units | % |
| Series E Preferred Units | % |
| Series F Preferred Units | |
| | 100.00% |

A-3

85

EXHIBIT B

CAPITAL ACCOUNT MAINTENANCE

1.   Capital Accounts of the Partners

A.   The Partnership shall maintain for each Partner a separate Capital Account in accordance with the rules of Regulations Section 1.704-1(b)(2)(iv). Such Capital Account shall be increased by (i) the amount of all Capital Contributions and any other deemed contributions made by such Partner to the Partnership pursuant to this Agreement and (ii) all items of Partnership income and gain (including income and gain exempt from tax) computed in accordance with Section 1.B hereof and allocated to such Partner pursuant to Section 6.1 of the Agreement and Exhibit C thereof, and decreased by (x) the amount of cash or Agreed Value of all actual and deemed distributions of cash or property made to such Partner pursuant to this Agreement and (y) all items of Partnership deduction and loss computed in accordance with Section 1.B hereof and allocated to such Partner pursuant to Section 6.1 of the Agreement and Exhibit C thereof.

B.   For purposes of computing the amount of any item of income, gain, deduction or loss to be reflected in the Partners' Capital Accounts, unless otherwise specified in this Agreement, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for federal income tax purposes determined in accordance with Section 703(a) of the Code (for this purpose all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments:

(1)   Except as otherwise provided in Regulations Section 1.704-1(b)(2)(iv)(m), the computation of all items of income, gain, loss and deduction shall be made without regard to any election under Section 754 of the Code which may be made by the Partnership, provided that the amounts of any adjustments to the adjusted bases of the assets of the Partnership made pursuant to Section 734 of the Code as a result of the distribution of property by the Partnership to a Partner (to the extent that such adjustments have not previously been reflected in the Partners' Capital Accounts) shall be reflected in the Capital Accounts of the Partners in the manner and subject to the limitations prescribed in Regulations Section 1.704-1(b)(2)(iv)(m)(4).

(2)   The computation of all items of income, gain, and deduction shall be made without regard to the fact that items described in Sections 705(a)(1)(B) or 705(a)(2)(B) of the Code are not includible in gross income or are neither currently deductible nor capitalized for federal income tax purposes.

(3)   Any income, gain or loss attributable to the taxable disposition of any Partnership property shall be determined as if the adjusted basis of such property as of such date of disposition were equal in amount to

86

the Partnership's Carrying Value with respect to such property as of such date.

(4) In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such fiscal year.

(5) In the event the Carrying Value of any Partnership Asset is adjusted pursuant to Section 1.D hereof, the amount of any such adjustment shall be taken into account as gain or loss from the disposition of such asset.

(6) Any items specially allocated under Section 2 of Exhibit C to the Agreement hereof shall not be taken into account.

C.    A transferee (including any Assignee) of a Partnership Unit shall succeed to a pro rata portion of the Capital Account of the transferor.

D.    (1) Consistent with the provisions of Regulations Section 1.704-1(b)(2)(iv)(f), and as provided in Section 1.D(2), the Carrying Values of all Partnership assets shall be adjusted upward or downward to reflect any Unrealized Gain or Unrealized Loss attributable to such Partnership property, as of the times of the adjustments provided in Section 1.D(2) hereof, as if such Unrealized Gain or Unrealized Loss had been recognized on an actual sale of each such property and allocated pursuant to Section 6.1 of the Agreement.

(2) Such adjustments shall be made as of the following times: (a) immediately prior to the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution; (b) immediately prior to the distribution by the Partnership to a Partner of more than a de minimis amount of property as consideration for an interest in the Partnership; and (c) immediately prior to the liquidation of the Partnership within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), provided, however, that adjustments pursuant to clauses (a) and (b) above shall be made only if the General Partner determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners in the Partnership.

(3) In accordance with Regulations Section 1.704-1(b)(2)(iv)(e), the Carrying Value of Partnership assets distributed in kind shall be adjusted upward or downward to reflect any Unrealized Gain or Unrealized Loss attributable to such Partnership property, as of the time any such asset is distributed.

B-2

87

    (4)  In determining Unrealized Gain or Unrealized Loss for purposes of this Exhibit B, the aggregate cash amount and fair market value of all Partnership assets (including cash or cash equivalents) shall be determined by the General Partner using such reasonable method of valuation as it may adopt, or in the case of a liquidating distribution pursuant to Article XIII of the Agreement, shall be determined and allocated by the Liquidator using such reasonable methods of valuation as it may adopt. The General Partner, or the Liquidator, as the case may be, shall allocate such aggregate fair market value among the assets of the Partnership in such manner as it determines in its sole and absolute discretion to arrive at a fair market value for individual properties.

    E.    The provisions of the Agreement (including this Exhibit B and the other Exhibits to the Agreement) relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities which are secured by contributed or distributed property or which are assumed by the Partnership, the General Partner, or the Limited Partners) are computed in order to comply with such Regulations, the General Partner may make such modification without regard to Article XIV of the Agreement, provided that it is not likely to have a material effect on the amounts distributable to any Person pursuant to Article XIII of the Agreement upon the dissolution of the Partnership. The General Partner also shall (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes, in accordance with Regulations Section 1.704-1(b)(2)(iv)(q), and (ii) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Regulations Section 1.704-1(b).


2.    No Interest

    No interest shall be paid by the Partnership on Capital Contributions or on balances in Partners' Capital Accounts.

3.    No Withdrawal

    No Partner shall be entitled to withdraw any part of its Capital Contribution or Capital Account or to receive any distribution from the Partnership, except as provided in Articles IV, V, VII and XIII of the Agreement.

88

EXHIBIT C

SPECIAL ALLOCATION RULES

1.    Special Allocation Rules.

        Notwithstanding any other provision of the Agreement or this Exhibit C, the
following special allocations shall be made in the following order:

        A.    Minimum Gain Chargeback. Notwithstanding the provisions of Section 6.1
of the Agreement or any other provisions of this Exhibit C, if there is a net
decrease in Partnership Minimum Gain during any Partnership Year, each Partner
shall be specially allocated items of Partnership income and gain for such year
(and, if necessary, subsequent years) in an amount equal to such Partner's share
of the net decrease in Partnership Minimum Gain, as determined under Regulations
Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made
in proportion to the respective amounts required to be allocated to each Partner
pursuant thereto. The items to be so allocated shall be determined in accordance
with Regulations Section 1.704-2(f)(6). This Section 1.A is intended to comply
with the minimum gain chargeback requirements in Regulations Section 1.704-2(f)
and for purposes of this Section 1.A only, each Partner's Adjusted Capital
Account Deficit shall be determined prior to any other allocations pursuant to
Section 6.1 of this Agreement with respect to such Partnership Year and without
regard to any decrease in Partner Minimum Gain during such Partnership Year.

        B.    Partner Minimum Gain Chargeback. Notwithstanding any other provision
of Section 6.1 of this Agreement or any other provisions of this Exhibit C
(except Section 1.A hereof), if there is a net decrease in Partner Minimum Gain
attributable to a Partner Nonrecourse Debt during any Partnership Year, each
Partner who has a share of the Partner Minimum Gain attributable to such Partner
Nonrecourse Debt, determined in accordance with Regulations Section
1.704-2(i)(5), shall be specially allocated items of Partnership income and gain
for such year (and, if necessary, subsequent years) in an amount equal to such
Partner's share of the net decrease in Partner Minimum Gain attributable to such
Partner Nonrecourse Debt, determined in accordance with Regulations Section
1.704-2(i)(5). Allocations pursuant to the previous sentence shall be made in
proportion to the respective amounts required to be allocated to each General
Partner and Limited Partner pursuant thereto. The items to be so allocated shall
be determined in accordance with Regulations Section 1.704-2(i)(4). This Section
1.B is intended to comply with the minimum gain chargeback requirement in such
Section of the Regulations and shall be interpreted consistently therewith.
Solely for purposes of this Section 1.B, each Partner's Adjusted Capital Account
Deficit shall be determined prior to any other allocations pursuant to Section
6.1 of the Agreement or this Exhibit with respect to such Partnership Year,
other than allocations pursuant to Section 1.A hereof.

        C.    Qualified Income Offset. In the event any Partner unexpectedly
receives any adjustments, allocations or distributions described in Regulations
Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or
1.704-1(b)(2)(ii)(d)(6), and after giving effect to the allocations required
under Sections 1.A and 1.B hereof with respect to such Partnership Year, such
Partner has an Adjusted Capital Account Deficit, items of

89

Partnership income and gain (consisting of a pro rata portion of each item of Partnership income, including gross income and gain for the Partnership Year) shall be specifically allocated to such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit created by such adjustments, allocations or distributions as quickly as possible. This Section 1.C is intended to constitute a "qualified income offset" under Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

D.    Gross Income Allocation. In the event that any Partner has an Adjusted Capital Account Deficit at the end of any Partnership Year (after taking into account allocations to be made under the preceding paragraphs hereof with respect to such Partnership Year), each such Partner shall be specially allocated items of Partnership income and gain (consisting of a pro rata portion of each item of Partnership income, including gross income and gain for the Partnership Year) in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit.

E.    Nonrecourse Deductions. Nonrecourse Deductions for any Partnership Year shall be allocated to the Partners in accordance with their respective Percentage Interests. If the General Partner determines in its good faith discretion that the Partnership's Nonrecourse Deductions must be allocated in a different ratio to satisfy the safe harbor requirements of the Regulations promulgated under Section 704(b) of the Code, the General Partner is authorized, upon notice to the Limited Partners, to revise the prescribed ratio for such Partnership Year to the numerically closest ratio which would satisfy such requirements.

F.    Partner Nonrecourse Deductions. Any Partner Nonrecourse Deductions for any Partnership Year shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulations Sections 1.704-2(b)(4) and 1.704-2(i).

G.    Code Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) or 743(b) of the Code is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such item of gain or loss shall be specially allocated to the Partners in a manner consistent Exhibit E-1 with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

2.    Allocations for Tax Purposes

A.    Except as otherwise provided in this Section 2, for federal income tax purposes, each item of income, gain, loss and deduction shall be allocated among the Partners in the same manner as its correlative item of "book" income, gain, loss or

C-2

90

deduction is allocated pursuant to Section 6.1 of the Agreement and Section 1 of this Exhibit C.

B.    In an attempt to eliminate Book-Tax Disparities attributable to a Contributed Property or Adjusted Property, items of income, gain, loss, and deduction shall be allocated for federal income tax purposes among the Partners as follows:

(1)    (a)   In the case of a Contributed Property, such items attributable thereto shall be allocated among the Partners consistent with the principles of Section 704(c) of the Code to take into account the variation between the 704(c) Value of such property and its adjusted basis at the time of contribution (taking into account Section 2.C of this Exhibit C); and

(b)   any item of Residual Gain or Residual Loss attributable to a Contributed Property shall be allocated among the Partners in the same manner as its correlative item of "book" gain or loss is allocated pursuant to Section 6.1 of the Agreement and Section 1 of this Exhibit C.

(2)    (a)   In the case of an Adjusted Property, such items shall

(i)   first, be allocated among the Partners in a manner consistent with the principles of Section 704(c) of the Code to take into account the Unrealized Gain or Unrealized Loss attributable to such property and the allocations thereof pursuant to Exhibit B;

(ii)   second, in the event such property was originally a Contributed Property, be allocated among the Partners in a manner consistent with Section 2.B(1) of this Exhibit C; and

(b)   any item of Residual Gain or Residual Loss attributable to an Adjusted Property shall be allocated among the Partners in the same manner its correlative item of "book" gain or loss is allocated pursuant to Section 6.1 of the Agreement and Section 1 of this Exhibit C.

(3)   all other items of income, gain, loss and deduction shall be allocated among the Partners the same manner as their correlative item of "book" gain or loss is allocated pursuant to Section 6.1 of the Agreement and Section 1 of this Exhibit C.

C.    To the extent Regulations promulgated pursuant to Section 704(c) of the Code permit a Partnership to utilize alternative methods to eliminate the disparities between the Carrying Value of property and its adjusted basis, the General Partner shall, subject to the following, have the authority to elect the method to be used by the Partnership and such election shall be binding on all Partners; provided that, to the extent that the General Partner has agreed to use a particular method with respect to a

C-3

91

Contributed Property, the General Partner shall be bound by such agreement (including, without limitation, the agreements set forth in Exhibit E hereto) pursuant to the terms thereof. With respect to the Contributed Property transferred to the Partnership in connection with the Consolidation and the BRE/Worldwide L.L.C. purchase, the Partnership shall elect to use the "traditional method" set forth in Treasury Regulation Section 1.704-3(b).

C-4

92

EXHIBIT D

NOTICE OF REDEMPTION

The undersigned hereby irrevocably (i) redeems _____ Partnership Units in EOP Operating Limited Partnership in accordance with the terms of the Agreement of Limited Partnership of EOP Operating Limited Partnership, as amended, and the Redemption Right referred to therein, (ii) surrenders such Partnership Units and all right, title and interest therein and (iii) directs that the Cash Amount or Shares Amount (as determined by the General Partner) deliverable upon exercise of the Redemption Right be delivered to the address specified below, and if Shares are to be delivered, such Shares be registered or placed in the name(s) and at the address(es) specified below. The undersigned hereby represents, warrants, and certifies that the undersigned (a) has marketable and unencumbered title to such Partnership Units, free and clear of the rights of or interests of any other person or entity, (b) has the full right, power and authority to redeem and surrender such Partnership Units as provided herein and (c) has obtained the consent or approval of all persons or entities, if any, having the right to consult or approve such redemption and surrender.

Dated:                          Name of Limited Partner:
---------------                                 ---------------------


                                ------------------------------
                                (Signature of Limited Partner)


                                ------------------------------
                                (Street Address)


                                ------------------------------
                                (City)      (State)   (Zip Code)


            Signature Guaranteed by:
                                ------------------------------


            IF SHARES ARE TO BE ISSUED, ISSUE TO:

            Name:
                 -----------------------------------------------
            Social Security or tax identifying number:
                                             ---------------------

93

EXHIBIT E

PROTECTED PARTNERS AND PROTECTED AMOUNTS

PART I PROTECTED PARTNERS                    PROTECTED AMOUNT

PART II PROTECTED PARTNERS

(1)   Protected Amount is the Deficit Obligation or Indemnity Obligation, as
      applicable, as provided in the First Prior Amendment to the Original
      Partnership Agreement, as set forth in Exhibit E-1.

(2)   Protected Amount is the Deficit Obligation or Indemnity Obligation, as
      applicable, as provided in the Second Prior Amendment to the Original
      Partnership Agreement, as set forth in Exhibit E-2.

(3)   Protected Amount is the DRO Amount or any applicable Partner Contribution
      Amount, as defined in the Third Prior Amendment to the Original Partnership
      Agreement, as set forth in Exhibit E-3.

(4)   Protected Amount is the Deficit Obligation as defined in the Prior
      Addendum, dated April 21, 1998, to the Original Partnership Agreement, as
      set forth in Exhibit E-4.

(5)   Protected Amount is as defined in the Tenth Prior Amendment to the Original
      Partnership Agreement, as set forth in Exhibit E-5.

(6)   Protected Amount is as provided for in Exhibit E-6.

(7)   Protected Amount is as provided for in Exhibit E-7.

(8)   Protected Amount is as provided for in Exhibit E-8.

(9)   Protected Amount is as provided for in Exhibit E-9.

94

EXHIBIT E-1

(CAP AGREEMENT)

BACKGROUND

On September 2, 1997, pursuant to a closing under that certain Agreement for Contribution of Real Estate and Related Property dated as of August 1, 1997, by and among the Partnership, the General Partner, Columbus America Properties, L.L.C. ("CAP"), and certain members of CAP (the "Contribution Agreement"), CAP received 1,690,000 Class A Units, subject to adjustment as provided in the Contribution Agreement, (referred to as the "CAP Units"), in exchange for the office properties known as Texaco Center, LL&E Tower and 601 Tchoupitoulas Garage (collectively, the "CAP Properties"). In connection with the issuance of the CAP Units, the First Prior Amendment to the Original Partnership Agreement was executed, which set forth specific agreements regarding certain additional rights and obligations of CAP and which was later amended by the Sixth Prior Amendment to the Original Partnership Agreement. Such specific agreements are described below.

All capitalized terms used in this Exhibit E-1 and not otherwise defined have the meanings assigned in the Agreement.

SPECIFIC AGREEMENTS

1.   Notwithstanding any other provision in the Agreement to the contrary and in addition to (and not in lieu thereof) any and all other rights of CAP under the Agreement:

(i)   The holders of the CAP Units shall have the right at any time and from time to time, to exchange all or any number of such CAP Units at the request of such holder for Shares in the form required in Section 8.6.B(i) of the Agreement, but subject in all respects to the terms of a certain Registration Rights Agreement dated as of September 2, 1997, by and among the General Partner, CAP and the other signatories thereto; and

(ii) CAP shall have the right, exercisable upon written notice to Partnership at any time and from time to time before the earlier to occur of (a) September 3, 2000, or (b) the date that CAP shall have either transferred or converted all of its CAP Units into Shares, to require the Partnership or the General Partner to acquire all, or any portion or portions, of the CAP Units at $29.00 per CAP Unit. The price for such CAP Units shall be paid by the Partnership or the General Partner in immediately available funds not less than five (5) days after receipt of such notice from CAP. The CAP Units shall be conveyed to the Partnership or the General Partner, as applicable, free and clear of all liens and encumbrances, other than those liens and encumbrances, if any, in favor of General Partner or Partnership. At the closing of the acquisition of the CAP Units by the Partnership or the General Partner, the parties shall execute instruments of assignment and conveyance in the form attached to the First Prior Amendment at "Exhibit B" and an amendment to the Agreement evidencing the assignment of the CAP Units to the

95

Partnership, or the General Partner, as applicable, and the withdrawal of CAP as a Limited Partner of the Partnership.

        2.    Notwithstanding any other provision of the First Prior Amendment (as amended by the Sixth Prior Amendment) or the Agreement to the contrary, upon liquidation of the Partnership, CAP shall be required to contribute to the Partnership the deficit balance in its Capital Account computed in accordance with Section 1.752-2(b)(1) and (2) of the Regulations, provided, however, that such contribution obligation shall not exceed $84,350,000 (the "Deficit Obligation"). CAP specifically waives any right of contribution or subrogation with respect to such Deficit Obligation and neither the General Partner nor any other Partner or other Person shall be required to reimburse CAP for such contribution. Irrespective of the balance in the Capital Account of CAP, CAP agrees to indemnify the Partnership and the General Partner to the extent that the recourse obligations of the Partnership exceed the assets of the Partnership available to satisfy such recourse obligations. This indemnity obligation is intended to protect and hold the Partnership and the General Partner harmless for such recourse obligations without regard to obligations imposed on the General Partner under applicable state law or other contract provisions. This indemnity obligation shall be limited to $84,350,000 (the "Indemnity Obligation"). CAP hereby specifically waives any right of contribution from or subrogation against the General Partner or any other Partner and neither the Partnership nor any other Partner shall be required to contribute to or otherwise reimburse CAP with respect to such indemnity. Upon payment of such indemnity, CAP's Capital Account shall be credited with such payment only to the extent of any deficit in such Capital Account. Amounts paid to the Partnership pursuant to the Deficit Obligation or the Indemnity Obligation shall be used to satisfy the recourse obligations of the Partnership.

        CAP's Deficit Obligation and Indemnity Obligation shall not in the aggregate exceed $84,350,000 (subject to reduction as provided herein). In addition, the Deficit Obligation and the Indemnity Obligation shall be forever reduced to $6,350,000 immediately upon the first placing, after acquisition of the CAP Properties by the Partnership, of a non-recourse third party mortgage on the CAP Properties securing a third party non-recourse loan to the Partnership in an amount not less than $78,000,000.

        Upon the sale, redemption, conversion or other disposition of the CAP Units, the Deficit Obligation and the Indemnity Obligation of CAP under this provision shall terminate proportionately with the number of CAP Units sold, redeemed, converted or otherwise disposed of; provided, however, that a transferee of CAP may, in its sole discretion, assume the Deficit Obligation and/or the Indemnity Obligation of CAP and, in such event, the Deficit Obligation and the Indemnity Obligation shall be the obligations solely of such transferee (but CAP's obligation shall in all events be proportionately terminated as of the date of any such disposition of its interest in the Partnership). Nothing in this paragraph 2 shall in any way affect the sale, exchange, or conversion rights of CAP under the Agreement or under the First and Sixth Prior Amendments.

                                E-1 - 2

96

EXHIBIT E-2

(1120 AGREEMENT)

BACKGROUND

On October 16, 1997, pursuant to a closing under that certain Contribution Agreement dated September 4, 1997, as amended, by and between the Partnership and 1120 20th Street Associates ("1120") (the "Contribution Agreement"), 1120 received 1,645,885 Class A Units, subject to adjustment as provided in the Contribution Agreement, (referred to as the "1120 Units") in exchange for the office property known as One Lafayette Centre, 1120 20th Street, N.W., Washington, D.C. (the "1120 Property"). In connection with the issuance of the 1120 Units, the Second Prior Amendment to the Original Partnership Agreement, which set forth specific agreements regarding certain additional rights and obligations of 1120, was executed. Such specific agreements are described below.

All capitalized terms used in this Exhibit E-2 and not otherwise defined herein have the meanings assigned in the Agreement.

SPECIFIC AGREEMENTS

Notwithstanding any other provision of the Agreement to the contrary, upon liquidation of the Partnership, 1120 shall be required to contribute to the Partnership the deficit balance in its Capital Account computed in accordance with Sections 1.752-2(b)(1) and (2) of the Regulations; provided, however, that such contribution obligation shall not exceed $14,000,000 (the "Deficit Obligation"). 1120 specifically waives any right of contribution or subrogation with respect to such Deficit Obligation and neither the General Partner nor any other Partner or other Person shall be required to reimburse 1120 for such contribution. Irrespective of the balance in the Capital Account of 1120, 1120 agrees to indemnify the Partnership and the General Partner to the extent that the recourse obligations of the Partnership exceed the assets of the Partnership available to satisfy such recourse obligations. This indemnity obligation is intended to protect and hold the Partnership and the General Partner harmless for such recourse obligations without regard to obligations imposed on the General Partner under applicable state law or other contract provisions. This indemnity obligation shall be limited to $14,000,000 (the "Indemnity Obligation"). 1120 specifically waives any right of contribution from or subrogation against the General Partner or any other Partner and neither the Partnership nor any other Partner shall be required to contribute to or otherwise reimburse 1120 with respect to such indemnity. Upon payment of such indemnity, 1120's Capital Amount shall be credited with such payment only to the extent of any deficit in such Capital Account. Amounts paid to the Partnership pursuant to the Deficit Obligation or the Indemnity Obligation shall be used to satisfy the recourse obligations of the Partnership.

Upon the sale, redemption, conversion or other disposition of the 1120 Units, the Deficit Obligation and the Indemnity Obligation of 1120 under this provision shall terminate; provided, however, a transferee of 1120 may, in its sole discretion, assume the Deficit Obligation and/or the Indemnity Obligation of 1120 and, in such event, the Deficit

97

Obligation and the Indemnity Obligation shall be the obligation solely of such transferee (but 1120's obligation shall in all events be terminated as of the date of any disposition of its interest in the Partnership). Nothing herein shall in any way effect the sale, exchange or conversion rights of 1120 under the Agreement or under the Second Prior Amendment.

E-2 - 2

98

EXHIBIT E-3

(WRIGHT RUNSTAD AGREEMENT)

BACKGROUND

On December 16, 1997, (i) pursuant to a closing under that certain
Contribution Agreement dated December 16, 1997, by and between the Partnership,
WRAM (as defined below), WRH (as defined below) and certain other parties (the
"Contribution Agreement") (a) Wright Runstad Asset Management L.P., a Washington
limited partnership ("WRAM"), received 446,890 Class B Units in exchange for
certain partnership interests ("Titleholder Interests") in Wright Runstad
Properties L.P., a Delaware limited partnership (the "Titleholder") and (b)
Wright Runstad Holdings L.P., a Washington limited partnership ("WRH"), received
2,168,810 Class B Units in exchange for certain Titleholder Interests; and (ii)
pursuant to a closing under that certain Investment Agreement dated December 16,
1997, by and among the Partnership, Wright Runstad Associates Limited
Partnership, a Washington limited partnership, ("WRALP"), H. Jon Runstad
("Runstad"), Douglas E. Norberg ("Norberg"), John F. Nordby ("Nordby"), and
certain other parties (the "Investment Agreement"), Runstad, Norberg, and Nordby
received, in the aggregate, 137,427 Class B Units in exchange for certain
limited partnership interests in WRALP ("WRALP Interests"). WRAM and WRH are
collectively referred to herein as the "Contributors." Runstad, Norberg, Nordby
are collectively referred to herein as the "Principals." The Class B Units
issued as described above are referred to herein as the WRP Units. Certain
property owned by the Titleholder as described in the Contribution Agreement is
referred to herein as the "WRP Property." In connection with the issuance of the
WRP Units, the Third Prior Amendment to the Original Partnership Agreement,
which set forth specific agreements regarding certain additional rights and
obligations of the Contributors and the Principals, was executed. Such specific
agreements are described below.

All capitalized terms used in this Exhibit E-3 and not otherwise
defined shall have the meanings assigned to them in the Agreement.

SPECIFIC AGREEMENTS

1.    Right to Assign. Notwithstanding any other provision of this
Agreement or of the Third Prior Amendment, each Contributor shall have the right
to assign all or any portion of its WRP Units, together with any and all other
rights of such Contributor pursuant to the Third Prior Amendment and the
Agreement, to one or more of the constituent partners or shareholders, members,
partners, or beneficiaries of constituent partners of such Contributor on
December 16, 1997, without the need for the consent of the General Partner or
any Limited Partner and without being subject to the right of first refusal set
forth in Section 11.3.A(a) of the Agreement, but in each case subject to the
restrictions and conditions set forth in Sections 11.3.C, 11.3.D, 11.3.E, 11.6.E
and 11.6.F of the Agreement. Upon the delivery of written notice of such an
assignment to the General Partner, each assignee of WRP Units pursuant to the
immediately preceding sentence shall be admitted to the Partnership as a
Substituted Limited Partner owning the