149

SCHEDULE 5 TO EXHIBIT E-9

SECTION 752 ALLOCATION AGREEMENTS BETWEEN EOP PARTNERSHIP AND EXISTING EOP
LIMITED PARTNERS AS OF THE CLOSING DATE OF THE SPIEKER MERGER

1. Tax Reporting Agreement, dated September 2, 1997, by and among Columbus
American Properties LLC, Columbus Southeast Properties, Inc., Joseph C
Canizaro-901 Limited Partnership, Joseph C Canizaro-400 Limited
Partnership and EOP Partnership.

2. Exhibit E-6 (Cornerstone Agreement) to the Second Amended and Restated
Agreement of Limited Partnership of EOP Partnership, effective as of
June 19, 2000.

3. Oral understanding between Beacon Properties L.P. and EOP Partnership to
allocate "Tier 3" Liabilities in accordance with the method now
described in Treas. Reg. sec. 1.752-3(a)(3), as amended in October 2000.

E-9 - 17

150

SCHEDULE 6 TO EXHIBIT E-9

SPIEKER TAX PROTECTION AGREEMENTS ASSUMED PURSUANT TO THE MERGER AGREEMENT(5)

1. Contribution Agreement dated as of November 19, 1999 by and among Spieker Properties, L.P., Spieker Properties, Inc. and Lincoln Larkspur Office One Associates, Ltd., Lincoln Larkspur Office Three Associates, Ltd. and Larkspur One OP, LLC, Larkspur Two OP, LLC and Larkspur Three OP, LLC.

2. Contribution Agreement dated as of January 7, 1998 among Spieker Properties, L.P., Spieker Properties, Inc. and the contributors identified on the signature page attached thereto in connection with certain properties managed by Transpacific Development Company.

3. Third Amended and Restated Limited Partnership Agreement of Brea Place Associates, L.P. dated as of June   , 1997, as amended.

4. Limited Partnership Agreement of Spieker Brea, L.P., a Delaware Limited Partnership dated as of April   , 1997.

5. Agreement of Limited Partnership of Freemont Bayside Associates, L.P. dated as of June 7, 1989, as amended.

6. Limited Liability Company Agreement of Spieker Griffin/W9 Associates, L.L.C., dated as of April 6, 1998, as amended.
---------------
(5) Must be the same as those listed on Schedule 2.18(j) to the Merger Agreement, excluding the Guaranty Agreement, dated October 13, 1997, which is governed only by the provisions of Paragraph 3 of Exhibit E-9 and, to the extent applicable, the agreements on this Schedule 6.

E-9 - 18

151

FORMER SPIEKER LIMITED PARTNERS
WHO HAVE ELECTED TO BECOME PROTECTED PARTNERS
PURSUANT TO SECTION 8 OF EXHIBIT E-9

| NAME OF FORMER SPIEKER LIMITED PARTNER: | 2/22/01 RESTORATION AMOUNT: | 7/02/01 PROTECTED AMOUNT: |
|---|---|---|
| Preston Butcher............................................ | $10,850,000 | $10,850,000* |
| Daniel C. Ross............................................. | $   250,000 | $   250,000* |
| Paul Z. Rose............................................... | $   600,000 | $   600,000* |
| Denny McLarry 1998 Trust................................... | $   900,000 | $   900,000* |
| Otilia C. McLarry 1998 Trust.............................. | $   900,000 | $   900,000* |
| Burch Boone............................................... | $   500,000 | $   500,000* |
| TOTAL..................................................... | $14,000,000 | $14,000,000* |

* Represents the maximum available protected amount.

E-9 - 19

152

FORM OF GUARANTY AGREEMENT -- FOR UNSECURED INDEBTEDNESS -- BETWEEN GUARANTEE PARTNERS, EQUITY OFFICE AND EOP PARTNERSHIP PURSUANT TO SECTION 3(a) OF EXHIBIT E-9(6)

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Agreement"), dated as of [date] is made and entered into by and among EOP Operating Limited Partnership, a Delaware limited partnership (the "Partnership"), Equity Office Properties Trust, a Maryland real estate investment trust (the "General Partner"), and those certain undersigned Persons identified on Schedule 1 attached hereto (as such Schedule 1 may be amended, modified, supplemented or restated from time to time, the "EOP Limited Partners").

WHEREAS, the General Partner is the general partner of the Partnership and each of the EOP Limited Partners is a limited partner in the Partnership.

WHEREAS, the Partnership has issued certain unsecured notes (each of those unsecured notes identified on Schedule 2 attached hereto and referred to herein individually as a "Note" and collectively as the "Notes");

WHEREAS, it is in the best interests of each of the EOP Limited Partners that the Partnership and the General Partner provide to the EOP Limited Partners an opportunity to guaranty the payment and performance of a portion of the Partnership's present and future indebtedness and obligations under the Notes;

NOW, THEREFORE, in consideration of the covenants and conditions set forth herein, as well as other valuable consideration, the parties hereto hereby agree as follows:

1. Capitalized Terms.  Capitalized terms used herein and not otherwise defined herein shall have the same meanings as set forth in the partnership agreement of the EOP Operating Limited Partnership, as such partnership agreement may be amended, modified, supplemented or restated from time to time (the "Partnership Agreement").

2. Partner Assumption of Indebtedness.

a. The EOP Limited Partners unconditionally guarantee to the Partnership (and, as third party beneficiaries, the holders of the Notes) the payment and performance of the Partnership's present and future indebtedness and obligations under the Notes of at least an amount equal to [TOTAL GUARANTY AMOUNT] (the "Total Guaranty Amount") (i.e., that the aggregate principal amounts paid under the Notes by the Partnership will at least equal the Total Guaranty Amount). In addition, the EOP Limited Partners unconditionally indemnify the General Partner (and any other partner of the Partnership that otherwise may have liability directly or indirectly with respect thereof) from and against all liabilities in respect of the Notes except to the extent such liability exceeds an amount equal to the excess, if any, of (i) the Total Guaranty Amount over (ii) payments of principal made by the Partnership on the Notes. The Partnership and the General Partner shall sometimes hereinafter be referred to collectively as the "Debtor". The amounts payable by each EOP Limited Partner in respect of the guarantee and indemnification obligations hereunder shall be in the same proportion as the amounts listed next to such EOP Limited Partner's name on Schedule 3 attached hereto bears to the Total Guaranty Amount provided that, notwithstanding anything to the contrary contained in this Paragraph 2, each EOP Limited Partner's obligation shall be limited to the amount(s) set forth on Schedule 3 next to such EOP Limited Partner's name (with respect to each EOP Limited Partner, a "EOP Limited Partner's Share") and shall be limited to guaranteeing the payment and performance of, and indemnifying the General Partner with respect to, only the Notes set forth on Schedule 3. For the purposes of this Paragraph 2,

E-9 - 20

153

Notes that are repurchased by the Partnership but not retired shall not be
treated as having been repaid except to the extent that, if the repurchased
Notes were treated as having been repaid, the remaining outstanding balance
of the Notes would be less than 200% of the Total Guaranty Amount with
respect to such Notes.

b. Notwithstanding anything to the contrary contained in the
Partnership Agreement or the Bylaws or Declaration of Trust of the General
Partner, as each may be amended, modified, supplemented or restated from
time to time, any decision by Debtor hereunder, including a decision to
make a demand on the EOP Limited Partners under this Paragraph 2, shall
require the majority vote of the independent directors of the General
Partner. Each EOP Limited Partner authorizes Debtor at any time in its
discretion to alter any of the terms of the Notes and to make such
modifications to the Notes that have the effect of releasing Debtor from
liability for all or any part of the Notes; provided, however, that the
Partnership shall have complied with its obligations under Exhibit E-9 of
the Partnership Agreement to offer the EOP Limited Partners the opportunity
to guarantee other Qualifying Debt or shall have agreed to make the
payments required under Exhibit E-9 of the Partnership Agreement. Debtor
and the holders of the Notes or any other parties authorized pursuant to
the documents executed in connection with such Notes, and under all
modifications, renewals and extensions of those instruments (collectively,
the "Loan Documents") to enforce collection thereof (collectively, the
"Note Holders") may take any of the foregoing actions upon any terms and
conditions as Debtor and the Note Holders may elect, without giving notice
to any EOP Limited Partner or obtaining the consent of any EOP Limited
Partner and without affecting the liability of any EOP Limited Partner
under this Paragraph 2.

c. It is understood and agreed by each EOP Limited Partner that until
an amount with respect to the principal amount of the Notes equal to the
Total Guaranty Amount is fully paid and until each and every term, covenant
and condition of this Paragraph 2 is fully performed, no EOP Limited
Partner shall be released by any act or event which might, but for this
provision of this Paragraph 2, be deemed a legal or equitable discharge of
a surety, or by reason of any waiver, extension, modification, forbearance
or delay or other act or omission of any Note Holder or the Partnership's
failure to proceed promptly or otherwise as against the General Partner or
Debtor's failure to proceed promptly or otherwise as against any EOP
Limited Partner or any Note Holder's failure to proceed promptly or
otherwise against Debtor, or by any reason of any action taken or omitted
or circumstance which may or might vary the risk or affect the rights or
remedies of any EOP Limited Partner as against Debtor or any Note Holder,
or by reason of any further dealings between Debtor and any Note Holder,
whether relating to the Notes or otherwise, and each EOP Limited Partner
hereby expressly waives and surrenders any defense to its liability
hereunder based upon any of the foregoing acts, omissions, things,
agreements, waivers or any of them; it being the purpose and intent of this
Paragraph 2 that the obligations of each EOP Limited Partner hereunder are
absolute and unconditional under any and all circumstances. Each EOP
Limited Partner's obligations under this Paragraph 2 are independent of
those of Debtor. Debtor's rights under this Paragraph 2 will not be
exhausted by any action by it until an amount equal to the Total Guaranty
Amount has been fully paid and performed with respect to the Notes and the
period of time has expired during which any payment made to the Note
Holders by Debtor under the Notes or to Debtor by each EOP Limited Partner
under this Paragraph 2 may be determined to be a Preferential Payment (as
defined below) without such determination, in fact, being made. Each EOP
Limited Partner further agrees that to the extent all or any part of any
payment made to the Note Holders under the Notes or by a EOP Limited
Partner under this Paragraph 2 is subsequently invalidated, declared to be
fraudulent or preferential, set aside or required to be repaid by the
recipient thereof or paid over to a trustee, receiver or any other entity,
whether under any bankruptcy act or otherwise (any such payment is
hereinafter referred to as a "Preferential Payment"), then this Paragraph 2
shall continue to be effective or shall be reinstated, as the case may be,
and, to the extent of such payment or repayment, the obligations of the EOP
Limited Partner shall be revived and continued in full force and effect as
if said Preferential Payment had not been made. Each EOP Limited Partner
waives: (a) all statutes of limitations as a defense to any action brought
against any Limited Partner pursuant to this Paragraph 2, to the fullest
extent permitted by law; (b) any defense based upon any legal disability of
Debtor or any discharge or limitation of the liability of Debtor to the
Note Holders, whether consensual or arising by operation or law
E-9 - 21

154

or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause; (c) presentment, demand, protest and notice of any kind, provided that the foregoing waiver shall not be construed to waive any demand or notice to the EOP Limited Partners expressly provided for in this Paragraph 2; and (d) any defense upon or arising out of any defense which Debtor may have to the payment or performance of any part of the Notes.

d. Notwithstanding any other provision of this Paragraph 2 to the contrary, each EOP Limited Partner hereby waives any claim or other rights which such EOP Limited Partner may now have or hereafter acquire against the General Partner, or each of them, or any other EOP Limited Partner, or any other Person (including, without limitation, any other partner in the Partnership), of all or any of the Notes that arise from the existence or performance of such EOP Limited Partner's obligations under this Paragraph 2, the Notes or any of the Loan Documents (all such claims and rights are referred to as the "EOP Limited Partner's Conditional Rights"), including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification, any right to participate in any claim or remedy of the Partnership or the Note Holders against the General Partner, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, by any payment made hereunder or otherwise, including, without limitation, the right to take or receive from Debtor, directly or indirectly, in cash or other property or by setoff or in any other manner, payment or security on account of such claim or other rights. If, notwithstanding the foregoing provisions, any amount shall be paid to any EOP Limited Partner on account of any such EOP Limited Partner's Conditional Rights and either (i) such amount is paid to such EOP Limited Partner at any time when the Notes shall not have been paid or performed in a principal amount equal to the Total Guaranty Amount, or (ii) regardless of when such amount is paid to such EOP Limited Partner, any payment made by Debtor to the Note Holders or by a EOP Limited Partner under this Paragraph 2 is at any time determined to be a Preferential Payment such that the total principal amount received by Note Holders, less the Preferential Payment, is less than the Total Guaranty Amount, then a portion of the amount paid to such EOP Limited Partner equal to the such EOP Limited Partner's proportionate share of the excess of the Total Guaranty Amount over the principal amount received by Note Holders (net of the Preferential Payment) shall be held in trust for the benefit of Debtor and the Note Holders, as their interests may appear, and shall forthwith be paid to the Partnership as a Capital Contribution to be credited and applied upon the Notes, whether matured or unmatured, in such order as Debtor, in its sole and absolute discretion, shall determine. To the extent that any of the provisions of this Paragraph 2 shall not be enforceable, each EOP Limited Partner agrees that until such time as the Notes have been paid and performed in a principal amount equal to the Total Guaranty Amount and the period of time has expired during which any payment made by Debtor to the Note Holders or by a EOP Limited Partner under this Paragraph 2 may be determined to be a Preferential Payment, the EOP Limited Partner's Conditional Rights to the extent not validly waived shall be subordinate to the Note Holder's right to payment and performance of the Notes up to the Total Guaranty Amount, and such EOP Limited Partner shall not enforce such EOP Limited Partner's Conditional Rights during such period. Each EOP Limited Partner assumes full responsibility for keeping fully informed of the financial condition of Debtor and all other circumstances affecting Debtor's ability to perform its obligations under the Loan Documents and agrees that neither Debtor nor the Note Holders will have any duty to report to any EOP Limited Partner any information which Debtor or the Note Holders receive about Debtor's financial condition or any circumstances being on Debtor's ability to perform.

e. Upon a default of the Partnership under the Loan Documents, the Note Holders may elect to compromise, or adjust any part of the Notes, or make any other accommodation with Debtor, or exercise any other remedy against Debtor. Except as expressly provided herein, no such action by the Note Holders will release or limit the liability of any EOP Limited Partner. In addition to all rights of setoff or lien against any moneys, securities or other property of any EOP Limited Partner given to the Partnership by law, the Partnership shall have a right of setoff against all distributions to which a EOP Limited Partner may be entitled from the Partnership, and every such right of setoff may be exercised without demand upon or notice to any EOP Limited Partner (except the notice expressly provided for above). No right of setoff shall be deemed to have been waived by any act or conduct on the part of the Partnership or

E-9 - 22

155

by any neglect to exercise such right of setoff, or by any delay in doing
so; and every right of setoff shall continue in full force and effect until
specifically waived or released by an instrument in writing executed by the
Partnership or until a EOP Limited Partner has satisfied in full all of
such EOP Limited Partner's obligations under this Paragraph 2. In the event
that any EOP Limited Partner shall advance or become obligated to pay any
sums toward the Notes, or in the event that for any reason whatsoever
Debtor is now, or shall hereafter become, indebted to any EOP Limited
Partner, each EOP Limited Partner agrees that the amount of such sums and
such indebtedness and all interest thereon shall at all times be
subordinate as to lien, time of payment and in all other respects to the
prior repayment to Note Holders of a principal amount equal to the Total
Guaranty Amount, and no EOP Limited Partner shall be entitled to enforce or
receive payment thereof until a principal amount equal to the Total
Guaranty Amount owing to the Note Holders has been paid in full and the
period of time has expired during which any payment made by Debtor to the
Note Holders or the EOP Limited Partners pursuant to this Paragraph 2 may
be determined to be a Preferential Payment. Any payment made by any EOP
Limited Partner under this Paragraph 2 shall be deemed to be a Capital
Contribution by said EOP Limited Partner to the Partnership.

f. This Paragraph 2 shall be governed by Delaware law, and, except to
the extent otherwise provided in this Paragraph 2, may be amended only by a
written instrument executed by the EOP Limited Partners listed from time to
time on Schedule 1 hereto and Debtor. Notwithstanding anything to the
contrary provided herein, in no event shall any EOP Limited Partner be
entitled to the issuance of any additional Partnership Units as a result of
any contribution made by such EOP Limited Partner pursuant to this
Paragraph 2, nor shall the Percentage Interests or Partnership Interests of
the Partners be adjusted as a result thereof. Without limiting any other
similar provision in this Agreement, the provisions of this Paragraph 2
shall bind and benefit the heirs' executors, administrators, legal
representatives, successors and assigns of each EOP Limited Partner and
Debtor.

g. Notwithstanding the foregoing, the obligations of the EOP Limited
Partners to make any payments under this Paragraph 2 shall terminate as of
the earliest date (the "Termination Date") that, as a result of a
repayment, compromise or adjustment of a principal amount of the Notes, the
total principal amount outstanding under the Notes is reduced by an amount
equal to or greater than the Total Guaranty Amount, or if the Partnership
incurs indebtedness senior to the Notes, provided that the obligations of
the EOP Limited Partners hereunder shall continue after the Termination
Date to the extent of any claims that are attributable fully and solely to
an event or action that occurred before the Termination Date, and provided
further that the Partnership shall offer the EOP Limited Partners a
Guarantee Opportunity in replacement of the guarantee provided under this
Guaranty Agreement to the extent required pursuant to Exhibit E-9 of the
Partnership Agreement.

3. Non-Discrimination.  The Partnership and the General Partner agree to
exercise all of their rights under Paragraph 2 above in a non-discriminatory
manner with respect to the EOP Limited Partners and in a manner that is not
disproportionate to any of the EOP Limited Partner's Shares of the Indebtedness,
provided that the foregoing shall not impair or limit either the Partnership's
or the General Partner's right to exercise all of their rights under Paragraph 2
above to the fullest extent permitted under this Agreement.

4. Notices.  All notices, offers or other communications required or
permitted to be given pursuant to this Agreement shall be given in the manner
and to the addresses set forth in the Partnership Agreement and shall be deemed
at such time as is set forth in the Partnership Agreement.

5. Effect and Interpretation.  This Agreement shall be governed by and
construed in conformity with the laws of the State of Delaware.

6. Counterparts.  This Agreement may be executed in counterparts, each of
which shall be an original, but all of which shall constitute one and the same
instrument.

7. Third Party Beneficiaries.  The Notes Holders shall be third party
beneficiaries of this Agreement.

8. Entire Understanding; Etc.  This Agreement, together with the
Partnership Agreement, constitutes the entire agreement and understanding among
the parties hereto with respect to the matters set forth in this

E-9 - 23

156

Agreement, and supersedes all prior agreements, oral and written, among the parties hereto with respect to the subject matter hereof.

9. Amendments.  Except to the extent expressly otherwise provided herein, this Agreement may not be amended except by a written instrument signed by the General Partner (and approved on behalf of the General Partner by at least a majority of its directors who are not Affiliates of any of the Limited Partners) and a Majority-In-Interest of the EOP Limited Partners.

10. Severability.  If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid by such court, shall not be affected thereby.

11. Pronouns and Headings.  As used herein, all pronouns shall include the masculine, feminine and neuter, and all defined terms shall include the singular and plural thereof wherever the context and facts require such construction. The headings, titles and subtitles herein are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof. Any references in this Agreement to "including" shall be deemed to mean "including without limitation."

12. Assurances.  Each of the EOP Limited Partners shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and as are not inconsistent with the terms hereof.

13. Tax Consequences.  Each EOP Limited Partner acknowledges that he or she has relied fully upon the advice of its own legal counsel and/or accountant in determining the tax consequences of this Agreement and the transactions contemplated hereby and not upon any representations or advice by the General Partner, the Partnership or any other partner in the Partnership.

14. Disputes.  Notwithstanding anything to the contrary contained in this Agreement, all claims, disputes and controversies between or among any of the parties hereto (including, without limitation, any claims, disputes and controversies between the Partnership or the General Partner and any one or more of the EOP Limited Partners) arising out of or in connection with this Agreement or the subject matter hereof, relating to the validity, construction, performance, breach, enforcement or termination thereof, or otherwise, shall be resolved by binding arbitration pursuant to the applicable law of the State of Delaware, this Section 14 and, to the extent not inconsistent with this Section 14, the Expedited Procedures and Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules"). In the event of any direct conflict, the terms of this Agreement shall control over any conflicting provisions of Delaware law and the Arbitration Rules.

(a) Procedures.  Any arbitration called for by this Section 14 shall be conducted in accordance with the following procedures:

(i) The Partnership, the General Partner or any EOP Limited Partner (the "Requesting Party") may demand arbitration pursuant to Section 14(a) at any time by giving written notice of such demand (the "Demand Notice") to any other EOP Limited Partner with respect to which a claim, dispute or controversy exists hereunder and (if the Requesting Party is not the Partnership or the General Partner) to the Partnership and the General Partner, which Demand Notice shall describe in reasonable detail the nature of the claim, dispute or controversy.

(ii) Within fifteen (15) days after the giving of a Demand Notice, the Requesting Party, on the one hand, and each of the other EOP Limited Partners and/or the Partnership and/or the General Partners against whom the claim has been made or with respect to which a dispute has arisen (collectively, the "Responding Party"), on the other hand, shall select and designate in writing to the other party one reputable, disinterested individual (a "Qualified Individual") willing to act as an arbitrator of the claim, dispute or controversy in question. Each of the Requesting Party and the Responding Party shall use its best efforts to select a present or former partner of a national accounting firm that is not then currently employed by such party as its respective Qualified

E-9 - 24

157

Individual. Within fifteen (15) days after the foregoing selections have been made, the arbitrators so selected shall jointly select a present or former partner of a national accounting firm that is not then currently employed by any of the parties as the third Qualified Individual willing to act as an arbitrator of the claim, dispute or controversy in question (the "Third Arbitrator"). In the event that the two arbitrators initially selected are unable to agree on the Third Arbitrator within the second fifteen (15) day period referred to above, then, on the application of either party, the American Arbitration Association shall promptly select and appoint a present or former partner of a national accounting firm that is not currently employed by any of the parties as the Qualified Individual to act as the Third Arbitrator in accordance with the terms of the Arbitration Rules. The three arbitrators selected pursuant to this subsection (a) shall constitute the arbitration panel for the arbitration in question.

(iii) The presentations of the EOP Limited Partners in the arbitration proceeding shall be commenced and completed within sixty (60) days after the selection of the arbitration panel pursuant to subsection (b) above, and the arbitration panel shall render its decision in writing within thirty (30) days after the completion of such presentations. Any decision concurred in by any two (2) of the arbitrators shall constitute the decision of the arbitration panel, and unanimity shall not be required. If a decision concurred in by at least two (2) of the arbitrators is not rendered within such thirty (30) day period, then each of the parties shall select a new Qualified Individual willing to act as an arbitrator and a new arbitration proceeding shall commence in accordance with this Section 13.

(iv) The arbitration panel shall have the discretion to include in its decision a direction that all or part of the attorneys' fees and costs of the prevailing party or parties and/or the costs of such arbitration be paid by any other party or parties. On the application of a party before or after the initial decision of the arbitration panel, and proof of its attorneys' fees and costs, the arbitration panel shall order the other party to make any payments directed pursuant to the preceding sentence.

(v) The Third Arbitrator shall have the right in its discretion to authorize the obtaining of discovery, including the taking of depositions of witnesses for the purpose of discovery.

(vi) At the request of any party, the arbitrators shall make and provide to the parties written findings of fact and conclusions of law.

(vii) Notwithstanding anything to the contrary provided herein, the arbitrators shall have no authority to award punitive damages.

(b) Binding Character.  Any decision rendered by the arbitration panel pursuant to this Section 14 shall be final and binding on the parties thereto, and judgment thereon may be entered by any state or federal court of competent jurisdiction sitting in the State of Delaware.

(c) Exclusivity.  Arbitration shall be the exclusive method available for resolution of claims, disputes and controversies described in this Section 13 and the Partnership, the General Partner and the EOP Limited Partners stipulate that the provisions hereof shall be a complete defense to any suit, action, or proceeding in any court or before any administrative or arbitration tribunal within respect to any such claim, controversy or dispute. The provisions of this Section 14 shall survive the dissolution of the Partnership. The General Partner and each EOP Limited Partner consents to the jurisdiction of any state or federal court of competent jurisdiction sitting in the State of Delaware to compel arbitration in accordance with the provisions of this Section 13.

(d) No Alteration of Agreement.  Nothing contained herein shall be deemed to give the arbitrators any authority, power or right to alter, change, amend, modify, add to, or subtract from any of the provisions of this Partnership Agreement.

E-9 - 25

158

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of
the date first written above.

                                    EOP Operating Limited Partnership,
                                    a Delaware limited partnership

                                    By: Equity Office Properties Trust,
                                       a Maryland real estate
                                       investment trust

                                    Its: General Partner

                                       By:
                                       -----------------------------------
                                       -----------------------------------
                                       Its:
                                       -----------------------------------
                                       [Title]

                          E-9 - 26

159

COUNTERPART EOP LIMITED PARTNER SIGNATURE PAGE
ATTACHED TO AND MADE A PART OF
THAT CERTAIN GUARANTY AGREEMENT
DATED AS OF

--------------------------------------
Print Name of EOP Limited Partner

--------------------------------------
Signature of EOP Limited Partner

E-9 - 27

160

SCHEDULE 1

List of EOP Limited Partners

E-9 - 28

161

SCHEDULE 2

List of Notes

E-9 - 29

162

SCHEDULE 3

List of EOP Limited Partners' Guaranteed Amounts

E-9 - 30

163

SCHEDULE 8-2 TO EXHIBIT E-9

FORM OF GUARANTY AGREEMENT -- FOR SECURED NONRECOURSE INDEBTEDNESS -- BETWEEN GUARANTEE PARTNERS, EQUITY OFFICE AND EOP PARTNERSHIP PURSUANT TO SECTION 3(a) OF EXHIBIT E-9

GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT ("Guarantee"), dated as of ____, 2001, is made by those certain undersigned Persons identified on Schedule 1 attached hereto ("Guarantors"), in favor of [LENDER] ("Guaranteed Party").

WHEREAS, [BORROWER] ("Maker"), is indebted to the Guaranteed Party in the sum of [LOAN], as evidenced by a certain Promissory Note dated [DATE] (the "Note"), which is secured by a Mortgage (the "Mortgage") on certain property of the Maker(the "Properties" and individually, a "Property").

WHEREAS, the Guarantors desire to guarantee collection of a portion of the principal amount of the Note not in excess of [Guaranteed Amount] (the "Guaranteed Amount").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, Guarantors agree as follows:

1. Guarantee

A. The Guarantors hereby irrevocably and unconditionally guarantee the collection by the Guaranteed Party of, and hereby agree to pay to the Guaranteed Party upon demand (following (1) foreclosure of the Mortgage, exercise of the powers of sale thereunder and/or acceptance by the Guaranteed Party of a deed to a Property in lieu of foreclosures, and (2) the exhaustion of the exercise of any and all remedies available to the Guaranteed Party against Maker, including, without limitation, realizing upon the assets of Maker other than the Properties), an amount equal to the excess, if any, of the Guaranteed Amount over the Maker Proceeds (as hereinafter defined). The amounts payable by each Guarantor in respect of the guarantee obligations hereunder shall be in the same proportion as the amounts listed next to such Guarantor's name on Schedule 2 attached hereto bears to the Guaranteed Amount provided that, notwithstanding anything to the contrary contained in this Agreement, each Guarantor's obligation shall be limited to the amount(s) set forth on Schedule 2 next to such Guarantor's name. The Guarantors' obligations as set forth in this Paragraph 1.A. are hereinafter referred to as the "Guaranteed Obligations."

B. For the purposes of this Guarantee, the term "Maker Proceeds" shall mean the aggregate of the Foreclosure Proceeds (as hereinafter defined) plus all amounts collected from the Maker or realized from the sale of assets of the Maker other than the Properties.

C. For the purposes of this Guarantee, the term "Foreclosure Proceeds" shall have the applicable meaning set forth below with respect to a Property:

1. If at least one bona fide third party unrelated to the Guaranteed Party (and including, without limitation, any of the Guarantors) bids for such Property at a sale thereof, conducted upon foreclosure of the related Mortgage or exercise of the power of sale thereunder, Foreclosure Proceeds shall mean the highest amount bid for such Property by the party that acquires title thereto (directly or through a nominee) at or pursuant to such sale. For the purposes of determining such highest bid, amounts bid for the Property by the Guaranteed Party shall be taken into account notwithstanding the fact that such bids may constitute credit bids which offset against the amount due to the Guaranteed Party under the Note.

2. If there is no such unrelated third-party at such sale of the Property so that only bidder at such sale is the Guaranteed Party or its designee, the Foreclosure Proceeds shall be deemed to be fair market value (the "Fair Market Value") of the Property as of the date of the foreclosure sale, as such Fair Market Value shall be mutually agreed upon by the Guaranteed Party and the Guarantor or determined pursuant to subparagraph 1.D.

3. If the Guaranteed Party receives and accepts a deed to the Property in lieu of foreclosure in partial satisfaction of Maker's obligations under the Note, the Foreclosure Proceeds shall be deemed to

E-9 - 31

164

be the Fair Market Value of such Property as of the date of delivery of the deed-in-lieu of foreclosure, as such Fair Market Value shall be mutually agreed upon by the Guaranteed Party and the Guarantor or determined pursuant to subparagraph 1.D.

D. Fair Market Value of a Property shall be the price at which a willing seller not compelled to sell would sell such Property, and a willing buyer not compelled to buy would purchase the Property, free and clear of all mortgages but subject to all leases and reciprocal easement and operating agreements. If the Guaranteed Party and Guarantor are unable to agree upon the Fair Market Value of a Property in accordance with subparagraphs 1.C.2. or 3. above, as applicable, within twenty (20) days after the date of the foreclosure sale or the delivery of the deed-in-lieu of foreclosure, as applicable, relating to a Property, either party may have the Fair Market Value of a Property determined by appraisal by appointing an appraiser having the qualifications set forth below to determine the same and by notifying the other party of such appointment within twenty (20 days after the expiration of such twenty (20) day period. If the other party shall fail to notify the first party, within twenty (20) days after its receipt of notice of the appointment by the first party, of the appointment by the other party of an appraiser having the qualifications set forth below, the appraiser appointed by the first party shall alone make the determination of such Fair Market Value. Appraisers appointed by the parties shall be members of the Appraisal Institute (MAI) and shall have at least ten years' experience in the valuation of properties similar to the Property being valued in the greater metropolitan area in which such Property is located. If each party shall appoint an appraiser having the aforesaid qualifications and is such tow appraiser cannot, within thirty (30) days after the appointment of the second appraiser, agree upon the determination hereinabove required, then they shall select a third appraiser which third appraiser shall have the aforesaid qualifications, and if they fail so to do within forty (40) days after the appointment of the second appraiser they shall notify the parties hereto, and either party shall thereafter have the right, on notice to the other, to apply, for the appointment of a third appraiser to the chapter of the American Arbitration Association or its successor organization located in the metropolitan area in which the Property is located or to which the Property is proximate or if no such chapter is located in such metropolitan area, in the metropolitan area closest to the Property in which such a chapter is located. Each appraiser shall render its decision as to the Fair Market Value of the Property in question within thirty (30) days after the appointment of the third appraiser and shall furnish a copy thereof to the Guaranteed Party and Guarantor. The Fair Market Value of the Property shall then be calculated as the average of (i) the Fair Market Value determined by the third appraiser and (ii) whichever of the Fair Market Values determined by the first two appraisers is closer to the Fair Market Value determined by the third appraiser; provided, however, that if the Fair Market Value determined by the third appraiser is higher or lower than both Fair Market Values determined by the first two appraiser, such Fair Market Value determined by the third appraiser shall be disregarded and the Fair Market Value of the Property shall then be calculated as the average of the Fair Market Value determined by the first two appraisers. The Fair Market Value of a Property as so determined shall be binding and conclusive upon the Guaranteed Party and Guarantor. Each party shall bear the cost of its own appraiser and the cost of appointing, and the expenses of, the third appraiser shall be shared equally by the Guaranteed Party and Guarantor.

2. Waivers: Other Agreements.

The Guaranteed Party is hereby authorized, without notice to demand upon Guarantors, which notice or demand is expressly waived hereby, and without discharging or otherwise affecting the enforceability of the obligations of the Guarantors hereunder (which shall remain absolute and unconditional notwithstanding any such action or omission to act), from time to time to:

(i) waive or otherwise consent to noncompliance with any provision of the Note or Mortgage, or any part thereof, or any other instrument or agreement in respect of the Guaranteed Obligations now or hereafter executed by Maker or any other person and delivered to the Guaranteed Party, except that Maker shall not extend the time for payment of the Guaranteed Obligations by Maker;

(ii) accept partial payments on the Guaranteed Obligations by Maker;

E-9 - 32

165

    (iii) receive, take and hold additional security or collateral for the payment of the Guaranteed Obligations or for the payment of this Guarantee, or for the payment of any other guarantees of the Guaranteed Obligations, and exchange, enforce, waive, substitute, liquidate, terminate, abandon, fail to perfect, subordinate, transfer, or otherwise alter or release any such additional security or collateral;

    (iv) apply any and all such security or collateral and direct the order or manner of sale thereof as the Guaranteed Party may determine in its sole discretion;

    (v) settle, release, compromise, collect or otherwise liquidate the Guaranteed Obligations or accept, substitute, release, exchange or otherwise alter, affect or impair any Mortgage or any other security or collateral for the Guaranteed Obligations or any other guarantee therefore, in any manner;

    (vi) add, release or substitute any one or more other guarantors, makers or endorsers of the Guaranteed Obligations and otherwise deal with Maker or any other guarantor as the Guaranteed Party may elect in its sole discretion; and

    (vii) apply any and all payments or recoveries from Maker, Guarantors or from any other guarantor of the Guaranteed Obligations, to such of the Guaranteed Obligations as the Guaranteed Party in its sole discretion may determine, whether such Guaranteed Obligations are secured or unsecured or guaranteed or not guaranteed by others.

3. Miscellaneous.

    A. This Guarantee is irrevocable as to any and all of the Guaranteed Obligations until the earliest date (the "Termination Date") that, as a result of a repayment, compromise or adjustment of a principal amount of the Note, the total principal amount outstanding under the Note is reduced by an amount equal to or greater than the Total Guaranty Amount, or if the Borrower incurs indebtedness senior to, or pari passu with the Note, provided that the obligations of the Guarantors hereunder shall continue after the Termination Date to the extent of any claims that are attributable fully and solely to an event or action that occurred before the Termination Date, and provided further that the EOP Operating Limited Partnership shall offer the Borrower a Guarantee Opportunity, (as defined in Exhibit E-9 of the Partnership Agreement) in replacement of the guarantee provided under this Guaranty Agreement to the extent required pursuant to Exhibit E-9.

    B. This Guarantee is binding on the Guarantors and their successors and assigns, and insures to the benefit of the Guaranteed Party.

    C. No delay on the part of the Guaranteed Party in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise or waiver by the Guaranteed Party of any right or remedy shall preclude any further exercise thereof, nor shall any modification or waiver of any of the provisions of this Guarantee be binding upon the Guaranteed Party, except as expressly set forth in a writing duly signed or delivered by the Guaranteed Party or on the Guaranteed Party's behalf by an authorized officer or agent of the Guaranteed Party. The Guaranteed Party's failure at any time or times hereafter to require strict performance by Maker, Guarantors or any other person of any of the provisions, warranties, terms and conditions contained in any security agreement, agreements, guarantee, instrument or document now or at any time or times hereafter executed by Maker or Guarantors or delivered to the Guaranteed Party shall not waive, affect or diminish any right of the Guaranteed Party at any time or times hereafter to demand strict performance thereof and such right shall not be deemed to have been waived by any act or knowledge of the Guaranteed Party, its agents, officers, or employees, unless such waiver is contained in an instrument in writing signed by an officer or agent of the Guaranteed Party and directed to Maker or Guarantors, or either of them (as the case may be) specifying such waiver. No waiver by the Guaranteed Party of any default shall operate as a waiver of any other default or the same default on a future occasion, and no action by the Guaranteed Party permitted hereunder shall in any way affect or impair the Guaranteed Party's rights or the obligations of Guarantors under this Guarantee.

    D. This Guarantee shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws (other than the conflicts of law provisions) of the State of [New York].

E-9 - 33

166

E. This Guarantee contains all the terms and conditions of the agreement between the Guaranteed Party and Guarantors. The terms and provisions of this Guarantee may not be waived, altered, modified or amended except in writing duly executed by the party to be charged thereby.

F. Any notice shall be directed to the parties at the following addresses:

If to Guarantors:

If to the Guaranteed Party:

G. Capitalized terms used herein and not otherwise defined herein shall have the same meanings as set forth in the partnership agreement of the EOP Operating Limited Partnership, as such partnership agreement may be amended, modified, supplemented or restated from time to time (the "Partnership Agreement").

E-9 - 34

167

COUNTERPART GUARANTOR SIGNATURE PAGE
ATTACHED TO AND MADE A PART OF
THAT CERTAIN GUARANTY AGREEMENT
DATED AS OF

    IN WITNESS WHEREOF, the undersigned has duly executed this Guarantee as of the date first above written.

----------------------------------------
Print Name of Guarantor

----------------------------------------
Signature of Guarantor

E-9 - 35

168

ATTACHMENT A

(SERIES A PREFERRED UNITS)

In accordance with Sections 4.2.A and 4.2.D of the Partnership Agreement, set forth below are the terms and conditions of the Series A Preferred Units established and issued by the Partnership to the General Partner on December 19, 1997, in connection with the merger of Beacon Properties L.P. ("Beacon Partnership") with and into the Partnership (the "Beacon Partnership Merger"), in exchange for the then outstanding Series A Preferred Units of Beacon Partnership (all of which had been acquired by the General Partner as a result of the merger of Beacon Properties Corporation with and into the General Partner). All capitalized terms used in this Attachment and not otherwise defined shall have the meanings assigned in the Partnership Agreement.

A.      Designation and Number. A series of Partnership Units, designated as Series A Preferred Units, was established on December 19, 1997, on which date 8,000,0000 Series A Preferred Units were issued to the General Partner in the Beacon Partnership Merger.

B.      Rank. The Series A Preferred Units shall, with respect to distribution rights and rights upon liquidation, dissolution or winding up of the Partnership, rank (a) senior to the Class A Units, Class B Units and all Partnership Interests ranking junior to the Series A Preferred Units; (b) on a parity with the Series B Preferred Units, the Series C Preferred Units, the Series D Preferred Units, the Series E Preferred Units, the Series F Preferred Units and all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series A Preferred Units; and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series A Preferred Units.

C.      Distributions.

(i)      Pursuant to Section 5.1 of the Partnership Agreement, holders of Series A Preferred Units shall be entitled to receive, out of Available Cash, cumulative preferential distributions of Available Cash at the rate of 8.98% of the $25.00 liquidation preference per annum (equivalent to a fixed annual amount of $2.245 per unit). Such distributions shall be cumulative from the last date on which any distributions were paid with respect to the Series A Preferred Units of Beacon Partnership for which the Series A Preferred Units were exchanged in connection with the Beacon Partnership Merger and shall be payable quarterly in arrears on or before March 15, June 15, September 15 and December 15 of each year or, if not a business day, the next succeeding business day (each a "Series A Preferred Unit

169

Distribution Payment Date"). Any distribution payable on the Series A Preferred Units for any partial distribution period shall be computed on the basis of a 360-day year consisting of twelve 30-day months.

(ii)    No distributions on Series A Preferred Units shall be authorized or paid or set apart for payment at such time as the terms and provisions of any agreement of the Partnership, including any agreement relating to its indebtedness, prohibits such authorization, payment or setting apart for payment or provides that such authorization, payment or setting apart for payment would constitute a breach thereof, or a default thereunder, or if such authorization or payment shall be restricted or prohibited by law.

(iii)    Notwithstanding the foregoing, distributions with respect to the Series A Preferred Units will accrue whether or not the terms and provisions set forth in Section C.(ii) of this Attachment A at any time prohibit the current payment of distributions, whether or not there is sufficient Available Cash for such distributions and whether or not such distributions are authorized. Accrued but unpaid distributions on the Series A Preferred Units will accumulate as of the Series A Preferred Unit Distribution Payment Date on which they first become payable.

(iv)    When distributions are not paid in full (or a sum sufficient for such full payment is not so set apart) upon the Series A Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series A Preferred Units, all distributions authorized upon the Series A Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series A Preferred Units shall be authorized pro rata so that the amount of distributions authorized per Partnership Unit of Series A Preferred Units and such other Partnership Interests shall in all cases bear to each other the same ratio that accrued distributions per Partnership Unit on the Series A Preferred Units and such other Partnership Interests (which shall not include any accrual in respect of unpaid distributions for prior distribution periods if such other Partnership Interests do not have a cumulative distribution) bear to each other. No interest, or sum of money in lieu of interest, shall be payable in respect of any distribution payment or payments on Series A Preferred Units which may be in arrears.

(v)    Except as provided in Section C.(iv) of this Attachment A, unless full cumulative distributions on the Series A Preferred Units have been or contemporaneously are authorized and paid or authorized and a sum sufficient for the payment thereof is set apart for payment for all past distribution periods and the then current distribution period, no distributions (other than in Partnership Interests ranking junior to the Series A Preferred Units as to distributions and upon liquidation) shall be authorized or paid or set aside for payment nor shall any other distribution be authorized or made upon the Class A Units, the Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series A Preferred Units as to distributions or upon liquidation, nor shall any Class A Units,

Attachment A-2

170

Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series A Preferred Units as to distributions or upon liquidation be redeemed, purchased or otherwise acquired for any consideration (or any moneys be paid to or made available for a sinking fund for the redemption of any such units or other Partnership Interests) by the Partnership (except by conversion into or exchange for Partnership Interests ranking junior to the Series A Preferred Units as to distributions and upon liquidation).

(vi)    Holders of the Series A Preferred Units shall not be entitled to any distribution, whether payable in cash, property or Partnership Units in excess of full cumulative distributions on the Series A Preferred Units as described above. Any distribution payment made on the Series A Preferred Units shall first be credited against the earliest accrued but unpaid distribution due with respect to such Series A Preferred Units which remains payable.

D.    Allocations.

Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among holders of Series A Preferred Units in accordance with Article VI of the Agreement.

E.    Liquidation Preference.

(i)    Upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the holders of Series A Preferred Units then outstanding are entitled to be paid out of the assets of the Partnership available for distribution to the Partners pursuant to Section 13.2.A of the Agreement a liquidation preference of $25.00 per Series A Preferred Unit, plus an amount equal to any accrued and unpaid distributions to the date of payment, before any distribution of assets is made to holders of Class A Units, Class B Units or any other Partnership Interests that rank junior to the Series A Preferred Units as to liquidation rights.

(ii)    In the event that, upon any such voluntary or involuntary liquidation, dissolution or winding up, the available assets of the Partnership are insufficient to pay the amount of the liquidating distributions on all outstanding Series A Preferred Units and the corresponding amounts payable on all other Partnership Interests ranking on a parity with the Series A Preferred Units in the distribution of assets, then such assets shall be allocated among the Series A Preferred Units, as a class, and each class or series of such other such Partnership Interests, as a class, in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

(iii)    After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series A Preferred Units will have no right or claim to any of the remaining assets of the Partnership.

Attachment A-3

171

    (iv)    The consolidation or merger of the Partnership with or into any other partnership, corporation, trust or entity or of any other partnership, corporation, trust or other entity with or into the Partnership or the sale, lease or conveyance of all or substantially all of, the property or business of the Partnership, shall not be deemed to constitute a liquidation, dissolution or winding up of the Partnership for purposes of this Section E.

    F.    Redemption.

    In connection with a redemption by the General Partner of any or all of the Series A Preferred Shares of the General Partner, the Partnership shall provide cash to the General Partner for such purpose which shall be equal to redemption price of the Series A Preferred Shares to be redeemed and one Series A Preferred Unit shall be canceled with respect to each Series A Preferred Share so redeemed. From and after the date in which the Series A Preferred Shares are redeemed, any Series A Preferred Units so canceled shall no longer be outstanding and all rights hereunder, to distributions or otherwise, with respect to such Series A Preferred Units shall cease.

Attachment A-4

172

ATTACHMENT B

(SERIES B PREFERRED UNITS)

In accordance with Sections 4.2.A and 4.2.D of the Agreement, set forth below are the terms and conditions of the Series B Preferred Units established and issued by the Partnership on February 19, 1998, in connection with the issuance of Series B Preferred Shares by the General Partner. Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Agreement.

A.      Designation and Number. A series of Partnership Units, designated as Series B Preferred Units was established on February 19, 1998, on which date 6,000,000 Series B Preferred Units were issued to the General Partner.

B.      Rank. The Series B Preferred Units shall, with respect to distribution rights and rights upon voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, rank (a) senior to the Class A Units, Class B Units and all Partnership Interests ranking junior to the Series B Preferred Units; (b) on a parity with the Series A Preferred Units, the Series C Preferred Units, the Series D Preferred Units, the Series E Preferred Units, the Series F Preferred Units, and all other Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series B Preferred Units; and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series B Preferred Units.

C.      Distributions.

(i)      Pursuant to Section 5.1 of the Agreement, holders of Series B Preferred Units shall be entitled to receive, out of Available Cash, cumulative preferential cash distributions at the rate of 5.25% of the $50.00 liquidation preference per annum (equivalent to a fixed annual amount of $2.625 per unit). Distributions (which term as used herein shall include liquidated damages, if any, payable pursuant to Section C.(vi) of this Attachment B) on the Series B Preferred Units shall be payable quarterly and be cumulative from the fifteenth day of each February, May, August and November or, if not a business day, the next succeeding business day (each, a "Series B Preferred Unit Distribution Payment Date"). Any distribution (including the initial distribution) payable on the Series B Preferred Units for any partial distribution period shall be prorated and computed on the basis of a 360-day year consisting of twelve 30-day months.

(ii)     No distribution on the Series B Preferred Units shall be authorized by the General Partner or paid or set apart for payment by the

173

Partnership at such time as the terms and provisions of any agreement of the Partnership, including any agreement relating to its indebtedness, prohibits such authorization, payment or setting apart for payment or provides that such authorization, payment or setting apart for payment would constitute a breach thereof, or a default thereunder, or if such authorization or payment shall be restricted or prohibited by law. No interest, or sum of money in lieu of interest, shall be payable in respect of any distribution payment or payments on the Series B Preferred Units which may be in arrears.

Notwithstanding the foregoing, distributions with respect to the Series B Preferred Units shall accumulate whether or not any of the foregoing restrictions exist, whether or not there is sufficient Available Cash for the payment thereof and whether or not such distributions are authorized. Accumulated but unpaid distributions on the Series B Preferred Units shall not bear interest and holders of the Series B Preferred Units shall not be entitled to any distributions in excess of full cumulative distributions. Any distribution payment made on the Series B Preferred Units shall first be credited against the earliest accumulated but unpaid distribution due with respect to such units which remains payable.

(iii) Except as provided in Section C.(iv) of this Attachment B, if any Series B Preferred Units are outstanding, no distributions (other than in Partnership Interests ranking junior to the Series B Preferred Units as to distributions and upon liquidation, dissolution or winding up of the affairs of the Partnership) shall be declared or paid or set apart for payment nor shall any other distribution be declared or made upon the Class A Units, the Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series B Preferred Units as to distributions or upon liquidation, dissolution or winding up of the affairs of the Partnership for any period unless full cumulative distributions have been or contemporaneously are declared and paid or declared and a sum sufficient for the payment thereof set apart for such payment on the Series B Preferred Units for all past distribution periods and the then current distribution period, nor shall any Class A Units, Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series B Preferred Units as to distributions or upon liquidation, dissolution or winding up of the affairs of the Partnership, be redeemed, purchased or otherwise acquired for any consideration (or any moneys be paid to or made available for a sinking fund for the redemption of any such Partnership Interests) by the Partnership (except by conversion into or exchange for Partnership Interests ranking junior to the Series B Preferred Units as to distributions and upon liquidation, dissolution or winding up of the affairs of the Partnership).

(iv) When distributions are not paid in full (or a sum sufficient for such full payment is not so set apart) upon the Series B Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series B Preferred Units, all distributions declared upon the Series B Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series B Preferred Units shall be declared pro rata so that the amount of

Attachment B-2

174

distributions declared per unit of Series B Preferred Units and such other Partnership Interests shall in all cases bear to each other the same ratio that accumulated distributions per unit on the Series B Preferred Units and such other Partnership Interests (which shall not include any accumulation in respect of unpaid distributions for prior distribution periods if such other Partnership Interests do not have a cumulative distribution) bear to each other.

(v)     Holders of Series B Preferred Units shall not be entitled to any distribution, whether payable in cash, property or Partnership Interests, in excess of full cumulative distributions on the Series B Preferred Units as described above. Accumulated but unpaid distributions on the Series B Preferred Units will accumulate as of the Series B Preferred Unit Distribution Payment Date on which they first become payable.

(vi)     If the General Partner fails to maintain the effectiveness of the registration statement as required by the Registration Rights Agreement dated February 19, 1998 between the General Partner and Lehman Brothers Inc. (the "Registration Rights Agreement"), liquidated damages shall accumulate on the $50.00 liquidation preference of the Series B Preferred Units at a rate of 0.25% per annum (equivalent to a fixed annual amount of $0.125 per unit) with respect to the first quarter immediately following such failure and at a rate of 0.50% per annum (equivalent to a fixed annual amount of $0.25 per unit) with respect to the second quarter and all subsequent quarters following such failure ("Liquidated Damages").

D.     Allocations.

Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among holders of Series B Preferred Units in accordance with Article VI of the Agreement.

E.     Liquidation Preference.

(i)     In the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the holders of the Series B Preferred Units shall be entitled to receive out of the assets of the Partnership available for distribution to the Partners pursuant to Section 13.2.A of the Agreement a liquidation preference of $50.00 per Series B Preferred Unit, plus an amount equal to any accumulated and unpaid distributions to the date of payment, before any distribution of assets is made to holders of Class A Units, Class B Units or any other Partnership Interests that rank junior to the Series B Preferred Units as to liquidation rights.

(ii)     If upon any such voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the assets of the Partnership are insufficient to make such full payment to holders of the Series B Preferred Units and the corresponding amounts payable on all other Partnership Interests ranking on a parity with the Series B Preferred Units in the distribution

Attachment B-3

175

of assets, then the holders of such Partnership Interests shall share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

(iii)    After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series B Preferred Units shall have no right or claim to any of the remaining assets of the Partnership.

(iv)    None of a consolidation or merger of the Partnership with or into another entity, merger of another entity with or into the Partnership, a statutory unit exchange by the Partnership or a sale, lease or conveyance of all or substantially all of the Partnership's property or business shall be considered a liquidation, dissolution or winding up of the affairs of the Partnership.

F.    Redemption.

In connection with redemption by the General Partner of any of its Series B Preferred Shares in accordance with the provisions of the Articles Supplementary to the Declaration of Trust filed with the State Department of Assessments and Taxation of Maryland on February 19, 1998, establishing the Series B Preferred Shares (the "Articles Supplementary"), the Partnership shall provide cash to the General Partner for such purpose which shall be equal to the redemption price (as set forth in the Articles Supplementary) and one Series B Preferred Unit shall be canceled with respect to each Series B Preferred Share so redeemed by the General Partner. From and after the Series B Preferred Share Redemption Date (as defined in the Articles Supplementary), any Series B Preferred Units so canceled shall no longer be outstanding and all rights hereunder, to distributions or otherwise, with respect to such Series B Preferred Units shall cease.

G.    Conversion.

In connection with conversion into Shares of any Series B Preferred Shares in accordance with the provisions of the Articles Supplementary, the Partnership shall (i) issue to the General Partner a number of Class A Units equal to the number of Shares issued by the General Partner upon such conversion; and (ii) provide cash to the General Partner, if necessary, in an amount equal to the amount of cash paid by the General Partner upon conversion of any Series B Preferred Shares which would otherwise result in the issuance of fractional Shares. One Series B Preferred Unit, or any fraction thereof, shall be canceled with respect to each Series B Preferred Share, or any fraction thereof, so converted, and from and after such conversion, any Series B Preferred Units so canceled shall no longer be outstanding and all rights hereunder, to distributions or otherwise, with respect to such Series B Preferred Units shall cease.

Attachment B-4

176

ATTACHMENT C

(SERIES C PREFERRED UNITS)

In accordance with Sections 4.2.A and 4.2.D of the Agreement, set forth below are the terms and conditions of the Series C Preferred Units established and issued by the Partnership on December 14, 1998, in connection with issuance of Series C Preferred Shares by the General Partner. Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Agreement.

A.    Designation and Number. A series of Partnership Units, designated as Series C Preferred Units was established on December 14, 1998, on which date 4,600,000 Series C Preferred Units were issued to the General Partner.

B.    Rank. The Series C Preferred Units shall, with respect to distribution rights and rights upon liquidation, dissolution or winding up of the Partnership, rank (a) senior to the Class A, Units, Class B Units and all Partnership Interests ranking junior to the Series C Preferred Units; (b) on a parity with the Series A Preferred Units, the Series B Preferred Units, the Series D Preferred Units, the Series E Preferred Units, the Series F Preferred Units, and all other Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series C Preferred Units; and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series C Preferred Units.

C.    Distributions.

(i)    Pursuant to Section 5.1 of the Agreement, holders of Series C Preferred Units shall be entitled to receive, out of Available Cash, cumulative preferential distributions of Available Cash at the rate of 8 5/8% of the $25.00 liquidation preference per annum (equivalent to a fixed annual amount of $2.15625 per unit). Such distributions shall accumulate on a daily basis and be cumulative from the date of original issuance (December 8, 1998) and shall be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year or, if not a business day, the next succeeding business day (each a "Series C Preferred Unit Distribution Payment Date"), commencing March 15, 1999. Any distribution payable on the Series C Preferred Units for any partial distribution period shall be computed on the basis of a 360-day year consisting of twelve 30-day months.

(ii)    No distributions on Series C Preferred Units shall be authorized or paid or set apart for payment at such time as the terms and provisions of any agreement of the Partnership, including any agreement relating to its indebtedness, prohibits such authorization, payment or setting apart for

177

payment or provides that such authorization, payment or setting apart for payment would constitute a breach thereof, or a default thereunder, or if such authorization or payment shall be restricted or prohibited by law.

(iii)    Notwithstanding the foregoing, distributions with respect to the Series C Preferred Units will accumulate whether or not the terms and provisions set forth in Section C.(ii) of this Attachment C at any time prohibit the current payment of distributions, whether or not there is sufficient Available Cash for such distributions and whether or not such distributions are authorized. Accumulated but unpaid distributions on the Series C Preferred Units will accumulate as of the Series C Preferred Unit Distribution Payment Date on which they first become payable.

(iv)    When distributions are not paid in full (or a sum sufficient for such full payment is not so set apart) upon the Series C Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series C Preferred Units, all distributions authorized upon the Series C Preferred Units and any other Partnership Interests ranking on a parity as to distributions with the Series C Preferred Units shall be authorized pro rata so that the amount of distributions authorized per Partnership Unit of Series C Preferred Units and such other Partnership Interests shall in all cases bear to each other the same ratio that accumulated distributions per Partnership Unit on the Series C Preferred Units and such other Partnership Interests (which shall not include any accumulation in respect of unpaid distributions for prior distribution periods if such other Partnership Interests do not have a cumulative distribution) bear to each other. No interest, or sum of money in lieu of interest, shall be payable in respect of any distribution payment or payments on Series C Preferred Units which may be in arrears.

(v)    Except as provided in Section C.(iv) of this Attachment C, unless full cumulative distributions on the Series C Preferred Units have been or contemporaneously are authorized and paid or authorized and a sum sufficient for the payment thereof is set apart for payment for all past distribution periods and the then current distribution period, no distributions (other than in Partnership Interests ranking junior to the Series C Preferred Units as to distributions and upon liquidation) shall be authorized or paid or set aside for payment nor shall any other distribution be authorized or made upon the Class A Units, the Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series C Preferred Units as to distributions or upon liquidation, nor shall any Class A Units, Class B Units, or any other Partnership Interests ranking junior to or on a parity with the Series C Preferred Shares as to distributions or upon liquidation be redeemed, purchased or otherwise acquired for any consideration (or any moneys be paid to or made available for a sinking fund for the redemption of any such units or other Partnership Interests) by the Partnership (except by conversion into or exchange for Partnership Interests ranking junior to the Series C Preferred Units as to distributions and upon liquidation).

Attachment C-2

178

        (vi)    Holders of the Series C Preferred Units shall not be entitled to any distribution, whether payable in cash, property or Partnership Units in excess of full cumulative distributions on the Series C Preferred Units as described above. Any distribution payment made on the Series C Preferred Units shall first be credited against the earliest accumulated but unpaid distribution due with respect to such Series C Preferred Units which remains payable.

        D.      Allocations.

        Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among holders of Series C Preferred Units in accordance with Article VI of the Agreement.

        E.      Liquidation Preference.

        (i)    Upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the holders of Series C Preferred Units then outstanding are entitled to be paid out of the assets of the Partnership available for distribution to the Partners pursuant to Section 13.2.A of the Agreement a liquidation preference of $25.00 per Series C Preferred Unit, plus an amount equal to any accumulated and unpaid distributions to the date of payment, before any distribution of assets is made to holders of Class A Units, Class B Units or any other Partnership Interests that rank junior to the Series C Preferred Units as to liquidation rights.

        (ii)    In the event that, upon any such voluntary or involuntary liquidation, dissolution or winding up, the available assets of the Partnership are insufficient to pay the amount of the liquidating distributions on all outstanding Series C Preferred Units and the corresponding amounts payable on all other Partnership Interests ranking on a parity with the Series C Preferred Units in the distribution of assets, then such assets shall be allocated among the Series C Preferred Units, as a class, and each class or series of such other such Partnership Interests, as a class, in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

        (iii)    After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series C Preferred Units will have no right or claim to any of the remaining assets of the Partnership.

        (iv)    The consolidation or merger of the Partnership with or into any other partnership, corporation, trust or entity or of any other partnership, corporation, trust or other entity with or into the Partnership or the sale, lease or conveyance of all or substantially all of, the property or business of the Partnership, shall not be deemed to constitute a liquidation, dissolution or winding up of the Partnership for purposes of this Section E.

Attachment C-3

179

F.      Redemption.

In connection with a redemption by the General Partner of any or all of the Series C Preferred Shares, the Partnership shall provide cash to the General Partner for such purpose which shall be equal to redemption price of the Series C Preferred Shares to be redeemed and one Series C Preferred Unit shall be canceled with respect to each Series C Preferred Share so redeemed. From and after the date in which the Series C Preferred Shares are redeemed, the Series C Preferred Units so canceled shall no longer be outstanding and all rights hereunder, to distributions or otherwise, with respect to such Series C Preferred Units shall cease.

Attachment C-4

180

ATTACHMENT D

(SERIES D PREFERRED UNITS)

In accordance with Sections 4.2.A and 4.2.D of the Agreement, set forth below are the terms and conditions of the Series D Preferred Units hereby established that will be issued by the Partnership to Spieker on July 2, 2001, in connection with the merger of Spieker Properties, L.P. ("Spieker Partnership") with and into the Partnership (the "Spieker Partnership Merger"), in exchange for the then outstanding Series B Preferred Interest of Spieker Partnership (all of which will be acquired by the General Partner in the merger of Spieker Properties, Inc. with and into General Partner (the "REIT Merger") immediately following the Spieker Partnership Merger). All capitalized terms used in this Attachment D and not otherwise defined shall have the meanings assigned in the Agreement.

A.    Designation and Number. A series of Partnership Units, designated as Series D Cumulative Redeemable Preferred Units (the "Series D Preferred Units"), is hereby established. The number of Series D Preferred Units shall be 4,250,000.

B.    Rank. The Series D Preferred Units shall, with respect to distribution rights and rights upon voluntary or involuntary liquidation, dissolution or winding up of the Partnership, rank (a) senior to the Class A Units, Class B Units and all Partnership Interests ranking junior to the Series D Preferred Units; (b) on a parity with the Series A Preferred Units, the Series B Preferred Units, the Series C Preferred Units, Series E Preferred Units, Series F Preferred Units, and all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series D Preferred Units (each referred to as "Parity Preferred Units"); and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series D Preferred Units.

C.    Distributions.

(a)    Subject to the rights of series of Preferred Units which may from time to time come into existence, the holders of Series D Preferred Units shall be entitled to receive distributions, when, as and if required pursuant to the Agreement, of Available Cash, prior and in preference to any distribution with respect to Class A Units or Class B Units, at the rate of $2.3625 per Series D Preferred Unit per annum. Such distributions shall be cumulative from the last date on which any distributions were paid with respect to Series B Cumulative Redeemable Preferred Interest of Spieker Partnership for which Series D Preferred Units were exchanged in connection with the merger of Spieker Partnership with

181

and into the Partnership and shall be payable quarterly in arrears on the last day of March, June, September and December or, if not a business day, the next succeeding business day (each, a "Distribution Payment Date"). Any distribution payable on Series D Preferred Units for any partial distribution period will be computed on the basis of a 360-day year consisting of twelve 30-day months. Distributions will be payable to Series D Preferred Unitholders at the close of business on the Partnership Record Date, which shall be on such date designated by the General Partner for the payment of distributions (each, a "Distribution Record Date").

      (b)     Distributions on Series D Preferred Units will accrue whether or not the Partnership has Available Cash, whether or not there are funds legally available for the payment of such distributions and whether or not such distributions are declared. No interest, or sum of money in lieu of interest, shall be payable in respect of any distribution payment or payments on Series D Preferred Units which may be in arrears. Holders of the Series D Preferred Units will not be entitled to distributions in excess of the full cumulative distributions as described above.

      (c)     If any Series D Preferred Units are outstanding, no distributions shall be declared or paid or set apart for payment on any Partnership Unit, as to distributions, on a parity with or junior to Series D Preferred Units for any period unless full cumulative distributions have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for such payments on Series D Preferred Units for all past distribution periods and the then current distribution period. When distributions are not paid in full (or a sum sufficient for such full payment is not set apart) upon the Series D Preferred Units and the Partnership Units ranking on parity as to distributions with Series D Preferred Units, all distributions declared upon Series D Preferred Units and any other series of Partnership Units having parity as to distributions with Series D Preferred Units shall be declared pro rata so that the amount of distributions declared per Series D Preferred Units and such other Partnership Units shall in all cases bear to each other the same ratio that accrued distributions per share on Series D Preferred Units and such other Partnership Units bear to each other.

      (d)     Except as provided in Section 3(c), unless full cumulative distributions on Series D Preferred Units have been or contemporaneously are declared and paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, no distributions (other than in Class A Units or other Partnership Units ranking junior to Series D Preferred Units as to distributions and amounts upon liquidation) shall be declared or paid or set aside for payment or other distribution shall be declared or made upon the Class A Units, Class B Units, Series A Preferred Units, Series B Preferred Units, Series C Preferred Units, Series E Preferred Units and Series F Preferred Units or any other Partnership Units ranking junior to or on a parity with Series D Preferred Units as to distributions or upon liquidation, nor shall any Class A Units, Class B Units, Series A Preferred Units, Series B Preferred

Attachment D-2

182

Units, Series C Preferred Units, Series E Preferred Units and Series F Preferred Units, or any other Partnership Units ranking junior to or on a parity with Series D Preferred Units as to distributions or amounts upon liquidation be redeemed by the Partnership (except by conversion into or exchange for other Partnership Units ranking junior to Series D Preferred Units as to distributions and amounts upon liquidation).

        (e)      Any distribution payment made on Series D Preferred Units shall first be credited against the earliest accrued but unpaid distribution due with respect to Series D Preferred Units which remains payable.

        D.      Allocations.

        Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among the holders of Series D Preferred Units in accordance with Article VI of the Agreement.

        E.      Liquidation Preference.

        (a)      Subject to the rights of series of Preferred Units which may from time to time come into existence, upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, then, before any distribution or payment shall be made to the holders of any Class A Units, Class B Units, or any other class or series of Partnership ranking junior to Series D Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership, the holders of Series D Preferred Units shall be entitled to receive out of assets of the Partnership legally available for distribution to limited partners, liquidation distributions in the amount of the liquidation preference of $25.00 per share, plus an amount equal to all distributions accrued and unpaid thereon. After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series D Preferred Units will have no right or claim to any of the remaining assets of the Partnership. In the event that, upon any such voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the available assets of the Partnership are insufficient to pay the amount of the liquidation distributions on all outstanding Series D Preferred Units and the corresponding amounts payable on all Partnership Units ranking on a parity with Series D Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership ("Parity Units"), then the holders of Series D Preferred Units and Parity Units shall share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

        (b)      For the purposes hereof, neither a consolidation or merger of the Partnership with or into any other partnership, limited liability company, corporation or any other entity, nor a merger of any other partnership, limited liability company, corporation or any other entity with or into the Partnership, nor a

Attachment D-3

183

sale or transfer of all or any part of the Partnership assets for cash or securities shall be considered a liquidation, dissolution or winding up of the Partnership.

F.    Redemption

(a)    Series D Preferred Units are not redeemable prior to December 11, 2000. On and after December 11, 2000, the General Partner may redeem outstanding Series D Preferred Units, in whole or in part, at any time or from time to time, for cash at a redemption price of $25.00 per unit, plus an amount equal to all distributions accrued and unpaid thereon to the date fixed for redemption, without interest. The redemption price of Series D Preferred Units (other than the portion thereof consisting of accrued and unpaid distributions) is payable solely out of proceeds (without giving effect to any temporary use of such proceeds) from the contributions with respect to other Partnership Units, which may include Class A Units, Class B Units, Preferred Units, or other ownership interests in the Partnership however designated (other than debt securities converted into or exchangeable for Partnership Units), and any rights, warrants or options to purchase any thereof. If fewer than all of the outstanding Series D Preferred Units are to be redeemed, the number of units to be redeemed will be determined by the General Partner and such units may be redeemed pro rata from the holders of such units in proportion to the number of such units held by such holders (with adjustments to avoid redemption of fractional units) or by lot in a manner determined by the General Partner.

(b)    Unless full cumulative distributions on all Series D Preferred Units and Parity Units shall have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, no Series D Preferred Units or Parity Units shall be redeemed unless all outstanding Series D Preferred Units and Parity Units are simultaneously redeemed; provided, however, that the foregoing shall not prevent the purchase or acquisition of Series D Preferred Units or Parity Units pursuant to a purchase or exchange offer made on the same terms to holders of all outstanding Series D Preferred Units or Parity Units, as the case may be. Furthermore, unless full cumulative distributions on all outstanding Series D Preferred Units and Parity Units have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, the Partnership shall not purchase or otherwise acquire directly or indirectly any Series D Preferred Units or Parity Units (except by conversion into or exchange for Partnership Units ranking junior to Series D Preferred Units and Parity Units as to distributions and amounts upon liquidation).

(c)    The General Partner shall, in its sole discretion, determine the form and content of a notice of redemption. If notice of redemption of any Series D Preferred Units has been given and if the funds necessary for such redemption have been set aside by the Partnership in trust for the benefit of the holders of Series D Preferred Units so called for redemption, then from and after the redemption date,

Attachment D-4

184

distributions will cease to accrue on such Series D Preferred Units, such Series D Preferred Units shall no longer be deemed outstanding and all rights of the holders of such units will terminate, except the right to receive the redemption price.

(d)    The holders of Series D Preferred Units at the close of business on a Distribution Record Date will be entitled to receive the distribution payable with respect to such Series D Preferred Units on the corresponding Distribution Payment Date notwithstanding the redemption thereof between such Distribution Record Date and the corresponding Distribution Payment Date or the Partnership's default in the payment of the distribution due. Except as provided above, the Partnership will make no payment or allowance for unpaid distributions, whether or not in arrears, on Series D Preferred Units which have been called for redemption.

F.    Status of Redeemed Series D Preferred Units.

In the event any Series D Preferred Units shall be redeemed pursuant hereto, the units so redeemed shall revert to the status of authorized but unissued Preferred Units available for future issuance and reclassification by the General Partner.

G.    Value.

For purposes of the definition of Deemed Value of Partnership Interest, the Value on any date of the Series D Preferred Units shall be the Liquidation Preference of such Series D Preferred Unit.

H.    Voting Rights.

The holders of Series D Preferred Units shall have no voting rights whatsoever, except for any voting rights to which they may be entitled under the laws of the State of Delaware.

Attachment D-5

185

ATTACHMENT E

(SERIES E PREFERRED UNITS)

In accordance with Sections 4.2.A and 4.2.D of the Agreement, set forth below are the terms and conditions of the Series E Preferred Units hereby established that will be issued by the Partnership to Spieker on July 2, 2001, in connection with the merger of Spieker Properties, L.P. ("Spieker Partnership") with and into the Partnership (the "Spieker Partnership Merger"), in exchange for the then outstanding Series C Preferred Interest of Spieker Partnership (all of which will be acquired by the General Partner in the merger of Spieker Properties, Inc. with and into General Partner (the "REIT Merger") immediately following the Spieker Partnership Merger). All capitalized terms used in this Attachment E and not otherwise defined shall have the meanings assigned in the Agreement.

A.      Designation and Number. A series of Partnership Units, designated as Series E Cumulative Redeemable Preferred Units (the "Series E Preferred Units"), is hereby established. The number of Series E Preferred Units shall be 6,000,000.

B.      Rank. The Series E Preferred Units shall, with respect to distribution rights and rights upon voluntary or involuntary liquidation, dissolution or winding up of the Partnership, rank (a) senior to the Class A Units, Class B Units and all Partnership Interests ranking junior to the Series E Preferred Units; (b) on a parity with the Series A Preferred Units, the Series B Preferred Units, the Series C Preferred Units, Series D Preferred Units, Series F Preferred Units, and all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series E Preferred Units (each referred to as "Parity Preferred Units"); and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series E Preferred Units.

C.      Distributions.

(a)      Subject to the rights of series of Preferred Units which may from time to time come into existence, the holders of Series E Preferred Units shall be entitled to receive distributions, when, as and if required pursuant to the Agreement, of Available Cash, prior and in preference to any distribution with respect to Class A Units or Class B Units, at the rate of $1.96875 per Series E Preferred Unit per annum. Such distributions shall be cumulative from the last date on which any distributions were paid with respect to Series C Cumulative Redeemable Preferred Interest of Spieker Partnership for which Series E Preferred Units were exchanged in connection with the merger of Spieker Partnership with

186

and into the Partnership and shall be payable quarterly in arrears on the last
day of January, April, July and October or, if not a business day, the next
succeeding business day (each, a "Distribution Payment Date"). Any distribution
payable on Series E Preferred Units for any partial distribution period will be
computed on the basis of a 360-day year consisting of twelve 30-day months.
Distributions will be payable to Series E Preferred Unitholders at the close of
business on the Partnership Record Date, which shall be on such date designated
by the General Partner for the payment of distributions (each, a "Distribution
Record Date").

        (b)     Distributions on Series E Preferred Units will accrue
whether or not the Partnership has Available Cash, whether or not there are
funds legally available for the payment of such distributions and whether or not
such distributions are declared. No interest, or sum of money in lieu of
interest, shall be payable in respect of any distribution payment or payments on
Series E Preferred Units which may be in arrears. Holders of the Series E
Preferred Units will not be entitled to distributions in excess of the full
cumulative distributions as described above.

        (c)     If any Series E Preferred Units are outstanding, no
distributions shall be declared or paid or set apart for payment on any
Partnership Unit, as to distributions, on a parity with or junior to Series E
Preferred Units for any period unless full cumulative distributions have been or
contemporaneously are paid or declared and a sum sufficient for the payment
thereof set apart for such payments on Series E Preferred Units for all past
distribution periods and the then current distribution period. When
distributions are not paid in full (or a sum sufficient for such full payment is
not set apart) upon the Series E Preferred Units and the Partnership Units
ranking on parity as to distributions with Series E Preferred Units, all
distributions declared upon Series E Preferred Units and any other series of
Partnership Units parity as to distributions with Series E Preferred Units shall
be declared pro rata so that the amount of distributions declared per Series E
Preferred Units and such other Partnership Units shall in all cases bear to each
other the same ratio that accrued distributions per share on Series E Preferred
Units and such other Partnership Units bear to each other.

        (d)     Except as provided in Section 3(c), unless full
cumulative distributions on Series E Preferred Units have been or
contemporaneously are declared and paid or declared and a sum sufficient for the
payment thereof set apart for payment for all past distribution periods and the
then current distribution period, no distributions (other than in Class A Units
or other Partnership Units ranking junior to Series E Preferred Units as to
distributions and amounts upon liquidation) shall be declared or paid or set
aside for payment or other distribution shall be declared or made upon the Class
A Units, Class B Units, Series A Preferred Units, Series B Preferred Units,
Series C Preferred Units, Series D Preferred Units and Series F Preferred Units
or any other Partnership Units ranking junior to or on a parity with Series E
Preferred Units as to distributions or upon liquidation, nor shall any Class A
Units, Class B Units, Series A Preferred Units, Series B Preferred Units, Series
C Preferred Units, Series D Preferred Units and Series F Preferred

187

Units, or any other Partnership Units ranking junior to or on a parity with Series E Preferred Units as to distributions or amounts upon liquidation be redeemed by the Partnership (except by conversion into or exchange for other Partnership Units ranking junior to Series E Preferred Units as to distributions and amounts upon liquidation).

(e)     Any distribution payment made on Series E Preferred Units shall first be credited against the earliest accrued but unpaid distribution due with respect to Series E Preferred Units which remains payable.

F.     Allocations.

Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among the holders of Series E Preferred Units in accordance with Article VI of the Agreement.

G.     Liquidation Preference.

(a)     Subject to the rights of series of Preferred Units which may from time to time come into existence, upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, then, before any distribution or payment shall be made to the holders of any Class A Units, Class B Units, or any other class or series of Partnership ranking junior to Series E Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership, the holders of Series E Preferred Units shall be entitled to receive out of assets of the Partnership legally available for distribution to limited partners, liquidation distributions in the amount of the liquidation preference of $25.00 per share, plus an amount equal to all distributions accrued and unpaid thereon. After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series E Preferred Units will have no right or claim to any of the remaining assets of the Partnership. In the event that, upon any such voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the available assets of the Partnership are insufficient to pay the amount of the liquidation distributions on all outstanding Series E Preferred Units and the corresponding amounts payable on all Partnership Units ranking on a parity with Series E Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership ("Parity Units"), then the holders of Series E Preferred Units and Parity Units shall share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

(b)     For the purposes hereof, neither a consolidation or merger of the Partnership with or into any other partnership, limited liability company, corporation or any other entity, nor a merger of any other partnership, limited liability company, corporation or any other entity with or into the Partnership, nor a sale or transfer of all or any part of the Partnership assets for cash or securities shall be considered a liquidation, dissolution or winding up of the Partnership.

Attachment E-3

188

F.    Redemption

(a)    Series E Preferred Units are not redeemable prior to
October 10, 2002. On and after October 10, 2002, the General Partner may redeem
outstanding Series E Preferred Units, in whole or in part, at any time or from
time to time, for cash at a redemption price of $25.00 per unit, plus an amount
equal to all distributions accrued and unpaid thereon to the date fixed for
redemption, without interest. The redemption price of Series E Preferred Units
(other than the portion thereof consisting of accrued and unpaid distributions)
is payable solely out of proceeds (without giving effect to any temporary use of
such proceeds) from the contributions with respect to other Partnership Units,
which may include Class A Units, Class B Units, Preferred Units, or other
ownership interests in the Partnership however designated (other than debt
securities converted into or exchangeable for Partnership Units), and any
rights, warrants or options to purchase any thereof. If fewer than all of the
outstanding Series E Preferred Units are to be redeemed, the number of units to
be redeemed will be determined by the General Partner and such units may be
redeemed pro rata from the holders of such units in proportion to the number of
such units held by such holders (with adjustments to avoid redemption of
fractional units) or by lot in a manner determined by the General Partner.

(b)    Unless full cumulative distributions on all Series E
Preferred Units and Parity Units shall have been or contemporaneously are paid
or declared and a sum sufficient for the payment thereof set apart for payment
for all past distribution periods and the then current distribution period, no
Series E Preferred Units or Parity Units shall be redeemed unless all
outstanding Series E Preferred Units and Parity Units are simultaneously
redeemed; provided, however, that the foregoing shall not prevent the purchase
or acquisition of Series E Preferred Units or Parity Units pursuant to a
purchase or exchange offer made on the same terms to holders of all outstanding
Series E Preferred Units or Parity Units, as the case may be. Furthermore,
unless full cumulative distributions on all outstanding Series E Preferred Units
and Parity Units have been or contemporaneously are paid or declared and a sum
sufficient for the payment thereof set apart for payment for all past
distribution periods and the then current distribution period, the Partnership
shall not purchase or otherwise acquire directly or indirectly any Series E
Preferred Units or Parity Units (except by conversion into or exchange for
Partnership Units ranking junior to Series E Preferred Units and Parity Units as
to distributions and amounts upon liquidation).

(c)    The General Partner shall, in its sole discretion,
determine the form and content of a notice of redemption. If notice of
redemption of any Series E Preferred Units has been given and if the funds
necessary for such redemption have been set aside by the Partnership in trust
for the benefit of the holders of Series E Preferred Units so called for
redemption, then from and after the redemption date, distributions will cease to
accrue on such Series E Preferred Units, such Series E Preferred Units shall no
longer be deemed outstanding and all rights of the holders of such units will
terminate, except the right to receive the redemption price.

Attachment E-4

189

(d)      The holders of Series E Preferred Units at the close of business on a Distribution Record Date will be entitled to receive the distribution payable with respect to such Series E Preferred Units on the corresponding Distribution Payment Date notwithstanding the redemption thereof between such Distribution Record Date and the corresponding Distribution Payment Date or the Partnership's default in the payment of the distribution due. Except as provided above, the Partnership will make no payment or allowance for unpaid distributions, whether or not in arrears, on Series E Preferred Units which have been called for redemption.

F.      Status of Redeemed Series E Preferred Units.

In the event any Series E Preferred Units shall be redeemed pursuant hereto, the units so redeemed shall revert to the status of authorized but unissued Preferred Units available for future issuance and reclassification by the General Partner.

G.      Value.

For purposes of the definition of Deemed Value of Partnership Interest, the Value on any date of the Series E Preferred Units shall be the Liquidation Preference of such Series E Preferred Unit.

H.      Voting Rights.

The holders of Series E Preferred Units shall have no voting rights whatsoever, except for any voting rights to which they may be entitled under the laws of the State of Delaware.

Attachment E-5

190

ATTACHMENT F

(SERIES F PREFERRED UNITS)


In accordance with Sections 4.2.A and 4.2.D of the Agreement, set forth below are the terms and conditions of the Series F Preferred Units hereby established that will be issued by the Partnership to Spieker on July 2, 2001, in connection with the merger of Spieker Properties, L.P. ("Spieker Partnership") with and into the Partnership (the "Spieker Partnership Merger"), in exchange for the then outstanding Series E Preferred Interest of Spieker Partnership (all of which will be acquired by the General Partner in the merger of Spieker Properties, Inc. with and into General Partner (the "REIT Merger") immediately following the Spieker Partnership Merger). All capitalized terms used in this Attachment F and not otherwise defined shall have the meanings assigned in the Agreement.

A.      Designation and Number. A series of Partnership Units, designated as Series F Cumulative Redeemable Preferred Units (the "Series F Preferred Units"), is hereby established. The number of Series F Preferred Units shall be 4,000,000.

B.      Rank. The Series F Preferred Units shall, with respect to distribution rights and rights upon voluntary or involuntary liquidation, dissolution or winding up of the Partnership, rank (a) senior to the Class A Units, Class B Units and all Partnership Interests ranking junior to the Series F Preferred Units; (b) on a parity with the Series A Preferred Units, the Series B Preferred Units, the Series C Preferred Units, Series D Preferred Units, Series E Preferred Units, and all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank on a parity with the Series F Preferred Units (each referred to as "Parity Preferred Units"); and (c) junior to all Partnership Interests issued by the Partnership the terms of which specifically provide that such Partnership Interests rank senior to the Series F Preferred Units.

C.      Distributions.

(a)      Subject to the rights of series of Preferred Units which may from time to time come into existence, the holders of Series F Preferred Units shall be entitled to receive distributions, when, as and if required pursuant to the Agreement, of Available Cash, prior and in preference to any distribution with respect to Class A Units or Class B Units, at the rate of $2.00 per Series F Preferred Unit per annum. Such distributions shall be cumulative from the last date on which any distributions were paid with respect to Series E Cumulative Redeemable Preferred Interest of Spieker Partnership for which Series F Preferred Units were exchanged in connection with the merger of Spieker Partnership with and into the

191

Partnership and shall be payable quarterly in arrears on the last day of March, June, September, and December or, if not a business day, the next succeeding business day (each, a "Distribution Payment Date"). Any distribution payable on Series F Preferred Units for any partial distribution period will be computed on the basis of a 360-day year consisting of twelve 30-day months. Distributions will be payable to Series F Preferred Unitholders at the close of business on the Partnership Record Date, which shall be on such date designated by the General Partner for the payment of distributions (each, a "Distribution Record Date").

(b)     Distributions on Series F Preferred Units will accrue whether or not the Partnership has Available Cash, whether or not there are funds legally available for the payment of such distributions and whether or not such distributions are declared. No interest, or sum of money in lieu of interest, shall be payable in respect of any distribution payment or payments on Series F Preferred Units which may be in arrears. Holders of the Series F Preferred Units will not be entitled to distributions in excess of the full cumulative distributions as described above.

(c)     If any Series F Preferred Units are outstanding, no distributions shall be declared or paid or set apart for payment on any Partnership Unit, as to distributions, on a parity with or junior to Series F Preferred Units for any period unless full cumulative distributions have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for such payments on Series F Preferred Units for all past distribution periods and the then current distribution period. When distributions are not paid in full (or a sum sufficient for such full payment is not set apart) upon the Series F Preferred Units and the Partnership Units ranking on parity as to distributions with Series F Preferred Units, all distributions declared upon Series F Preferred Units and any other series of Partnership Units parity as to distributions with Series F Preferred Units shall be declared pro rata so that the amount of distributions declared per Series F Preferred Units and such other Partnership Units shall in all cases bear to each other the same ratio that accrued distributions per share on Series F Preferred Units and such other Partnership Units bear to each other.

(d)     Except as provided in Section 3(c), unless full cumulative distributions on Series F Preferred Units have been or contemporaneously are declared and paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, no distributions (other than in Class A Units or other Partnership Units ranking junior to Series F Preferred Units as to distributions and amounts upon liquidation) shall be declared or paid or set aside for payment or other distribution shall be declared or made upon the Class A Units, Class B Units, Series A Preferred Units, Series B Preferred Units, Series C Preferred Units, Series D Preferred Units and Series E Preferred Units or any other Partnership Units ranking junior to or on a parity with Series F Preferred Units as to distributions or upon liquidation, nor shall any Class A Units, Class B Units, Series A Preferred Units, Series B Preferred Units, Series C Preferred Units, Series D Preferred Units and Series E Preferred

Attachment F-2

192

Units, or any other Partnership Units ranking junior to or on a parity with Series F Preferred Units as to distributions or amounts upon liquidation be redeemed by the Partnership (except by conversion into or exchange for other Partnership Units ranking junior to Series F Preferred Units as to distributions and amounts upon liquidation).

(e)     Any distribution payment made on Series F Preferred Units shall first be credited against the earliest accrued but unpaid distribution due with respect to Series F Preferred Units which remains payable.

H.     Allocations.

Allocations of the Partnership's items of income, gain, loss and deduction shall be allocated among the holders of Series F Preferred Units in accordance with Article VI of the Agreement.

I.     Liquidation Preference.

(a)     Subject to the rights of series of Preferred Units which may from time to time come into existence, upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, then, before any distribution or payment shall be made to the holders of any Class A Units, Class B Units, or any other class or series of Partnership ranking junior to Series F Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership, the holders of Series F Preferred Units shall be entitled to receive out of assets of the Partnership legally available for distribution to limited partners, liquidation distributions in the amount of the liquidation preference of $25.00 per share, plus an amount equal to all distributions accrued and unpaid thereon. After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Series F Preferred Units will have no right or claim to any of the remaining assets of the Partnership. In the event that, upon any such voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Partnership, the available assets of the Partnership are insufficient to pay the amount of the liquidation distributions on all outstanding Series F Preferred Units and the corresponding amounts payable on all Partnership Units ranking on a parity with Series F Preferred Units in the distribution of assets upon any liquidation, dissolution or winding up of the affairs of the Partnership ("Parity Units"), then the holders of Series F Preferred Units and Parity Units shall share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

(b)     For the purposes hereof, neither a consolidation or merger of the Partnership with or into any other partnership, limited liability company, corporation or any other entity, nor a merger of any other partnership, limited liability company, corporation or any other entity with or into the Partnership, nor a sale or transfer of all or any part of the Partnership assets for cash or securities shall be considered a liquidation, dissolution or winding up of the Partnership.

Attachment F-3

193

F.    Redemption

(a)    Series F Preferred Units are not redeemable prior to June 4, 2003. On and after June 4, 2003, the General Partner may redeem outstanding Series F Preferred Units, in whole or in part, at any time or from time to time, for cash at a redemption price of $25.00 per unit, plus an amount equal to all distributions accrued and unpaid thereon to the date fixed for redemption, without interest. The redemption price of Series F Preferred Units (other than the portion thereof consisting of accrued and unpaid distributions) is payable solely out of proceeds (without giving effect to any temporary use of such proceeds) from the contributions with respect to other Partnership Units, which may include Class A Units, Class B Units, Preferred Units, or other ownership interests in the Partnership however designated (other than debt securities converted into or exchangeable for Partnership Units), and any rights, warrants or options to purchase any thereof. If fewer than all of the outstanding Series F Preferred Units are to be redeemed, the number of units to be redeemed will be determined by the General Partner and such units may be redeemed pro rata from the holders of such units in proportion to the number of such units held by such holders (with adjustments to avoid redemption of fractional units) or by lot in a manner determined by the General Partner.

(b)    Unless full cumulative distributions on all Series F Preferred Units and Parity Units shall have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, no Series F Preferred Units or Parity Units shall be redeemed unless all outstanding Series F Preferred Units and Parity Units are simultaneously redeemed; provided, however, that the foregoing shall not prevent the purchase or acquisition of Series F Preferred Units or Parity Units pursuant to a purchase or exchange offer made on the same terms to holders of all outstanding Series F Preferred Units or Parity Units, as the case may be. Furthermore, unless full cumulative distributions on all outstanding Series F Preferred Units and Parity Units have been or contemporaneously are paid or declared and a sum sufficient for the payment thereof set apart for payment for all past distribution periods and the then current distribution period, the Partnership shall not purchase or otherwise acquire directly or indirectly any Series F Preferred Units or Parity Units (except by conversion into or exchange for Partnership Units ranking junior to Series F Preferred Units and Parity Units as to distributions and amounts upon liquidation).

(c)    The General Partner shall, in its sole discretion, determine the form and content of a notice of redemption. If notice of redemption of any Series F Preferred Units has been given and if the funds necessary for such redemption have been set aside by the Partnership in trust for the benefit of the holders of Series F Preferred Units so called for redemption, then from and after the redemption date, distributions will cease to accrue on such Series F Preferred Units, such Series F Preferred Units shall no longer be deemed outstanding and all rights of the holders of such units will terminate, except the right to receive the redemption price.

Attachment F-4

194

       (d)      The holders of Series F Preferred Units at the close of business on a Distribution Record Date will be entitled to receive the distribution payable with respect to such Series F Preferred Units on the corresponding Distribution Payment Date notwithstanding the redemption thereof between such Distribution Record Date and the corresponding Distribution Payment Date or the Partnership's default in the payment of the distribution due. Except as provided above, the Partnership will make no payment or allowance for unpaid distributions, whether or not in arrears, on Series F Preferred Units which have been called for redemption.

       F.      Status of Redeemed Series F Preferred Units.

       In the event any Series F Preferred Units shall be redeemed pursuant hereto, the units so redeemed shall revert to the status of authorized but unissued Preferred Units available for future issuance and reclassification by the General Partner.

       G.      Value.

       For purposes of the definition of Deemed Value of Partnership Interest, the Value on any date of the Series F Preferred Units shall be the Liquidation Preference of such Series F Preferred Unit.

       H.      Voting Rights.

       The holders of Series F Preferred Units shall have no voting rights whatsoever, except for any voting rights to which they may be entitled under the laws of the State of Delaware.

Attachment F-5