Michael H. Steinberg (CSB 134179)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Christopher R. Edgar (CSB 229771)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

*Attorneys for Plaintiffs/Petitioners Joel Benoliel, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOEL BENOLIEL, GREGG R. DAUGHERTY, BRUCE E. HOSFORD and DONALD S. JEFFERSON, <br><br> Plaintiffs/Petitioners, <br><br> v. <br><br> BLACKHAWK PARENT LLC, a Delaware limited liability company, and EOP OPERATING LIMITED PARTNERSHIP, a Delaware limited partnership, <br><br> Defendants/Respondents. | Case No. C 07-03001 RMW <br><br> **FIRST AMENDED PETITION TO COMPEL ARBITRATION** <br><br> Date:    August 31, 2007 <br> Time:    9:00 a.m. <br> Judge:   Hon. Ronald M. Whyte |

Plaintiffs/Petitioners Joel Benoliel, Gregg R. Daugherty, Bruce E. Hosford and Donald S. Jefferson (collectively "Petitioners"), by their undersigned attorneys, allege as follows:

1. Petitioners bring this Petition to ensure that they are able to secure an "independent public accounting firm" to arbitrate a significant dispute with two affiliates of The Blackstone Group, L.P. ("Blackstone"), one of the largest financial and asset management firms in the world. Petitioners bring this Petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), to compel two Blackstone affiliates, Defendants/Respondents Blackhawk Parent LLC ("Blackhawk Parent") and EOP Operating Limited Partnership ("EOP") (collectively "Respondents"), to arbitrate as required by the Tax Protection Agreement (the "Protection Agreement") between the parties.

2. Petitioners are former limited partners of Spieker Properties, L.P. ("Spieker Properties"), a partnership that owned and managed office and industrial real estate on the West Coast. In July 2001, EOP acquired Spieker Properties for in excess of $7 billion. As a result, EOP acquired the properties formerly managed by Spieker Properties (the "Protected Properties"), and Petitioners became limited partners of EOP.

3. In the Protection Agreement, EOP agreed to indemnify Petitioners for certain tax obligations Petitioners incurred as a result of any sale or other disposition of the Protected Properties. If the parties disputed the extent of EOP's indemnity obligation, the parties agreed to select jointly a "nationally recognized independent public accounting firm" to arbitrate the dispute.

4. In February 2007, Blackhawk Acquisition, L.P. ("Blackhawk Acquisition"), an affiliate of Blackstone, merged into and with EOP, and Blackhawk Parent became EOP's general partner. As a result of the merger, Petitioners' limited partnership interests were converted into cash, causing Petitioners to incur various tax liabilities. Petitioners requested that EOP indemnify Petitioners for those liabilities pursuant to the Protection Agreement, but EOP refused.

5. Accordingly, to comply with the Protection Agreement's requirement that an "independent" accounting firm arbitrate the dispute, Petitioners asked that Respondents identify

any nationally recognized public accounting firms with which Blackstone, EOP's ultimate parent, did not have business relationships, so that the parties could jointly select an "independent" accounting firm, free of conflicts of interest.

6. Although Respondents acknowledge that they must arbitrate the dispute, Respondents refuse to provide any information about their relationships with accounting firms, or relationships that any of Respondents' partners or affiliates have with accounting firms. Instead, rather than identifying accounting firms free of conflicts, Respondents have advocated that one of the "Big Four" public accounting firms preside over the arbitration, have declined to identify any of the "Big Four" accounting firms' business relationships and connections with Respondents, and have advanced that the arbitration be held in New York City, despite the absence of any nexus between the Protection Agreement and New York. Respondents have declined to identify any of the Big Four accounting firms' business relationships with Blackstone.

7. It is entirely disingenuous, however, for Respondents to continue to advocate various accounting firms as arbitrators, without identifying the nature of their relationships to those firms, since an *independent* accounting firm is required. As Respondents well know, the "Big Four" accounting firms all have extensive relationships with EOP, and its parent, Blackstone. As just one example, Blackstone's recent Form S-1 filed with the United States Securities and Exchange Commission in connection with its initial public offering identifies Deloitte & Touche ("D&T") as its principal auditor, and D&T has performed work on all nine of Blackstone's going-private transactions over the past three years. D&T is also EOP's principal auditor. Nevertheless, Respondents have proposed D&T as one possible arbitrator. Respondents refuse to explain how the accounting firms that they regularly use could conceivably be considered "independent" given their relationships with Blackstone and EOP.

8. The FAA requires Respondents to arbitrate Petitioners' claims in accordance with the terms of the Protection Agreement. Accordingly, Petitioners respectfully request that the Court direct Respondents to (1) provide Petitioners with a list of the nationally recognized accounting firms that have provided services to Blackstone and its affiliates within the past three

years, and the nature of such arrangements and the fees paid; (2) conduct the arbitration using only an accounting firm that is "independent" of the parties within the meaning of the Protection Agreement; and (3) conduct the arbitration in this District. Petitioners have been ready to provide a corresponding list of accounting firms used by them if the Court issues the above-described order.

## THE PARTIES

9. Petitioner Joel Benoliel is a resident, domiciliary and citizen of Washington.

10. Petitioner Gregg R. Daugherty is a resident, domiciliary and citizen of Washington.

11. Petitioner Bruce E. Hosford is a resident, domiciliary and citizen of Washington.

12. Petitioner Donald S. Jefferson is a resident, domiciliary and citizen of Washington.

13. Respondent EOP is a Delaware limited partnership with its headquarters in Chicago, Illinois. EOP owns and manages office and industrial real estate.

14. Respondent Blackhawk Parent, a Delaware limited liability company with its headquarters in New York, New York, is EOP's general partner, and is an affiliate of Blackstone. Blackhawk Parent is the successor to Blackhawk Acquisition Trust, which acquired EOP Trust, EOP's former general partner. (*Id.*)

15. Certain persons and entities (the "Class H Unitholders") hold "Class H Partnership Units" in EOP. The holders of these purported partnership units lack voting rights regarding EOP's affairs. Petitioners do not have access to a complete list of all Class H Unitholders, as that information is not publicly available.

16. As made clear in Respondents' Memorandum of Points and Authorities in Opposition to Plaintiffs/Petitioners' Petition to Compel Arbitration, filed on July 20, 2007 ("Defendants' Memorandum"), no Class H Unitholders are citizens of Washington. Defendants' Memorandum alleged only that certain Class H Unitholders were citizens of California and Oregon, and did not state that any Class H Unitholders were citizens of Washington. Nor did Respondents' Memorandum assert that Blackhawk Parent's members were citizens of

1  Washington. Accordingly, Petitioners are informed and believe that neither Blackhawk Parent
2  nor EOP is a citizen of Washington.
3      17.   Blackhawk Parent's sole member is Blackstone Real Estate Partners V L.P.
4  ("Blackstone Real Estate Partners").
5      18.   Blackstone Real Estate Partners is a Delaware limited partnership with its
6  headquarters in New York, New York.
7      19.   Blackstone is a Delaware limited partnership with its headquarters in New York,
8  New York.

## JURISDICTION AND VENUE

10     20.   The Court has subject matter jurisdiction over this controversy under 28 U.S.C. §
11 1332 because Petitioners and Respondents are of diverse citizenship and the amount in
12 controversy, *i.e.*, the amount each Petitioner intends to seek in the arbitration of Petitioners'
13 claims for breach of the Protection Agreement, exceeds $75,000, exclusive of interest and costs.
14     21.   The Court has personal jurisdiction over Respondents with respect to this
15 controversy.
16     22.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because
17 Respondents are subject to personal jurisdiction, and therefore reside, in this District. Venue is
18 also proper pursuant to 28 U.S.C. § 1391(a)(2) because (1) a substantial part of the events and
19 omissions on which Petitioners' claims are based occurred in this District; and (2) a substantial
20 part of the property that is the subject of the action, *i.e.*, the Protected Properties, is located in
21 this District. Of the 90 Protected Properties, 48 are located in this District.

## FACTS

### The EOP/Spieker Merger

24     23.   Prior to July 2, 2001, Petitioners were limited partners of Spieker Properties, a
25 California limited partnership with its headquarters in Menlo Park, California. Spieker
26 Properties owned and operated office and industrial real estate located in California, Oregon and
27 Washington. Warren E. Spieker was the Chairman of the Board of Spieker Properties. (Decl. of
28 Warren E. Spieker, Jr. ("Spieker Decl.") ¶ 2.)

24. On July 2, 2001, Spieker Properties merged with and into EOP (the "EOP/Spieker Merger"). During the negotiations leading to the EOP/Spieker Merger, the parties to the merger held meetings regarding the merger in California and representatives of EOP extensively communicated via telephone, facsimile and e-mail with representatives of Spieker Properties who were situated in California. (*Id.* ¶ 3.)

25. Under the merger agreement governing the EOP/Spieker Merger, EOP acquired the properties previously held by Spieker Properties (including the Protected Properties), and Petitioners became limited partners of EOP. EOP issued each Petitioner a number of "Partnership Units" corresponding to the size of that Petitioner's former partnership interest in Spieker Properties. Because Spieker Properties' business was to own and operate commercial properties, each Partnership Unit constituted a share of the profits realized from the ownership and operation of Spieker Properties' real estate. (*Id.* ¶ 4.) As a result of the EOP/Spieker Merger, Mr. Spieker and the other former executives of Spieker Properties would no longer have any responsibility for the Protected Properties thereafter.

26. Because Petitioners would no longer be in a position to control the disposition of the properties now held by EOP (and, thus, no longer control the timing of any taxes due on sales of the properties), as a condition of the EOP/Spieker Merger, EOP agreed to indemnify Petitioners for certain tax obligations Petitioners might incur due to the sale or other disposition of the Protected Properties within a specified time period (the "Protected Period"). EOP and Spieker Properties memorialized this agreement in the Protection Agreement. The Protection Agreement refers to Petitioners as the "Sale Restriction Partners." (*Id.* Exh. A, at 2.)

27. In the Protection Agreement, EOP agreed, "for the benefit of each Sale Restriction Partner, for the term of the Protected Period applicable to such Sale Restriction Partner, not to directly or indirectly sell, exchange, or otherwise dispose of any Protected Property." (*Id.* Exh. A, ¶ 2(a).)

28. EOP further agreed that "[i]n the event that [EOP] . . . breaches its obligation set forth in Paragraph 2(a) . . . the Sale Restriction Partner's sole right shall be to receive from the Partnership as damages an amount equal to the aggregate federal, state and local income taxes . .

. incurred by the Sale Restriction Partner as a result of the gain allocated to such Sale Restriction Partner with respect to Protected Units by reason of such disposition . . . ." (*Id.* Exh. A, ¶ 2(c).)

29. The Protection Agreement provides that, in the event that EOP breaches Section 2(a), "the General Partner and the Sale Restriction Partner agree to negotiate in good faith to resolve any disagreements regarding any such breach or violation and the amount of damages, if any, payable to such Sale Restriction Partner under Paragraph 2(c). If any such disagreement cannot be resolved . . . within sixty (60) days after such breach, the General Partner and the Sale Restriction Partner shall jointly retain a nationally recognized independent public accounting firm . . . to act as an arbitrator to resolve as expeditiously as possible all points of any such disagreement . . . ." (*Id.* Exh. A, ¶ 2(d).)

**The EOP/Blackstone Merger**

30. On February 9, 2007, EOP and its general partner, Equity Office Properties Trust ("EOP Trust"), completed a merger (the "EOP/Blackstone Merger") with Blackhawk Acquisition; Blackhawk Acquisition Trust, a Maryland real estate investment trust ("Blackhawk Trust"); and Blackhawk Parent. (Spieker Decl. ¶ 6.) Blackhawk Acquisition, Blackhawk Trust and Blackhawk Parent are affiliates of Blackstone Real Estate Partners, which is an affiliate of Blackstone.

31. Pursuant to the merger agreement governing the EOP/Blackstone Merger, Blackhawk Acquisition merged with and into EOP, and EOP Trust merged with and into Blackhawk Trust. Blackhawk Trust was subsequently liquidated into Blackhawk Parent, and Blackhawk Parent became the general partner of EOP. (*Id.*)

32. As a result of the EOP/Blackstone Merger, Petitioners' Partnership Units — Petitioners' interests in the profits realized from the ownership and operation of the former Spieker Properties real estate — were converted into the right to receive $55.50 per unit in cash. (*Id.* ¶ 7.)

33. Because Petitioners were cashed out of their partnership interests in EOP, each Petitioner incurred tax liabilities substantially exceeding $75,000, exclusive of interest.

**Respondents' Refusal to Arbitrate as Provided in the Protection Agreement**

34. After learning that he would receive cash consideration for his Partnership Units and consequently incur tax liability, on January 23, 2007 Mr. Spieker wrote to Frank Cohen of Blackhawk Parent, advising Blackhawk Parent that Mr. Spieker's receipt of cash for his Partnership Units triggered EOP's obligation under the Protection Agreement to indemnify Mr. Spieker for his tax liability. (*Id.* Exh. B.)

35. On January 30, 2007, Mr. Cohen wrote to Mr. Spieker, asserting that, because "[b]oth immediately before and after the Partnership Merger, the properties subject to the Tax Protect Agreement will continue to be owned by EOP," EOP had no indemnity obligations to Mr. Spieker. (*Id.* Exh. C.)

36. On February 13, 2007, Mr. Spieker wrote to Mr. Cohen, requesting that Blackhawk Parent provide Mr. Spieker with sufficient information to allow Mr. Spieker to compute the damages resulting from EOP's breach of the Protection Agreement. (*Id.* Exh. D.)

37. Having received no response to his February 13 letter, Mr. Spieker again wrote to Mr. Cohen on March 12, 2007, reminding Blackhawk Parent of its obligation under Section 2(d) of the Protection Agreement to "negotiate in good faith" with Mr. Spieker regarding the damages resulting from EOP's breach. Mr. Spieker further requested that, to facilitate the parties' joint appointment of a "nationally recognized independent public accounting firm" as provided for in the Protection Agreement, Blackhawk Parent provide Mr. Spieker with a list of accounting firms that had provided services to Blackstone and its affiliates within the past five years. (*Id.* Exh. E.)

38. On March 15, 2007, Bruce D. Angiolillo, Esq., counsel for Respondents, wrote to Mr. Spieker, asserting that Mr. Spieker had failed to explain why he was entitled to indemnification under the Protection Agreement. (*Id.* Exh. F.)

39. On March 19, 2007, Michael H. Steinberg, counsel for Petitioners, wrote to Mr. Angiolillo, stating that Blackhawk Parent was required to provide the information requested by Mr. Spieker notwithstanding Blackhawk Parent's belief that Mr. Spieker was not entitled to indemnification, and reminding Blackhawk Parent of its obligation to inform Mr. Spieker of which nationally recognized public accounting firms had professional relationships with

Blackstone. Mr. Steinberg further advised Blackhawk Parent that the Petitioners other than Mr. Spieker joined in Mr. Spieker's request for information. (Decl. of Michael H. Steinberg ("Steinberg Decl.") Exh. A.)

40. On March 23, 2007, Mr. Angiolillo wrote to Mr. Steinberg, stating that Respondents were willing to discuss Petitioners' requests for information. (*Id.* Exh. B.)

41. On March 26, 2007, Mr. Steinberg wrote to Mr. Angiolillo, again seeking the tax information Mr. Spieker requested the previous month and reminding Respondents of their obligation to provide information regarding Blackstone's relationships with nationally recognized public accounting firms. (*Id.* Exh. C.)

42. On May 9, 2007, after further conversations between the parties, Mr. Steinberg wrote to Mr. Angiolillo, again requesting information regarding Petitioners' damages due to EOP's breach of the Protection Agreement, and information regarding Blackstone's relationships with nationally recognized public accounting firms. (*Id.* Exh. D.)

43. On May 10, 2007, Mr. Angiolillo wrote to Mr. Steinberg, advising Mr. Steinberg that Respondents would be "prepared early next week to exchange a list of nationally recognized independent public accounting firms." (*Id.* Exh. E.) Mr. Angiolillo also suggested that any hearings held in connection with any arbitration be held in New York City, despite the lack of any nexus between the Protection Agreement and New York.

44. On May 14, 2007, Mr. Steinberg wrote to Mr. Angiolillo, stating that Petitioners would be prepared the following week to exchange lists of accounting firms that were not conflicted with respect to the parties, and further inquiring about the basis for Respondents' view that New York was an appropriate locale for any arbitration hearings. (*Id.* Exh. F.)

45. On May 23, 2007, Paul C. Gluckow, Esq., counsel for Respondents, contacted Christopher R. Edgar, counsel for Petitioners, by phone. Mr. Gluckow advised Mr. Edgar that, in Respondents' view, the Protection Agreement's requirement that the parties jointly select an "independent" accounting firm did not require Respondents to inform Petitioners which accounting firms were free of conflicts with respect to Blackstone. Mr. Gluckow further stated that Respondents were amenable to using any of the "Big Four" nationally recognized public

1  accounting firms, *i.e.*, D&T, E&Y, KPMG and PricewaterhouseCoopers, to arbitrate Petitioners'
2  claims. Mr. Gluckow did not supply any reasoning for Respondents' suggestion that New York
3  was a proper locale.

4      46.    Upon information and belief, all of the "Big Four" accounting firms regularly
5  provide services to The Blackstone Group and its affiliates, including EOP and Blackhawk
6  Parent.

7      47.    On May 25, 2007, Mr. Edgar wrote to Mr. Gluckow, stating that the Protection
8  Agreement's requirement that the parties jointly select an "independent" accounting firm
9  required the parties to exchange information concerning accounting firms' conflicts with respect
10 to the parties. (*Id.* Exh. G.)

11     48.    On May 31, 2007, Mr. Gluckow wrote to Mr. Edgar, again proposing the "Big
12 Four" accounting firms as potential arbitrators, and declining to either provide information
13 regarding those firms' relationships to Respondents or explain Respondents' interpretation of the
14 Protection Agreement's requirement that the accounting firm presiding over the arbitration be
15 "independent." (*Id.* Exh. H.)

16     49.    Despite Petitioners' repeated requests, Respondents still have not provided
17 information regarding Blackstone's relationships to the nationally recognized public accounting
18 firms.

19 **RESPONDENTS' DUTY TO ARBITRATE UNDER THE PROTECTION AGREEMENT**

20     50.    Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of
21 another to arbitrate under a written agreement for arbitration may petition any United States
22 District Court . . . for an order directing that such arbitration proceed in the manner provided for
23 in such agreement." 9 U.S.C. § 4.

24     51.    If a party is willing to arbitrate a controversy, but refuses to do so according to the
25 terms of the written agreement requiring arbitration, the FAA authorizes the Court to order that
26 party to arbitrate in the specific manner required by the agreement.

27     52.    Although Respondents have expressed a willingness in principle to arbitrate
28 Petitioners' claims, Respondents have refused to conduct the arbitration according to the plain

terms of the Protection Agreement. Specifically, Respondents have failed to comply with their obligation under the Protection Agreement to participate in the joint selection of an "independent" accounting firm to preside over the arbitration.

53. As noted above, Section 2(d) of the Protection Agreement provides that, if the General Partner and any Sale Restriction Partner are unable to resolve a disagreement regarding EOP's indemnity obligations under Section 2(a), they "shall jointly retain a nationally recognized independent public accounting firm" to arbitrate the dispute.

54. Simply put, Respondents refuse to identify who is conflicted by virtue of their extensive relationships with independent accounting firms. Respondents insist that the Protection Agreement's requirement that the accounting firm arbitrating the dispute be "independent" does not mandate that the accounting firm be free of conflicts with respect to the parties, although Respondents refuse to explain how "independent" could possibly be interpreted not to impose such a requirement. In addition, Respondents advocate using accounting firms with extensive business relationships with EOP, EOP's general partner (Blackhawk Parent), and affiliates of EOP and Blackhawk Parent to arbitrate Petitioners' claims, in a transparent effort to bias the outcome of the arbitration in Respondents' favor.

55. As Petitioners advised Respondents, an accounting firm is generally referred to as "independent" if it complies with the standards for accounting firm independence prescribed by, *inter alia*, the rules of the Securities and Exchange Commission and the American Institute of Certified Public Accountants. An accounting firm cannot adjudicate the dispute between Petitioners and Respondents consistent with those standards if it has a close business relationship with Blackstone.

56. Because Respondents refuse to abide by the Protection Agreement's requirement that the accounting firm arbitrating the dispute be "independent," Respondents have refused to conduct the arbitration according to the plain terms of the Protection Agreement.

57. Further, Respondents have claimed that it would be appropriate to arbitrate this dispute in New York, New York, despite the lack of any nexus between EOP, the Petitioners and that proposed locale. Plainly, any arbitration relating to the Protection Agreement should be

heard in California, particularly given the nexus between California, on the one hand, and Spieker Properties, the location of the Protected Properties, and the Protection Agreement, on the other.

### PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully seek an order:

(a) Directing Respondents to provide Petitioners with a list of the nationally recognized accounting firms that have provided services to Blackstone and its affiliates within the past three years, including the nature of the work performed and the amount in fees and other expenses paid;

(b) Directing Respondents to conduct the arbitration concerning EOP's indemnity obligation under the Protection Agreement using only an accounting firm that is "independent" of the parties within the meaning of the Protection Agreement;

(c) Directing Respondents to have any hearings in connection with the arbitration held in this District; and

(d) Granting Petitioners any other relief that the Court deems just and proper.

Dated: July 27, 2007
Palo Alto, California

Respectfully submitted,

_____
Michael H. Steinberg (CSB 134179)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

Christopher R. Edgar (CSB 229771)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303-3308
Telephone:  (650) 461-5600
Facsimile:  (650) 461-5700

*Attorneys for Plaintiffs/Petitioners Joel Benoliel, et al.*

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Warren E. Spieker, Jr., Spieker Partners LP, Dennis E. Singleton, John K. French, Bruce E. Hosford, Bradley Blake, the Blake Family Trust, Gregg R. Daugherty, John G. Davenport, James C. Eddy, John A. Foster, Donald S. Jefferson, Vincent D. Mulroy, Richard L. Romney, Jill T. Schnugg, Peter H. Schnugg, John B. Souther, Jr., Craig G. Vought, Joel Benoliel, The Blackstone Group, L.P., Blackhawk Acquisition, L.P., Blackhawk Acquisition Trust, Blackhawk Parent LLC, and EOP Operating Limited Partnership.

Dated: July 27, 2007

By: _____
Michael H. Steinberg (CSB 134179)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

Christopher R. Edgar (CSB 229771)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303-3308
Telephone:  (650) 461-5600
Facsimile:  (650) 461-5700

*Attorneys for Plaintiffs/Petitioners Joel Benoliel, et al.*