Michael H. Steinberg (CSB 134179)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

Christopher R. Edgar (CSB 229771)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone:    (650) 461-5600
Facsimile:    (650) 461-5700

*Attorneys for Plaintiffs/Petitioners Joel Benoliel, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOEL BENOLIEL, GREGG R. DAUGHERTY, BRUCE E. HOSFORD and DONALD S. JEFFERSON,<br><br>Plaintiffs/Petitioners,<br><br>v.<br><br>BLACKHAWK PARENT LLC, a Delaware limited liability company, and EOP OPERATING LIMITED PARTNERSHIP, a Delaware limited partnership,<br><br>Defendants/Respondents. | Case No. C 07-03001 RMW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FIRST AMENDED PETITION TO COMPEL ARBITRATION**<br><br>Date:    August 31, 2007<br>Time:    9:00 a.m.<br>Judge:   Hon. Ronald M. Whyte |

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

FACTS ............................................................................................................................................3

    A.    THE EOP/BLACKSTONE MERGER.....................................................................3

    B.    RESPONDENTS' REFUSAL TO ARBITRATE AS PROVIDED IN THE PROTECTION AGREEMENT ............................................................................5

ARGUMENT ..................................................................................................................................7

    I.    AN ACCOUNTING FIRM CANNOT BE "INDEPENDENT" IF IT HAS AN ONGOING OR RECENT BUSINESS RELATIONSHIP WITH BLACKSTONE, EOP OR BLACKHAWK PARENT.....................................................................................8

    II.    THE FAA REQUIRES THAT THE ARBITRATION BE CONDUCTED IN CALIFORNIA ..................................................................................................................9

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

Page

### CASES

*AHS N.M. Holdings, Inc.* v. *Healthsource, Inc.*,
   No. 2120-N, 2007 Del.Ch. LEXIS 24 (Del. Ch. Feb. 2, 2007)..................9

*Bauhini Corp.* v. *China Nat'l. Mach. & Equip. Import & Export Corp.*,
   819 F.2d 247 (9th Cir. 1987) ..................2

*Bear, Stearns & Co.* v. *Bennett*,
   938 F.2d 31 (2d Cir. 1991)..................7

*Ceriale* v. *Amco Insurance Co.*,
   48 Cal. App. 4th 500 (1996) ..................2

*In re Cintas Corp. Overtime Pay Arb. Litigation*,
   No. 06-1781, 2007 U.S. Dist. LEXIS 5479 (N.D. Cal. Jan. 10, 2007)..................7

*Ferriso* v. *NLRB*,
   125 F.3d 865 (D.C. Cir. 1997)..................8

*Fireman's Fund Ins. Co.* v. *Sorema N. Am. Reins. Co.*,
   No. 94-3617, 1995 U.S. Dist. LEXIS 22236 (N.D. Cal. Jan. 11, 1995)..................2, 7

*Homestake Lead Co.* v. *Doe Run Resources Corp.*,
   282 F. Supp. 2d 1131 (N.D. Cal. 2003)..................10

*Larson* v. *Speetjens*,
   No. 05-3176, 2006 U.S. Dist. LEXIS 87481 (N.D. Cal. Nov. 20, 2006) ..................10

*Rossco Holdings, Inc.* v. *Bank of Am.*,
   149 Cal. App. 4th 1353 (2007) ..................2

*Schmitz* v. *Zilveti*,
   20 F.3d 1043 (9th Cir. 1986) ..................9

*Sterling Fin. Inv. Group, Inc.* v. *Hammer*,
   393 F.3d 1223 (11th Cir. 2004) ..................7

*Textile Unlimited* v. *A..bmhand Co.*,
   240 F.3d 781 (9th Cir. 2001) ..................10

*Westmoreland Capital Corp.* v. *Findlay*,
   100 F.3d 263 (2d Cir. 1996)..................7

*Yardis Corp.* v. *Silver*,
   No. 88-7211, 2000 U.S. Dist. LEXIS 17195 (E.D. Pa. Nov. 30, 2000) ..................7

## STATUTES

9 U.S.C. § 4 ................................................................................................................................7

17 C.F.R. § 210.2-01 ..................................................................................................................9

28 U.S.C. § 1332 .........................................................................................................................7

Plaintiffs/Petitioners Joel Benoliel, Gregg R. Daugherty, Bruce E. Hosford and Donald S. Jefferson (collectively "Petitioners") respectfully submit this Memorandum of Points and Authorities in support of their First Amended Petition to Compel Arbitration.

## **INTRODUCTION**

Petitioners seek to ensure that they are able to secure an "*independent* public accounting firm" to arbitrate a significant dispute with two affiliates of The Blackstone Group L.P. ("Blackstone"), one of the largest financial and asset management firms in the world. Petitioners bring this Petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), to compel two Blackstone affiliates, Defendants/Respondents Blackhawk Parent LLC ("Blackhawk Parent") and EOP Operating Limited Partnership ("EOP") (collectively "Respondents" or "Blackstone"), to arbitrate as required by the Tax Protection Agreement (the "Protection Agreement") between the parties by engaging an independent public accounting firm, rather than one with extensive relationships with Blackstone and its affiliates.

Petitioners are former limited partners of Spieker Properties, L.P. ("Spieker Properties"), a partnership that owned and managed office and industrial real estate on the West Coast. In July 2001, EOP acquired Spieker Properties for in excess of $7 billion. As a result, EOP acquired the properties formerly managed by Spieker Properties (the "Protected Properties"), 48 of which are located in this District, and Petitioners became limited partners of EOP.

In the Protection Agreement, EOP agreed to indemnify Petitioners for certain tax obligations Petitioners incurred as a result of any sale or other disposition of the Protected Properties. The Protection Agreement further provides that, in the event of a dispute over EOP's indemnity obligations, the parties must "negotiate in good faith" over a potential resolution of Petitioners' claims. If the parties do not arrive at a resolution of the claims, the parties must jointly select a "nationally recognized independent public accounting firm" to arbitrate the dispute.

In a highly publicized transaction that closed in February 2007, Blackhawk Acquisition, L.P. ("Blackhawk Acquisition"), an affiliate of Blackstone, merged into EOP. Also,

1  as a consequence of that transaction, Blackhawk Parent became EOP's general partner. As a
2  result of the merger, Petitioners' limited partnership interests were converted into cash, causing
3  Petitioners to incur various tax liabilities. Petitioners requested that EOP indemnify Petitioners
4  for those liabilities pursuant to the Protection Agreement, but EOP and Blackhawk Parent have
5  refused.

6  Accordingly, to comply with the Protection Agreement's requirement that an
7  "independent" accounting firm arbitrate the dispute, Petitioners asked that Respondents identify
8  any nationally recognized public accounting firms with which Blackstone (EOP's parent), EOP
9  and Blackhawk Parent did not have business relationships so that the parties could jointly select
10 an "independent" accounting firm, free of conflicts of interest.

11 But Blackstone does not want this dispute decided on its merits. Instead,
12 Blackstone intends to use its significant relationships with accounting firms to make it very
13 difficult for Respondents to have a fair hearing on the merits using an impartial arbitrator. *See,*
14 *e.g., Rossco Holdings, Inc. v. Bank of Am.,* 149 Cal. App. 4th 1353, 1367 (2007) (disqualification
15 of arbitrator appropriate if "[a] person aware of the facts might reasonably entertain a doubt that
16 the [arbitrators] would be able to be impartial"); *Ceriale v. Amco Ins. Co.,* 48 Cal. App. 4th 500,
17 506 (1996) (holding that disqualification of arbitrator appropriate if "a person aware of the facts
18 might reasonably entertain a doubt that the [arbitrator] would be able to be impartial," and stating
19 that "business dealings can create the impression of possible bias").

20 Thus, while Respondents acknowledge that they must arbitrate the dispute,
21 Respondents continue to refuse to provide any information about their relationships with
22 accounting firms, or relationships that any of Respondents' partners or affiliates have with
23 accounting firms. Instead, rather than identifying accounting firms free of conflicts with respect
24 to them, Respondents have advocated that one of the "Big Four" public accounting firms preside
25 over the arbitration.

26 The "Big Four" accounting firms, however, all have extensive relationships with
27 EOP, and its ultimate parent, Blackstone. As just one example, Blackstone's recent Form S-1
28 filed with the United States Securities and Exchange Commission in connection with a possible

IPO identifies Deloitte & Touche ("D&T") as its principal auditor, and D&T has performed services for Blackstone in all nine of the going-private transactions undertaken by Blackstone in the past three years. Further, D&T is EOP's principal auditor. Nevertheless, Respondents have proposed D&T as one possible "independent" public accounting firm. Respondents refuse to explain how the firms they seek to use to arbitrate the dispute can conceivably be considered "independent" notwithstanding those firms' relationships with Blackstone and EOP, and refuse to identify the nature of those firms' relationships with Respondents. Moreover, Respondents advocate conducting the arbitration in New York City, despite the absence of any nexus between the Protection Agreement and New York.

The FAA requires Respondents to arbitrate Petitioners' claims in accordance with *all* of the terms of the Protection Agreement — not simply those terms with which Respondents prefer to comply. Petitioners accordingly request that the Court direct Respondents to (1) provide Petitioners with a list of the nationally recognized accounting firms that have provided services to Blackstone and its affiliates within the past three years; (2) conduct the arbitration using only an accounting firm that is "independent" of the parties within the meaning of the Protection Agreement; and (3) conduct the arbitration in this District. *See, e.g., Fireman's Fund Ins. Co. v. Sorema N. Am. Reins. Co.*, No. 94-3617, 1995 U.S. Dist. LEXIS 22236, *8 (N.D. Cal. Jan. 11, 1995) (requiring disclosures by proposed arbitrators under Section 4 because "the court has jurisdiction to regulate disclosures by proposed arbitrators based on its ability to enforce the terms of the agreement").

## FACTS

### A. THE EOP/BLACKSTONE MERGER

Before July 2, 2001, Petitioners were limited partners of Spieker Properties, a California limited partnership with its headquarters in Menlo Park, California. Spieker Properties' business was to manage the Protected Properties, which are located in California, Oregon and Washington. As of July 2, 2001, Spieker Properties merged into EOP (the "EOP/Spieker Merger"). During the negotiations leading to the EOP/Spieker Merger, the parties to the merger held meetings relating to the merger in California and representatives of EOP

extensively communicated via telephone, facsimile and e-mail with representatives of Spieker Properties who were situated in California. (Decl. of Warren E. Spieker, Jr. ("Spieker Decl.") ¶¶ 2, 3.)

Under the merger agreement governing the EOP/Spieker Merger, EOP acquired the properties previously held by Spieker Properties, and Petitioners became limited partners of EOP. EOP issued each Petitioner a number of "Partnership Units" corresponding to the size of that Petitioner's former interest in Spieker Properties. Because Spieker Properties' business was to own and operate commercial properties, each Partnership Unit constituted a share of the profits realized from the ownership and operation of Spieker Properties' real estate. (*Id.* ¶ 4.)

As a condition of the EOP/Spieker Merger, in the Protection Agreement, EOP agreed, "for the benefit of each Sale Restriction Partner, . . . not to directly or indirectly sell, exchange, or otherwise dispose of any Protected Property." (*Id.* Exh. A, ¶ 2(a).) EOP further agreed that, if EOP breached that obligation, EOP would be required to indemnify Petitioners for any taxes they incurred as a result of the disposition of the Protected Properties. (*Id.* Exh. A, ¶ 2(c).) Finally, the parties agreed that a "nationally recognized independent public accounting firm" would resolve any dispute between the parties over EOP's indemnity obligations:

> If any such disagreement cannot be resolved by the General Partner and such Sale Restriction Partner[1] within sixty (60) days after such breach, the General Partner and the Sale Restriction Partner shall jointly retain a nationally recognized independent public accounting firm . . . to act as an arbitrator to resolve as expeditiously as possible all points of any such disagreement . . . .

(*Id.* Exh. A, ¶ 2(d).)

On February 9, 2007, EOP and related entities completed a merger (the "EOP/Blackstone Merger") with certain affiliates of Blackstone. (*Id.* ¶ 6.) As a result of the merger, Petitioners' Partnership Units were converted into the right to receive $55.50 per unit in cash. (*Id.* ¶ 7.) Because Petitioners were cashed out of their partnership interests in EOP, each Petitioner incurred substantial tax liabilities. (*Id.*)

---

[1] "Sale Restriction Partners" refers to Petitioners. (*Id.* Exh. A, at 2.)

### B. RESPONDENTS' REFUSAL TO ARBITRATE AS PROVIDED IN THE PROTECTION AGREEMENT

After learning that he would receive cash consideration for his Partnership Units and consequently incur tax liability, on January 23, 2007 Warren E. Spieker, Jr. — the former CEO of Spieker Partners — wrote to Frank Cohen of Respondent Blackhawk Parent LLC ("Blackhawk Parent"), EOP's general partner, advising Blackhawk Parent that Mr. Spieker's receipt of cash for his Partnership Units triggered EOP's obligation under the Protection Agreement to indemnify Mr. Spieker for his tax liability. (*Id.* Exh. B.) On January 30, 2007, Mr. Cohen wrote to Mr. Spieker, denying any indemnity obligations to Mr. Spieker. (*Id.* Exh. C.)

On February 13, 2007, Mr. Spieker wrote to Mr. Cohen, requesting that Blackhawk Parent provide Mr. Spieker with sufficient information to allow Mr. Spieker to compute the damages resulting from EOP's breach of the Protection Agreement. (*Id.* Exh. D.) Having received no response to his February 13 letter, Mr. Spieker again wrote to Mr. Cohen on March 12, 2007, requesting that, to facilitate the parties' joint appointment of a "nationally recognized independent public accounting firm" as provided for in the Protection Agreement, Blackhawk Parent provide Mr. Spieker with a list of accounting firms that had provided services to Blackstone and its affiliates within the past five years. (*Id.* Exh. E.)

On March 15, 2007, Bruce D. Angiolillo, Esq., counsel for EOP, wrote to Mr. Spieker, asserting that Mr. Spieker had failed to explain why Mr. Spieker was entitled to indemnification. (*Id.* Exh. F.) On March 19, 2007, Michael H. Steinberg, counsel for Petitioners, wrote to Mr. Angiolillo, reminding Blackhawk Parent of its obligation to inform Mr. Spieker of which nationally recognized public accounting firms had business relationships with Blackstone. (Decl. of Michael H. Steinberg ("Steinberg Decl.") Exh. A.)

On March 23, 2007, Mr. Angiolillo wrote to Mr. Steinberg, stating that Respondents were willing to discuss Petitioners' requests for information. (*Id.* Exh. B.) On May 9, 2007, after further conversations between the parties, Mr. Steinberg wrote to Mr. Angiolillo,

1  again requesting information regarding Blackstone's relationships with nationally recognized
2  public accounting firms. (*Id.* Exh. D.)
3          On May 10, 2007, Mr. Angiolillo wrote to Mr. Steinberg, advising Mr. Steinberg
4  that Respondents would be "prepared early next week to exchange a list of nationally recognized
5  independent public accounting firms." Mr. Angiolillo also suggested that any hearings in
6  connection with any arbitration be held in New York City, despite the lack of any nexus between
7  the Protection Agreement and New York. (*Id.* Exh. E.) On May 14, 2007, Mr. Steinberg wrote
8  to Mr. Angiolillo, stating that Petitioners would be prepared the following week to exchange lists
9  of accounting firms that were not conflicted with respect to the parties, and further inquiring
10 about the basis for Respondents' view that New York was an appropriate locale for any
11 arbitration hearings. (*Id.* Exh. F.)
12         On May 23, 2007, Paul C. Gluckow, Esq., counsel for Respondents, contacted
13 Christopher R. Edgar, counsel for Petitioners, by phone. Mr. Gluckow advised Mr. Edgar that,
14 in Respondents' view, the Protection Agreement's requirement that the parties jointly select an
15 "independent" accounting firm did not require Respondents to tell Petitioners which accounting
16 firms were free of conflicts with respect to Blackstone. Mr. Gluckow further stated that
17 Respondents were amenable to using any of the "Big Four" nationally recognized public
18 accounting firms, *i.e.*, Deloitte Touche Tohmatsu, Ernst & Young, KPMG and
19 PricewaterhouseCoopers, to arbitrate Petitioners' claims. To Petitioners' knowledge, all of the
20 "Big Four" accounting firms regularly provide services to Blackstone and its affiliates, including
21 EOP. (Pet. to Compel Arb. ("Petition") ¶ 46.) Mr. Gluckow did not supply any reasoning for
22 Respondents' suggestion that New York was a proper locale.
23         On May 25, 2007, Mr. Edgar wrote to Mr. Gluckow, stating that the Protection
24 Agreement's requirement that the parties jointly select an "independent" accounting firm
25 required the parties to exchange information concerning accounting firms' conflicts with respect
26 to the parties. (Steinberg Decl. Exh. G.) On May 31, 2007, Mr. Gluckow wrote to Mr. Edgar,
27 again proposing the "Big Four" accounting firms as potential arbitrators, and declining to either
28

provide information regarding those firms' relationships to Respondents or explain Respondents' interpretation of the Protection Agreement's "independence" requirement. (*Id.* Exh. H.)

## ARGUMENT

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.[2]

Although Respondents claim to be willing to arbitrate this matter, they refuse to do so according to the Protection Agreement's terms. Accordingly, the FAA authorizes the Court to order Respondents to arbitrate in the specific manner required by the Protection Agreement. *See In re Cintas Corp. Overtime Pay Arb. Litig.*, No. 06-1781, 2007 U.S. Dist. LEXIS 5479, *39, 43 (N.D. Cal. Jan. 10, 2007) (compelling respondents to arbitrate in specific forum chosen in agreement, despite their agreement in principle to arbitrate, because "[i]f the written agreement contains a place-of-arbitration clause, then logically, a party's attempt to arbitrate elsewhere is a refusal to arbitrate under the agreement"); *Yardis Corp. v. Silver*, No. 88-7211, 2000 U.S. Dist. LEXIS 17195, *1-2 (E.D. Pa. Nov. 30, 2000) (granting "motion to compel arbitration in view of defendants' failure to honor [their] commitment to the appointment of an independent accountant to effectuate the parties' agreement by which initial arbitration proceedings were terminated"); *Fireman's Fund Ins. Co.*, 1995 U.S. Dist. LEXIS 22236, *8 (requiring disclosures by proposed arbitrators under Section 4 because "the court has jurisdiction to regulate disclosures by proposed arbitrators based on its ability to enforce the terms of the agreement"); *see also Sterling Fin. Inv. Group, Inc. v. Hammer*, 393 F.3d 1223, 1226 (11th Cir. 2004) ("The district court properly exercised its jurisdiction pursuant to section 4 of the Federal Arbitration Act in staying arbitration in Houston, Texas and compelling arbitration in Boca Raton, Florida."); *Bear, Stearns & Co. v. Bennett*, 938 F.2d 31, 32 (2d Cir. 1991) (directing

---

[2] While the FAA does not provide this Court with jurisdiction (*see Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 267-68 (2d Cir. 1996)), in this case, 28 U.S.C. § 1332 provides a jurisdictional basis for this Court to adjudicate the instant dispute. (*See* Petition ¶ 24.)

arbitration in contractually required forum because "[w]here there is a valid agreement for arbitration, Congress has directed the district courts to order that arbitration proceed 'in accordance with the terms of the agreement'").

## I. AN ACCOUNTING FIRM CANNOT BE "INDEPENDENT" IF IT HAS AN ONGOING OR RECENT BUSINESS RELATIONSHIP WITH BLACKSTONE, EOP OR BLACKHAWK PARENT

As noted above, Section 2(d) of the Protection Agreement provides that, if the General Partner and any Sale Restriction Partner are unable to resolve a disagreement regarding EOP's indemnity obligations under Section 2(a), they "shall jointly retain a nationally recognized *independent* public accounting firm" to arbitrate the dispute. (Spieker Decl. Exh. A, ¶ 2(d) (emphasis added).) Nonetheless, Respondents insist that the Protection Agreement's requirement that the accounting firm arbitrating the dispute be "independent" does not mandate that the accounting firm be free of conflicts with respect to the parties, although Respondents refuse to explain how "independent" could possibly be interpreted not to impose such a requirement. (Steinberg Decl. Exh. H.) Moreover, Respondents advocate using accounting firms with extensive business relationships with EOP, EOP's general partner (Blackhawk Parent), and affiliates of EOP and Blackhawk Parent to arbitrate Petitioners' claims, in a transparent effort to bias the outcome of the arbitration in Respondents' favor. According to Respondents, "independent" means solely that the accounting firm must not be a "captive" to any specific company (*e.g.*, the limitation is only that the parties may not select the accounting department of Apple Inc.).

Blackstone's view is profoundly wrong, and flies in the face of common sense and the intent of the parties. An accounting firm is generally referred to as "independent" if it complies with the standards for accounting firm independence prescribed by, *inter alia*, the rules of the United States Securities and Exchange Commission ("SEC") and the American Institute of Certified Public Accountants ("AICPA"). *See Ferriso v. NLRB*, 125 F.3d 865, 871 (D.C. Cir. 1997) (term "independent audit" must be interpreted "by reference to the accepted norms of the accounting profession in analyzing the expertise and independence of the auditors," including SEC and AICPA rules). These well-known rules *require* an accounting firm to be free of

obligations to and interests in its client in both appearance and reality. *See* 17 C.F.R. § 210.2-01 ("An accountant is not independent if, at any point during the audit and professional engagement period, the accounting firm . . . has any direct or material indirect business relationship with an audit client . . . ."); *see also AHS N.M. Holdings, Inc.* v. *Healthsource, Inc.*, No. 2120-N, 2007 Del. Ch. LEXIS 24, *9 (Del. Ch. Feb. 2, 2007) (agreement providing that "independent accountant" would arbitrate disputes defined term to mean "Deloitte & Touche LLP . . . , unless the firm had been engaged by either party in the preceding three years"); BLACK'S LAW DICTIONARY, at 126 (7th ed. 1999) (defining "independent audit" as "[a]n audit conducted by an outside person or firm not connected with the person or organization being audited").

Nor can Respondents argue that Blackstone's contacts and relationships are irrelevant. *See* 17 C.F.R. § 210.2-01(f)(6) ("Audit client" includes "any affiliates of the audit client"); AM. INST. OF CERTIFIED PUB. ACCOUNTANTS, CODIFICATION OF STMTS. ON AUDITING STDS., STMT. ON AUDITING STDS. NO. 1, § 220 at 31 (1995) ("[T]o be recognized as independent, [the auditor] must be free from any obligation to or interest in the client, *its management, or its owners* . . . . Independent auditors should not only be independent in fact; they should avoid situations that might lead outsiders to doubt their independence.") (emphasis added); *Ferriso*, 125 F.3d at 872 (Section 210.2 "bars an accountant from auditing a firm or its affiliates if that firm has employed him or anyone else from his office during the period covered by his report").

It is critical that Petitioners receive information regarding Respondents' relationships with the accounting firms Respondents propose to ensure that the arbitrator deciding the dispute is impartial. *See, e.g., Schmitz* v. *Zilveti*, 20 F.3d 1043, 1048 (9th Cir. 1986) ("[I]t is far better that the relationship [between a proposed arbitrator and the parties] be disclosed at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship . . . .").

## II. THE FAA REQUIRES THAT THE ARBITRATION BE CONDUCTED IN CALIFORNIA

Because Petitioners filed their Petition in this District, the FAA requires that the arbitration take place here. *See* 9 U.S.C. § 4 (arbitration "hearing and proceedings . . . shall be

within the district in which the petition for an order directing such arbitration is filed"); *Textile Unlimited v. A..bmhand Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (FAA Section 4 "confines the arbitration to the district in which the petition to compel is filed"); *Bauhini Corp. v. China Nat'l. Mach. & Equip. Import & Export Corp.*, 819 F.2d 247, 250 (9th Cir. 1987) ("Under [the FAA], the arbitration proceedings 'shall be within the district in which the petition for an order directing such arbitration is filed' . . . . Therefore, under the statutory regime, the only place that the district court could order arbitration is the Eastern District of California.").[3]

Moreover, conducting the arbitration in California is the most fair and practical alternative, as California — not New York — has the most significant nexus to the facts of this dispute. The Spieker Merger was negotiated and implemented in California. (Spieker Decl. ¶ 3.) Spieker Properties, the entity initially responsible for managing the Protected Properties, was headquartered in California. (*Id.* ¶ 2.) Many of the former Spieker partners, and the Protected Properties, are located in California. (*Id.*) Accordingly, Respondents should be directed to conduct any hearings relating to the arbitration in California. *See Homestake Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1144 (N.D. Cal. 2003) (ordering arbitration to occur in District where petition to compel arbitration brought because, *inter alia*, "no compelling reasons justify denying arbitration because of the forum clause").

## CONCLUSION

Petitioners respectfully request that the Court direct Respondents to (1) provide Petitioners with a list of the nationally recognized accounting firms that have provided services to Blackstone and its affiliates within the past three years; (2) conduct the arbitration using only an accounting firm that is "independent" of the parties within the meaning of the Protection Agreement; and (3) conduct the arbitration in this District. Petitioners have been ready to

---

[3]  The FAA would require the arbitration hearing to occur in this District even if the parties had agreed on a forum for the arbitration, which in this case they did not do. *See Larson v. Speetjens*, No. 05-3176, 2006 U.S. Dist. LEXIS 87481, *5 (N.D. Cal. Nov. 20, 2006) (because "[t]he Ninth Circuit has interpreted section 4 of the Federal Arbitration Act (FAA) as limiting courts to ordering arbitration within the district in which the suit was filed," arbitration required to occur in this District despite forum selection clause).

1 | provide a corresponding list of accounting firms used by them if the Court issues the above-
2 | described order.

3 | Dated: July 27, 2007
    Palo Alto, California

Respectfully submitted,

_____
Michael H. Steinberg (CSB 134179)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Christopher R. Edgar (CSB 229771)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

*Attorneys for Plaintiffs/Petitioners Joel Benoliel, et al.*