# EXHIBIT A

## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-310-712-6600
FACSIMILE: 1-310-712-8800
WWW.SULLCROM.COM

*1888 Century Park East*
*Los Angeles, California 90067-1725*

NEW YORK • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 19, 2007

*By Facsimile*

Bruce D. Angiolillo, Esq.,
   Simpson Thacher & Bartlett LLP,
      425 Lexington Avenue,
         New York, NY 10017-3954.

      Re:   <u>Tax Protection Agreement</u>

Dear Mr. Angiolillo:

      Ned Spieker has forwarded on to me your letter of March 15, 2007, and has asked that we respond on his behalf. That letter is disappointing in multiple respects:

      *First*, notwithstanding written requests from Mr. Spieker that are now over a month old, and the earlier excuse from your colleague that no response was forthcoming previously because Mr. Spieker's letter of February 13th could not be located at either Blackhawk Parent LLC, EOP (collectively, "EOP") or your firm, your correspondence makes clear that EOP has no intention of providing Mr. Spieker the information to which he is contractually entitled. Contrary to your apparent suggestion, it is not up to EOP to decide whether there is breach and therefore, whether to provide the information requested by Mr. Spieker. The question of breach is to be decided by the independent account firm, not EOP unilaterally. So, for a fourth time, will you please supply Mr. Spieker with the information that he has requested?

      *Second*, in your letter, you suggest some lack of understanding of the nature of EOP's breach. We find it incredible that in a buyout of EOP by Blackhawk,

Bruce D. Angiolillo, Esq.

that you seem to indicate that there has been no "direct or indirect" sale of the Partnership or its assets. While we are confident that EOP has analyzed this issue repeatedly (since it would be grossly reckless not to have done so previously), let us be clear: the transaction that closed on February 9, 2007 will result in the "recognition of taxable income or gain" to Mr. Spieker. To read the Tax Protection Agreement as suggested would mean that the "Notwithstanding" proviso and the safe harbor transactions specified in Paragraph 2(b) are utterly meaningless. Paragraph 2(b) underscores that mergers are in fact covered by Paragraph 2(a) and would violate the restriction on "directly or indirectly" selling, exchanging or "otherwise dispos[ing]" of any Protected Property. As you can appreciate, a merger that cashes out the prior owners and creates new owners is, at the very least, a "direct or indirect" sale that "otherwise disposes" of the property. This broad language is also consistent with the intent of the parties.

*Third*, the 60-day clock specified in the Tax Protection Agreement will expire on April 10, 2007. In Mr. Spieker's letter of March 12, 2007, he requested a list of the accounting firms with whom EOP or their affiliates have accounting relationships. Your letter did not respond to that request. A copy of that request is again provided for your information. We need to receive this information as well so we are in a position to determine the appropriate firm to resolve this dispute in accordance with the Tax Protection Agreement. When will we be receiving this information?

*Fourth*, you should also inform your client that each of the individuals that are signatories to Mr. Spieker's Tax Protection Agreement each join in the request for information sought by Mr. Spieker.

Bruce D. Angiolillo, Esq.

*Fifth*, notwithstanding EOP's efforts to evade its obligations to negotiate in good faith, Mr. Spieker remains willing to sit down and discuss a resolution of this issue.

Please let me know how you intend to proceed so that Mr. Spieker and others may take appropriate steps to protect their rights. I am available to discuss this at your earlier convenience.

Very truly yours,

Michael H. Steinberg

(Attachment)

cc:   Ned Spieker