# Exhibit L

COPY

1  Michael H. Steinberg (CSB 134179)
   SULLIVAN & CROMWELL LLP
2  1888 Century Park East
   Los Angeles, California 90067
3  Telephone:    (310) 712-6600
   Facsimile:    (310) 712-8800
4
   Christopher R. Edgar (CSB 229771)
5  SULLIVAN & CROMWELL LLP
   1870 Embarcadero Road
6  Palo Alto, California 94303
   Telephone:  (650) 461-5600
7  Facsimile:  (650) 461-5700
8  *Attorneys for Petitioners Warren
   E. Spieker, Jr., et al.*
9

**ENDORSED FILED**
SAN MATEO COUNTY

JUL 3 0 2007

Clerk of the Superior Court
By _____ G. Jackson
         DEPUTY CLERK

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              COUNTY OF SAN MATEO        CV 464823

12  WARREN E. SPIEKER, JR., DENNIS E.          )  Case No. _____
    SINGLETON, JOHN K. FRENCH, BLAKE FAMILY    )
13  TRUST, JOHN G. DAVENPORT, JAMES C. EDDY,    )
    JOHN A. FOSTER, VINCENT D. MULROY,         )
14  RICHARD L. ROMNEY, JILL T. SCHNUGG, PETER  )  **PETITION TO COMPEL**
    H. SCHNUGG, JOHN B. SOUTHER, JR. and CRAIG )  **ARBITRATION AND FOR**
15  G. VOUGHT,                                 )  **APPOINTMENT OF**
                                               )  **ARBITRATOR**
16                  Petitioners,               )
                                               )  Hearing Date: August 30, 2007
17          v.                                 )  Hearing Time:  9:00 a.m.
                                               )  Department: [To be determined]
18  BLACKHAWK PARENT LLC, a Delaware limited   )  Judge: [To be determined]
    liability company, and EOP OPERATING LIMITED )
19  PARTNERSHIP, a Delaware limited partnership, )
                                               )
20                  Respondents.               )
                                               )
21                                             )
                                               )
22                                             )
                                               )
23                                             )
    _____ )
24

25          Petitioners Warren E. Spieker, Jr., Dennis E. Singleton, John K. French, Blake Family

26  Trust, John G. Davenport, James C. Eddy, John A. Foster, Vincent D. Mulroy, Richard L. Romney, Jill

27  T. Schnugg, Peter H. Schnugg, John B. Souther, Jr. and Craig G. Vought (collectively "Petitioners"), by

28  their undersigned attorneys, allege as follows:

SULLIVAN
&
CROMWELL LLP

1.      Petitioners bring this Petition to ensure that they are able to secure an "independent public accounting firm" to arbitrate a significant dispute with two affiliates of The Blackstone Group, L.P. ("Blackstone"), one of the largest financial and asset management firms in the world. Petitioners bring this Petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), and the California Arbitration Act, CAL. CIV. PROC. CODE § 1280 *et seq.* (the "CAA"), to compel two Blackstone affiliates, Respondents Blackhawk Parent LLC ("Blackhawk Parent") and EOP Operating Limited Partnership ("EOP") (collectively "Respondents"), to arbitrate as required by the Tax Protection Agreement (the "Protection Agreement") between the parties.

2.      Petitioners are the former management and former limited partners of Spieker Properties, L.P. ("Spieker Properties"), a partnership that owned and managed office and industrial real estate on the West Coast. In July 2001, EOP acquired Spieker Properties for in excess of $7 billion. As a result, EOP acquired the properties formerly managed by Spieker Properties (the "Protected Properties"), and Petitioners became limited partners of EOP.

3.      In the Protection Agreement, EOP agreed to indemnify Petitioners for certain tax obligations Petitioners incurred as a result of any sale or other disposition of the Protected Properties. If the parties disputed the extent of EOP's indemnity obligation, the parties agreed to select jointly a "nationally recognized independent public accounting firm" to arbitrate the dispute.

4.      In February 2007, Blackhawk Acquisition, L.P. ("Blackhawk Acquisition"), an affiliate of Blackstone, merged into and with EOP, and Blackhawk Parent became EOP's general partner. As a result of the merger, Petitioners' limited partnership interests were converted into cash, causing Petitioners to incur various tax liabilities. Petitioners requested that EOP indemnify Petitioners for those liabilities pursuant to the Protection Agreement, but EOP refused.

5.      Accordingly, to comply with the Protection Agreement's requirement that an "independent" accounting firm arbitrate the dispute, Petitioners asked that Respondents identify any nationally recognized public accounting firms with which Blackstone, EOP's ultimate parent, did not have business relationships, so that the parties could jointly select an "independent" accounting firm, free of conflicts of interest.

1    6.    Although Respondents acknowledge that they must arbitrate the dispute,

2    Respondents refuse to provide any information about their relationships with accounting firms, or

3    relationships that any of Respondents' partners or affiliates have with accounting firms. Instead, rather

4    than identifying accounting firms free of conflicts, Respondents have advocated that one of the "Big

5    Four" public accounting firms preside over the arbitration, have declined to identify any of the "Big

6    Four" accounting firms' business relationships and connections with Respondents, and have advanced

7    that the arbitration be held in New York City, despite the absence of any nexus between the Protection

8    Agreement and New York. Respondents have declined to identify any of the Big Four accounting

9    firms' business relationships with Blackstone.

10    7.    It is entirely disingenuous, however, for Respondents to continue to advocate

11    various accounting firms as arbitrators, without identifying the nature of their relationships to those

12    firms, since an *independent* accounting firm is required. As Respondents well know, however, the "Big

13    Four" accounting firms all have extensive relationships with EOP, and its parent, Blackstone. As just

14    one example, Blackstone's recent Form S-1 filed with the United States Securities and Exchange

15    Commission in connection with its initial public offering identifies Deloitte & Touche ("D&T") as its

16    principal auditor, and D&T has performed work on all nine of Blackstone's going-private transactions

17    over the past three years. D&T is also EOP's principal auditor. Nevertheless, Respondents have

18    proposed D&T as one possible arbitrator. Respondents refuse to explain how the accounting firms that

19    they regularly use could conceivably be considered "independent" given their relationships with

20    Blackstone and EOP.

21    8.    The FAA and the CAA require Respondents to arbitrate Petitioners' claims in

22    accordance with the terms of the Protection Agreement. Accordingly, Petitioners respectfully request

23    that the Court direct Respondents to (1) provide Petitioners with a list of the nationally recognized

24    accounting firms that have provided services to Blackstone and its affiliates within the past three years,

25    and the nature of such arrangements and the fees paid; (2) conduct the arbitration using only an

26    accounting firm that is "independent" of the parties within the meaning of the Protection Agreement;

27    and (3) conduct the arbitration in California. Petitioners have been ready to provide a corresponding list

28    of accounting firms used by them if the Court issues the above-described order.

## THE PARTIES

9.  Petitioner Warren E. Spieker, Jr. is a resident of Menlo Park, California.

10.  Petitioner Dennis E. Singleton is a resident of Menlo Park, California.

11.  Petitioner Blake Family Trust is a living trust organized under the laws of the State of California.

12.  Petitioner John G. Davenport is a resident of Newport Beach, California.

13.  Petitioner James C. Eddy is a resident of Portland, Oregon.

14.  Petitioner John A. Foster is a resident of Atherton, California.

15.  Petitioner John K. French is a resident of Woodside, California.

16.  Petitioner Vincent D. Mulroy is a resident of Ross, California.

17.  Petitioner Richard L. Romney is a resident of Rancho Santa Fe, California.

18.  Petitioners Peter H. Schnugg and Jill T. Schnugg are residents of Alamo, California.

19.  Petitioner John B. Souther, Jr. is a resident of Bend, Oregon.

20.  Petitioner Craig G. Vought is a resident of Atherton, California.

21.  Respondent EOP is a Delaware limited partnership with its headquarters in Chicago, Illinois.  EOP owns and manages office and industrial real estate.

22.  Respondent Blackhawk Parent, a Delaware limited liability company with its headquarters in New York, New York, is EOP's general partner, and is an affiliate of Blackstone. Blackhawk Parent is the successor to Blackhawk Acquisition Trust, which acquired EOP Trust, EOP's former general partner.

23.  Blackstone is a Delaware limited partnership with its headquarters in New York, New York.

## JURISDICTION AND VENUE

24.  The Court has subject matter jurisdiction over this matter pursuant to Sections 1 and 2 of the FAA because it is a court of competent general jurisdiction entitled to enforce the laws of the United States, and this matter involves interstate commerce.

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR

1         25.     The Court has personal jurisdiction over Respondents with respect to this

2    controversy.

3         26.     Venue is proper in this Court pursuant to CAL. CIV. PROC. CODE § 1292(b)

4    because several of the Petitioners reside in this County.

5    <strong>FACTS</strong>

6    <strong>The EOP/Spieker Merger</strong>

7         27.     Prior to July 2, 2001, Petitioners were limited partners of Spieker Properties, a

8    California limited partnership with its headquarters in Menlo Park, California.  Spieker Properties

9    owned and operated office and industrial real estate located in California, Oregon and Washington.  Mr.

10    Spieker was the Chairman of the Board of Spieker Properties.  (Decl. of Warren E. Spieker, Jr. ("Spieker

11    Decl.") ¶ 2.)

12         28.     On July 2, 2001, Spieker Properties merged with and into EOP (the "EOP/Spieker

13    Merger").  During the negotiations leading to the EOP/Spieker Merger, the parties to the merger held

14    meetings regarding the merger in California and representatives of EOP extensively communicated via

15    telephone, facsimile and e-mail with representatives of Spieker Properties who were situated in

16    California.  (Id. ¶ 3.)

17         29.     Under the merger agreement governing the EOP/Spieker Merger, EOP acquired

18    the properties previously held by Spieker Properties (including the Protected Properties), and Petitioners

19    became limited partners of EOP.  EOP issued each Petitioner a number of "Partnership Units"

20    corresponding to the size of that Petitioner's former partnership interest in Spieker Properties.  Because

21    Spieker Properties' business was to own and operate commercial properties, each Partnership Unit

22    constituted a share of the profits realized from the ownership and operation of Spieker Properties' real

23    estate.  (Id. ¶ 4.)  As a result of the EOP/Spieker Merger, Mr. Spieker and the other former executives of

24    Spieker Properties would no longer have any responsibility for the Protected Properties thereafter.

25         30.     Because Petitioners would no longer be in a position to control the disposition of

26    the properties now held by EOP (and, thus, no longer control the timing of any taxes due on sales of the

27    properties), as a condition of the EOP/Spieker Merger, EOP agreed to indemnify Petitioners for certain

28    tax obligations Petitioners might incur due to the sale or other disposition of the Protected Properties

SULLIVAN
&
CROMWELL LLP

5

1  within a specified time period (the "Protected Period"). EOP and Spieker Properties memorialized this

2  agreement in the Protection Agreement. The Protection Agreement refers to Petitioners as the "Sale

3  Restriction Partners." (*Id.* Exh. A, at 2.)

4        31.   In the Protection Agreement, EOP agreed, "for the benefit of each Sale

5  Restriction Partner, for the term of the Protected Period applicable to such Sale Restriction Partner, not

6  to directly or indirectly sell, exchange, or otherwise dispose of any Protected Property." (*Id.* Exh. A,

7  2(a).)

8        32.   EOP further agreed that "[i]n the event that [EOP] . . . breaches its obligation set

9  forth in Paragraph 2(a) . . . the Sale Restriction Partner's sole right shall be to receive from the

10  Partnership as damages an amount equal to the aggregate federal, state and local income taxes . . .

11  incurred by the Sale Restriction Partner as a result of the gain allocated to such Sale Restriction Partner

12  with respect to Protected Units by reason of such disposition . . . ." (*Id.* Exh. A, 2(c).)

13        33.   The Protection Agreement provides that, in the event that EOP breaches Section

14  2(a), "the General Partner and the Sale Restriction Partner agree to negotiate in good faith to resolve any

15  disagreements regarding any such breach or violation and the amount of damages, if any, payable to

16  such Sale Restriction Partner under Paragraph 2(c). If any such disagreement cannot be resolved . . .

17  within sixty (60) days after such breach, the General Partner and the Sale Restriction Partner shall

18  jointly retain a nationally recognized independent public accounting firm . . . to act as an arbitrator to

19  resolve as expeditiously as possible all points of any such disagreement . . . ." (*Id.* Exh. A, 2(d).)

20  **The EOP/Blackstone Merger**

21        34.   On February 9, 2007, EOP and its general partner, Equity Office Properties Trust

22  ("EOP Trust"), completed a merger (the "EOP/Blackstone Merger") with Blackhawk Acquisition;

23  Blackhawk Acquisition Trust, a Maryland real estate investment trust ("Blackhawk Trust"); and

24  Blackhawk Parent. (Spieker Decl. ¶ 6.) Blackhawk Acquisition, Blackhawk Trust and Blackhawk

25  Parent are affiliates of Blackstone Real Estate Partners, which is an affiliate of Blackstone.

26        35.   Pursuant to the merger agreement governing the EOP/Blackstone Merger,

27  Blackhawk Acquisition merged with and into EOP, and EOP Trust merged with and into Blackhawk

28

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR

1  Trust.  Blackhawk Trust was subsequently liquidated into Blackhawk Parent, and Blackhawk Parent

2  became the general partner of EOP.  (*Id.*)

3          36.    As a result of the EOP/Blackstone Merger, Petitioners' Partnership Units —

4  Petitioners' interests in the profits realized from the ownership and operation of the former Spieker

5  Properties real estate — were converted into the right to receive $55.50 per unit in cash.  (*Id.* ¶ 7.)

6          37.    Because Petitioners were cashed out of their partnership interests in EOP, each

7  Petitioner incurred tax liabilities substantially exceeding $25,000, exclusive of interest.

8  **Respondents' Refusal to Arbitrate as Provided in the Protection Agreement**

9          38.    After learning that he would receive cash consideration for his Partnership Units

10 and consequently incur tax liability, on January 23, 2007 Mr. Spieker wrote to Frank Cohen of

11 Blackhawk Parent, advising Blackhawk Parent that Mr. Spieker's receipt of cash for his Partnership

12 Units triggered EOP's obligation under the Protection Agreement to indemnify Mr. Spieker for his tax

13 liability.  (*Id.* Exh. B.)

14         39.    On January 30, 2007, Mr. Cohen wrote to Mr. Spieker, asserting that, because

15 "[b]oth immediately before and after the Partnership Merger, the properties subject to the Tax Protect

16 Agreement will continue to be owned by EOP," EOP had no indemnity obligations to Mr. Spieker.  (*Id.*

17 Exh. C.)

18         40.    On February 13, 2007, Mr. Spieker wrote to Mr. Cohen, requesting that

19 Blackhawk Parent provide Mr. Spieker with sufficient information to allow Mr. Spieker to compute the

20 damages resulting from EOP's breach of the Protection Agreement.  (*Id.* Exh. D.)

21         41.    Having received no response to his February 13 letter, Mr. Spieker again wrote to

22 Mr. Cohen on March 12, 2007, reminding Blackhawk Parent of its obligation under Section 2(d) of the

23 Protection Agreement to "negotiate in good faith" with Mr. Spieker regarding the damages resulting

24 from EOP's breach.  Mr. Spieker further requested that, to facilitate the parties' joint appointment of a

25 "nationally recognized independent public accounting firm" as provided for in the Protection

26 Agreement, Blackhawk Parent provide Mr. Spieker with a list of accounting firms that had provided

27 services to Blackstone and its affiliates within the past five years.  (*Id.* Exh. E.)

28

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR

1    42.    On March 15, 2007, Bruce D. Angiolillo, Esq., counsel for Respondents, wrote to

2   Mr. Spieker, asserting that Mr. Spieker had failed to explain why he was entitled to indemnification

3   under the Protection Agreement. (*Id.* Exh. F.)

4    43.    On March 19, 2007, Michael H. Steinberg, counsel for Petitioners, wrote to Mr.

5   Angiolillo, stating that Blackhawk Parent was required to provide the information requested by Mr.

6   Spieker notwithstanding Blackhawk Parent's belief that Mr. Spieker was not entitled to indemnification,

7   and reminding Blackhawk Parent of its obligation to inform Mr. Spieker of which nationally recognized

8   public accounting firms had professional relationships with Blackstone.  Mr. Steinberg further advised

9   Blackhawk Parent that the Petitioners other than Mr. Spieker joined in Mr. Spieker's request for

10  information. (Decl. of Michael H. Steinberg ("Steinberg Decl.") Exh. A.)

11    44.    On March 23, 2007, Mr. Angiolillo wrote to Mr. Steinberg, stating that

12  Respondents were willing to discuss Petitioners' requests for information. (*Id.* Exh. B.)

13    45.    On March 26, 2007, Mr. Steinberg wrote to Mr. Angiolillo, again seeking the tax

14  information Mr. Spieker requested the previous month and reminding Respondents of their obligation to

15  provide information regarding Blackstone's relationships with nationally recognized public accounting

16  firms. (*Id.* Exh. C.)

17    46.    On May 9, 2007, after further conversations between the parties, Mr. Steinberg

18  wrote to Mr. Angiolillo, again requesting information regarding Petitioners' damages due to EOP's

19  breach of the Protection Agreement, and information regarding Blackstone's relationships with

20  nationally recognized public accounting firms. (*Id.* Exh. D.)

21    47.    On May 10, 2007, Mr. Angiolillo wrote to Mr. Steinberg, advising Mr. Steinberg

22  that Respondents would be "prepared early next week to exchange a list of nationally recognized

23  independent public accounting firms." (*Id.* Exh. E.)  Mr. Angiolillo also suggested that any hearings

24  held in connection with any arbitration be held in New York City, despite the lack of any nexus between

25  the Protection Agreement and New York.

26    48.    On May 14, 2007, Mr. Steinberg wrote to Mr. Angiolillo, stating that Petitioners

27  would be prepared the following week to exchange lists of accounting firms that were not conflicted

28

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR

1  with respect to the parties, and further inquiring about the basis for Respondents' view that New York

2  was an appropriate locale for any arbitration hearings. (*Id.* Exh. F.)

3          49.    On May 23, 2007, Paul C. Gluckow, Esq., counsel for Respondents, contacted

4  Christopher R. Edgar, counsel for Petitioners, by phone.  Mr. Gluckow advised Mr. Edgar that, in

5  Respondents' view, the Protection Agreement's requirement that the parties jointly select an

6  "independent" accounting firm did not require Respondents to inform Petitioners which accounting

7  firms were free of conflicts with respect to Blackstone.  Mr. Gluckow further stated that Respondents

8  were amenable to using any of the "Big Four" nationally recognized public accounting firms, i.e., D&T,

9  E&Y, KPMG and PricewaterhouseCoopers, to arbitrate Petitioners' claims.  Mr. Gluckow did not

10  supply any reasoning for Respondents' suggestion that New York was a proper locale.

11          50.    Upon information and belief, all of the "Big Four" accounting firms regularly

12  provide services to The Blackstone Group and its affiliates, including EOP and Blackhawk Parent.

13          51.    On May 25, 2007, Mr. Edgar wrote to Mr. Gluckow, stating that the Protection

14  Agreement's requirement that the parties jointly select an "independent" accounting firm required the

15  parties to exchange information concerning accounting firms' conflicts with respect to the parties. (*Id.*

16  Exh. G.)

17          52.    On May 31, 2007, Mr. Gluckow wrote to Mr. Edgar, again proposing the "Big

18  Four" accounting firms as potential arbitrators, and declining to either provide information regarding

19  those firms' relationships to Respondents or explain Respondents' interpretation of the Protection

20  Agreement's requirement that the accounting firm presiding over the arbitration be "independent." (*Id.*

21  Exh. H.)

22          53.    Despite Petitioners' repeated requests, Respondents still have not provided

23  information regarding Blackstone's relationships to the nationally recognized public accounting firms.

24  ## RESPONDENTS' DUTY TO ARBITRATE UNDER THE PROTECTION AGREEMENT

25          54.    Under CAL. CIV. PROC. CODE § 1281.2, "the court shall order the petitioner and

26  the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy

27  exists," and the petition alleges "the existence of a written agreement to arbitrate a controversy and that

28  a party thereto refuses to arbitrate such controversy."

1   55.   Moreover, under CAL. CIV. PROC. CODE § 1281.6, "[i]f the arbitration agreement

2   provides a method of appointing an arbitrator," but "the agreed method fails or for any reason cannot be

3   followed, . . . the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator."

4   56.   If a party is willing to arbitrate a controversy, but refuses to do so according to the

5   terms of the written agreement requiring arbitration, the FAA and the CAA authorize the Court to order

6   that party to arbitrate in the specific manner required by the agreement.

7   57.   Although Respondents have expressed a willingness in principle to arbitrate

8   Petitioners' claims, Respondents have refused to conduct the arbitration according to the plain terms of

9   the Protection Agreement.  Specifically, Respondents have failed to comply with their obligation under

10  the Protection Agreement to participate in the joint selection of an "independent" accounting firm to

11  preside over the arbitration.

12  58.   As noted above, Section 2(d) of the Protection Agreement provides that, if the

13  General Partner and any Sale Restriction Partner are unable to resolve a disagreement regarding EOP's

14  indemnity obligations under Section 2(a), they "shall jointly retain a nationally recognized independent

15  public accounting firm" to arbitrate the dispute.

16  59.   Simply put, Respondents refuse to identify who is conflicted by virtue of their

17  extensive relationships with independent accounting firms.  Respondents insist that the Protection

18  Agreement's requirement that the accounting firm arbitrating the dispute be "independent" does not

19  mandate that the accounting firm be free of conflicts with respect to the parties, although Respondents

20  refuse to explain how "independent" could possibly be interpreted not to impose such a requirement.  In

21  addition, Respondents advocate using accounting firms with extensive business relationships with EOP,

22  EOP's general partner (Blackhawk Parent), and affiliates of EOP and Blackhawk Parent to arbitrate

23  Petitioners' claims, in a transparent effort to bias the outcome of the arbitration in Respondents' favor.

24  60.   As Petitioners advised Respondents, an accounting firm is generally referred to as

25  "independent" if it complies with the standards for accounting firm independence prescribed by, *inter*

26  *alia*, the rules of the Securities and Exchange Commission and the American Institute of Certified Public

27  Accountants.  An accounting firm cannot adjudicate the dispute between Petitioners and Respondents

28  consistent with those standards if it has a close business relationship with Blackstone.

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR

1    61.    Because Respondents refuse to abide by the Protection Agreement's requirement

2    that the accounting firm arbitrating the dispute be "independent," Respondents have refused to conduct

3    the arbitration according to the plain terms of the Protection Agreement.

4    62.    Further, Respondents have claimed that it would be appropriate to arbitrate this

5    dispute in New York, New York, despite the lack of any nexus between EOP, the Protection Agreement

6    or the Petitioners and that proposed locale.  Plainly, any arbitration relating to the Protection Agreement

7    should be heard in California, particularly given the nexus between California, on the one hand, and

8    Spieker Properties, the location of the Protected Properties, and the Protection Agreement, on the other.

9    **PRAYER FOR RELIEF**

10    WHEREFORE, Petitioners respectfully seek an order:

11    (a)    Directing Respondents to provide Petitioners with a list of the nationally

12    recognized accounting firms that have provided services to Blackstone and its affiliates within the past

13    three years, including the nature of the work performed and the amount in fees and other expenses paid;

14    (b)    Directing Respondents to conduct the arbitration concerning EOP's indemnity

15    obligation under the Protection Agreement using only an accounting firm that is "independent" of the

16    parties within the meaning of the Protection Agreement;

17    (c)    Directing Respondents to have any hearings in connection with the arbitration

18    held in California; and

19    (d)    Granting Petitioners such other and further relief as the Court deems just and

20    proper under the circumstances.

21    //

22    //

23

24

25

26

27

28

SULLIVAN
&
CROMWELL LLP

11

1   //

2   //

3   Dated: July 30, 2007

4

5                                   Michael H. Steinberg (CSB 134179)
                                    SULLIVAN & CROMWELL LLP
6                                   1888 Century Park East
                                    Los Angeles, California  90067
7                                   Telephone:     (310) 712-6600
                                    Facsimile:     (310) 712-8800

8                                   Christopher R. Edgar (CSB 229771)
                                    SULLIVAN & CROMWELL LLP
9                                   1870 Embarcadero Road
                                    Palo Alto, California 94303
10                                  Telephone:  (650) 461-5600
                                    Facsimile:  (650) 461-5700

11
                                    *Attorneys for Petitioners Warren*
12                                  *E. Spieker, Jr., et al.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SULLIVAN
&
CROMWELL LLP

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF ARBITRATOR