1   Michael H. Steinberg (CSB 134179)
    SULLIVAN & CROMWELL LLP
2   1888 Century Park East
    Los Angeles, California  90067
3   Telephone:    (310) 712-6600
    Facsimile:    (310) 712-8800
4
    Christopher R. Edgar (CSB 229771)
5   SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
6   Palo Alto, California  94303
    Telephone:    (650) 461-5600
7   Facsimile:    (650) 461-5700

8   *Attorneys for Plaintiffs/Petitioners Joel
    Benoliel, et al.*
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  JOEL BENOLIEL, GREGG R.                    )
    DAUGHERTY, BRUCE E. HOSFORD                )
15  and DONALD S. JEFFERSON,                   )
                                               )
16              Plaintiffs/Petitioners,        )    Case No.  C 07-03001 RMW
                                               )
17        v.                                    )
                                               )
18  BLACKHAWK PARENT LLC, a                    )    **REPLY IN SUPPORT OF FIRST
    Delaware limited liability company, and    )    AMENDED PETITION TO
19  EOP OPERATING LIMITED                      )    COMPEL ARBITRATION**
    PARTNERSHIP, a Delaware limited            )
20  partnership,                               )    Hearing Date:  August 31, 2007
                                               )    Hearing Time:  9:00 a.m.
21              Defendants/Respondents.        )    Judge:        Hon. Ronald M. Whyte
                                               )
22  _____  )

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................2

I.    DIVERSITY JURISDICTION IS PROPER, AND IN ANY EVENT PETITIONERS
      SHOULD BE ALLOWED TO TAKE JURISDICTIONAL DISCOVERY REGARDING
      THE ALLEGED WASHINGTON LIMITED PARTNER...................................................2

      A.    Because the Washington Limited Partner Presumably Acquired Her
            Interest After the Petition Was Filed, the Court Has Diversity
            Jurisdiction.......................................................................................................2

      B.    Alternatively, Petitioners Should Be Permitted To Take Discovery
            Regarding the Alleged Washington Limited Partner's Acquisition of
            Her Interest.......................................................................................................4

II.   THE COURT SHOULD REJECT RESPONDENTS' EFFORT TO STRIP
      "INDEPENDENT" OF ANY MEANING..........................................................................5

III.  RESPONDENTS' SLEW OF PROCEDURAL OBJECTIONS ARE WITHOUT
      MERIT.........................................................................................................................6

      A.    Respondents' Objection To "Standing" — Which Is Really a Challenge To
            Ripeness — Fails .............................................................................................6

      B.    The Court Has Personal Jurisdiction Over Blackhawk Parent ............................8

      C.    Venue Is Proper in This District ........................................................................11

      D.    The Petition Is Proper Under the Tax Protection Agreement ...............................13

SULLIVAN & CROMWELL LLP

## TABLE OF AUTHORITIES

### CASES

Page(s)

*ATSA of Cal, Inc.* v. *Continental Ins. Co.,*
    702 F.2d 172 (9th Cir. 1987) ................................................................15

*Blake* v. *Dierdorff,*
    856 F.2d 1365 (9th Cir. 1988) ................................................................5

*Champion Int'l. Corp.* v. *Bennett Forest Industrial, Inc.,*
    637 F. Supp. 170 (D. Mont. 1986)..........................................................12

*Chiron Corp.* v. *Ortho Diagnostic Sys.,*
    No. 99-1538, 1999 U.S. Dist. LEXIS 17348 (N.D. Cal. Nov. 3, 1993) ........................6

*Clearwater Ins. Co.* v. *Granite State Ins. Co.,*
    No. 06-4472, 2006 U.S. Dist. LEXIS 74771 (N.D. Cal. Oct. 2, 2006) ........................6

*Colt's Mfg. Co.* v. *Devteck Corp.,*
    961 F. Supp. 382 (D. Conn. 1997)..........................................................8

*Container Recovery, Inc.* v. *Shasta Northwest, Inc.,*
    No. 05-1749, 2007 U.S. Dist. LEXIS 42620 (D. Or. Jun. 11, 2007) ........................5

*Cummings* v. *FedEx Ground Pkg. Sys.,*
    404 F.3d 1258 (10th Cir. 2005) ................................................................14

*Fireman's Fund Ins. Co.* v. *Sorema N. Am. Reins. Co.,*
    No. 94-3617, 1995 U.S. Dist. LEXIS 22236 (10th Cir. 2005) ........................15

*Green Tree Fin. Corp.* v. *Bazzle,*
    539 U.S. 444 (2003)................................................................14

*Hartford Accident & Indemnity Co.* v. *Equitas Reins. Ltd.,*
    200 F. Supp. 2d 102 (D. Conn. 2002)..........................................................8

*Hartford Fire Ins. Co.* v. *Evergreen Org., Inc.,*
    410 F. Supp. 2d 180 (S.D.N.Y. 2006)..........................................................10

*Hartog* v. *Jots, Inc.,*
    No. 03-2986, 2004 U.S. Dist. LEXIS 24267 (N.D. Cal. Jan. 9, 2004)........................9

*In re Hawaii Fed. Asbestos Cases,*
    960 F.2d 806 (9th Cir. 1992) ................................................................2, 3

*Howsam* v. *Dean Witter Reynolds,*
    537 U.S. 79 (2002)................................................................14

SULLIVAN & CROMWELL LLP

**CASES (continued)**

Page(s)

*nMotion, Inc.* v. *Env'tl. Tectonics Corp.*,
196 F. Supp. 2d 1051 (D. Or. 2001) ..................................................................10

*Joe Boxer Corp.* v. *R. Siskind & Co.*,
No. 98-4899, 1999 U.S. Dist. LEXIS 9622 (N.D. Cal. Jun. 25, 1999).......................8

*Largotta* v. *Banner Promotions, Inc.*,
356 F. Supp. 2d 388 (S.D.N.Y. 2005)..................................................................12

*Laub* v. *United States DOI*,
342 F.3d 1080 (9th Cir. 2003) ............................................................................5

*Lynch* v. *Alaska Tanker Co., LLC*,
No. 03-2484, 2004 U.S. Dist. LEXIS 22930 (N.D. Cal. Nov. 4, 2004) ..................13

*MacCallum* v. *N.Y. Yankees Pshp.*,
392 F. Supp. 2d 259 (S.D.N.Y. 2005)..................................................................11

*Mann* v. *Tucson Dept. of Police*,
782 F.2d 790 (9th Cir. 1986) ...............................................................................3

*McGann* v. *Ernst & Young*,
102 F.3d 390 (9th Cir. 1996) ...............................................................................5

*Mediterranean Enters.* v. *Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ...........................................................................14

*Moser* v. *Bret Harte Union High Sch. District*,
366 F. Supp. 2d 944 (E.D. Cal. 2005)...................................................................4

*No Touch N. Am.* v. *Blue Coral, Inc.*,
No. 95-1103, 1997 U.S. Dist. LEXIS 16153 (C.D. Cal. May 30, 1997) ...................9

*OKI Am.* v. *Tsakanikas*,
No. 93-20728, 1993 U.S. Dist. LEXIS 19475 (N.D. Cal. Dec. 6, 1993)..................10

*PNI, Inc.* v. *Leyton*,
No. 03-1344, 2004 U.S. Dist. LEXIS 13335 (D. Or. 2004) ....................................6

*Reilly* v. *Chambers*,
215 F. Supp. 2d 759 (D. W.Va. 2002) ................................................................12

*Richmond* v. *Madison Mgmt. Group, Inc.*,
918 F.2d 438 (4th Cir. 1990) ...............................................................................9

*San Jose* v. *Price Waterhouse*,
No. 91-16489, 1993 U.S. App. LEXIS 6801 (9th Cir. Mar. 23, 1993) .....................5

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

SULLIVAN & CROMWELL LLP

1

**CASES (continued)**

2

Page(s)

3

*Sipper* v. *Capital One Bank*,
  No. 01-9547, 2002 U.S. Dist. LEXIS 3881 (C.D. Cal. Mar. 1, 2002) ................................4

4

5

*Sizova* v. *Nat'l. Inst. of Stds. & Tech.*,
  282 F.3d 1320 (10th Cir. 2002) ..................................................................................5

6

*Tracer Rsrch. Corp.* v. *Nat'l. Env'tl. Servs. Co.*,
  42 F.3d 1292 (9th Cir. 1994) ....................................................................................14

7

8

*U. S. Titan, Inc.* v. *Guangzhou Zhen Hua Shipping Co.*,
  241 F.3d 135 (2d Cir. 2001) .....................................................................................10

9

*Vesta Fire Ins. Corp.* v. *Ins. Ventures, Inc.*,
  No. 02:04-cv-0, 2006 U.S. Dist. LEXIS 24887 (E.D. Cal. Feb. 9, 2006) .................5

10

*Wells* v. *Cingular Wireless LLC*,
  No. 06-03191, 2006 U.S. Dist. LEXIS 73664 (N.D. Cal. Mar. 6, 2007)...................11

11

12

**STATUTES AND RULES**

13

9 U.S.C. § 4 ....................................................................................................................7

14

9 U.S.C. § 5 ..................................................................................................................14

15

28 U.S.C. § 1291 ..........................................................................................................11

16

28 U.S.C. § 1391 .....................................................................................................11, 12

17

28 U.S.C. § 1927 ............................................................................................................4

18

Cal. Bus. & Prof. Code § 6068 ......................................................................................4

19

Cal. R. Prof'l. Conduct 2-100 ........................................................................................4

20

Fed. R. Civ. P. 12(b) ......................................................................................................2

21

Fed. R. Civ. P. 12(h) .............................................................................................2, 10, 13

22

Fed. R. Civ. P. 81(a) ............................................................................................10, 13

23

24

25

26

27

28

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

SULLIVAN & CROMWELL LLP

# INTRODUCTION

In this action, four individuals ("Petitioners") ask this Court to compel Blackhawk Parent LLC and EOP Operating Limited Partnership (collectively, "Blackstone" or "Respondents") to provide disclosure of Blackstone's relationships with various auditing firms in connection with a desired arbitration of Petitioners' claims against Blackstone under a Tax Protection Agreement (the "Protection Agreement") and to obligate Blackstone to agree on one free from financial entanglements. Because the Protection Agreement requires the parties to select a "nationally recognized *independent* public accounting firm," Petitioners have been asking Blackstone since March 2007 — for more than five months — to provide information regarding Blackstone's business relationships with the accounting firms Blackstone has proposed as arbitrators. But Blackstone, one of the world's largest and most powerful financial firms, refuses to provide any information about how much it pays the firms it has offered up as "independent" auditors. Because firms with multi-million dollar relationships with Blackstone cannot be either "independent" under the Protection Agreement, or suitable arbitrators, Petitioners have identified other firms that, to their knowledge, are "independent" and with which, to Petitioners' knowledge, Blackstone has no relationship. (*See* Decl. of Michael H. Steinberg, Aug. 17, 2007 ("Steinberg Reply Decl.") Exhs. A, B.) But Blackstone is just not interested in selecting (or even proposing) an "independent" accounting firm.

Blackstone reveals its litigation strategy by its 23-page Opposition: avoid addressing the merits at all costs. One must read through twenty pages of erroneous procedural objections before addressing Blackstone's position on the merits, and that position lacks any merit: according to Respondents, the term "nationally recognized independent public accounting firm" means only that Blackstone cannot put forward an "in-house" accounting department of some company. (*See* Opp'n at 21.) No wonder Blackstone's defense is revealed so late.

The rest of Blackstone's Opposition is just the "kitchen sink" of procedural objections, ranging from "standing" (which is really a mistaken ripeness challenge) to venue to personal jurisdiction and even to the question of whether the intra-district assignment of this case has been handled correctly (and it has). Not only does each of these objections fail, but

-1-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1  Blackstone did not even bother to assert them correctly, since personal jurisdiction and venue

2  can only be raised by an answer or motion under FED. R. CIV. P. 12(b)(2) (personal jurisdiction)

3  and FED. R. CIV. P. 12(b)(3) (venue), not by way of opposition.  *See* FED. R. CIV. P. 12(h)(1).

4          Further, Respondents' objection to subject matter jurisdiction fails, since

5  Respondents decline even to attempt to argue that the Washington limited partner they rely upon

6  held her partnership interest at the time that the Petition was filed, which is the only relevant time

7  period.  *See, e.g., In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 809-10 (9th Cir. 1992) ("It is

8  well-settled that the existence of complete diversity is assessed at the time of the filing of a

9  complaint and that subsequent changes in the citizenship of an existing party do not affect the

10 determination of jurisdiction.").

11         The rest of Respondents' Opposition consists of irrelevant attacks.  So, while

12 Respondents insult Petitioners' view on the merits (which is a complete waste of pages, since the

13 merits are for the arbitrators, not this Court), Blackstone must feel that the only forum in which

14 it can succeed is one where it has an ongoing and significant financial relationship with the

15 "neutral" arbitrator (*i.e.*, selecting its own auditor).  Respondents' rant reaches crescendo pitch

16 when accusing Petitioners of "delay," even though Respondents could easily resolve this matter

17 by providing the information Petitioners have been seeking for five months.  Blackstone

18 apparently claims that Petitioners should have accepted one of the Big Four accounting firms, no

19 matter how grave the conflicts, just to move the ball forward.  This is absurd.  Despite further

20 requests this month, Blackstone still has not — even today — disclosed any details of its

21 relationships with the firms it has proposed or those proposed by Petitioners.

22                                    **ARGUMENT**

23 I.    **DIVERSITY JURISDICTION IS PROPER, AND IN ANY EVENT PETITIONERS
         SHOULD BE ALLOWED TO TAKE JURISDICTIONAL DISCOVERY
24       REGARDING THE ALLEGED WASHINGTON LIMITED PARTNER**

25        A.    **Because the Washington Limited Partner Presumably Acquired Her Interest
                After the Petition Was Filed, the Court Has Diversity Jurisdiction**
26

27        When initially opposing the Petition, Respondents submitted a declaration by

28 Matt Koritz, general counsel of Blackhawk Parent, identifying certain EOP limited partners as

-2-

SULLIVAN & CROMWELL LLP

1    citizens of California and Oregon. (Steinberg Reply Decl., at Exh. C (Decl. of Matt Koritz, Jul.

2    20, 2007, ¶¶ 3-6).) Blackstone claimed that "[b]ecause EOP has limited partners who are

3    citizens of California and Oregon, EOP is a citizen of those states." (Resps.' Mem. in Opp'n.,

4    Jul. 20, 2007, at 12.) In all of the papers filed in opposition to the initial Petition, Respondents

5    *never* mentioned any Washington-based limited partner of EOP.

6                Taking Blackstone and Mr. Koritz at their word, Petitioners amended their

7    Petition, dropping any former Spieker limited partners living in Oregon or California.[1] Yet now,

8    in response to the First Amended Petition, Mr. Koritz has submitted a new declaration. This

9    time Mr. Koritz says, without any detail whatsoever, that, as of the date of his declaration

10   (August 10, 2007), there now exists an EOP limited partner, Frances Hilen, who is supposedly a

11   citizen of Washington State. (*See* Decl. of Matt Koritz, Aug. 10, 2007, ¶ 3.) But Respondents

12   decline to provide evidence indicating *when* Ms. Hilen acquired her interest in EOP or the nature

13   of that interest. Nor did Respondents include Ms. Hilen, or any other alleged EOP limited

14   partner, in their Certificate of Interested Entities or Persons. (*See* Cert. of Interested Entities or

15   Persons, Jun. 18, 2007, at 2.)

16               Because Blackstone never indicates *when* Ms. Hilen acquired her interest,

17   Respondents presume that she became an EOP limited partner *after* the initial Petition was filed,

18   and that Respondents did not intentionally omit Ms. Hilen from their original opposition papers

19   to delay and impede these proceedings. If Ms. Hilen did acquire those interests after the Petition

20   was initially filed, there would be no question that this Court has diversity jurisdiction over the

21   Petition. *See In re Hawaii Fed. Asbestos Cases*, 960 F.2d at 809-10 ("[D]iversity jurisdiction is

22   determined by the citizenship of the parties at the time of the filing of the complaint, not at the

23   time the cause of action arose or after the action is commenced."); *Mann* v. *Tucson Dep't. of*

24   *Police*, 782 F.2d 790, 794 (9th Cir. 1986) (same).

25               But while Blackstone's evidence does not identify *when* Ms. Hilen acquired her

26   interest, in briefing, Blackstone seems to assume — but does not directly state — that Ms. Hilen

27

28   [1]    Those individuals are now pursuing a petition to compel arbitration in the Superior Court
        of the State of California, County of San Mateo.

-3-

REPLY IN SUPP. OF PETITION
                                                                                  TO COMPEL ARBITRATION

1   may have been a limited partner at some point before. Indeed, Blackstone says only that it was

2   "under no obligation" to mention her earlier. (Opp'n. at 12 n.4.) Of course, Blackstone could

3   have been "under no obligation" to mention her if she was not a limited partner previously. But

4   if Blackstone believes that it could omit from its prior papers material facts relating to

5   jurisdiction, it is palpably wrong.

6          If Blackstone had played such a cute trick (omitting to name a Washington

7   limited partner, in order only to cause Petitioners to amend their Petition and to brief another

8   petition to compel), that conduct would violate 28 U.S.C. § 1927's mandate that litigants not

9   "multipl[y] the proceedings in any case unreasonably and vexatiously," and would violate

10  Blackstone's counsel's duty of candor to this Court. *See* CAL. BUS. & PROF. CODE § 6068(d) (a

11  lawyer must "never seek to mislead the judge or any judicial officer by an artifice or false

12  statement of fact or law"); CAL. R. PROF'L. CONDUCT 2-100(B) ("In presenting a matter to a

13  tribunal, a member . . . [s]hall not seek to mislead the judge, judicial officer, or jury by an artifice

14  or false statement of fact or law."); *see also Moser* v. *Bret Harte Union High Sch. Dist.*, 366 F.

15  Supp. 2d 944, 974 n.7 (E.D. Cal. 2005) (defendant's "omission of relevant facts" from

16  opposition warranted sanctions for duty of candor violation); *Sipper* v. *Capital One Bank*, No.

17  01-9547, 2002 U.S. Dist. LEXIS 3881, *7 (C.D. Cal. Mar. 1, 2002) (plaintiff's omission to

18  mention material fact of "relationship between one of the attorneys in this action . . . and one of

19  the named plaintiffs in this action" violated duty of candor); *Mendez* v. *Plastofilm Indus., Inc.*,

20  No. 91 C 8172, 1992 U.S. Dist. LEXIS 5704, *11-12 (N.D. Ill. Apr. 15, 1992) ("Plastofilm's

21  insistence that the complaint was unclear" to give the appearance that removal on diversity

22  grounds was proper "can only be seen as evidence of bad faith and lack of respect for the duty of

23  candor toward the court").

24  **B.      Alternatively, Petitioners Should Be Permitted To Take Discovery Regarding
            the Alleged Washington Limited Partner's Acquisition of Her Interest**

25

26          Assuming no artifice by Blackstone, Ms. Hilen must have acquired her interest in

27  EOP *after* the Petition was filed. Nevertheless, to the extent that Blackstone may attempt to

28  supplement the record to claim that, in fact, she held her interest before the original Petition was

-4-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1   filed, this Court is not required simply to take Respondents at their word that EOP has a

2   Washington limited partner, particularly in light of Respondents' inexplicable failure to put

3   forward that proof before. Accordingly, if the Court is not inclined to conclude that jurisdiction

4   is proper based on the current record, Petitioners respectfully request that the Court allow

5   discovery on Ms. Hilen's acquisition of her interest. *See Laub* v. *United States DOI*, 342 F.3d

6   1080, 1093 (9th Cir. 2003) ("[D]iscovery should ordinarily be granted where pertinent facts

7   bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

8   the facts is necessary . . . ."); *Sizova* v. *Nat'l. Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th

9   Cir. 2002) (court should have allowed discovery regarding subject matter jurisdiction because

10  "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed

11  discovery on the factual issues raised by that motion").

12  **II.    THE COURT SHOULD REJECT RESPONDENTS' EFFORT TO STRIP**
        **"INDEPENDENT" OF ANY MEANING**

13

14              Respondents assert that the Protection Agreement allows them to select an

15  arbitrator with significant and ongoing business relationships with Blackstone and its numerous

16  affiliates, and to refuse to disclose information regarding those relationships, because an

17  "independent" accounting firm supposedly means a "stand-alone (*i.e.* not captive), reputable,

18  widely used and recognized accounting firm[]." (Opp'n. at 21.)

19              Respondents' authorities, however, do not even begin to support this view — *not*

20  *one held that an accounting firm need not be free of conflicts to be "independent." See McGann*

21  v. *Ernst & Young*, 102 F.3d 390, 391 (9th Cir. 1996) (simply referring to Ernst & Young as "an

22  independent accounting firm"); *San Jose* v. *Price Waterhouse*, No. 91-16489, 1993 U.S. App.

23  LEXIS 6801, *1 (9th Cir. Mar. 23, 1993) (saying only that Price Waterhouse was "the City's

24  independent accounting firm"); *Blake* v. *Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988)

25  (identifying "Arthur Young [as] Sun Saving's independent accounting firm"); *Container*

26  *Recovery, Inc.* v. *Shasta Northwest, Inc.*, No. 05-1749, 2007 U.S. Dist. LEXIS 42620 (D. Or.

27  Jun. 11, 2007) (saying nothing at all about accounting firms); *Vesta Fire Ins. Corp.* v. *Ins.*

28

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1   *Ventures, Inc.*, No. 02:04-cv-0, 2006 U.S. Dist. LEXIS 24887, *4-5 (E.D. Cal. Feb. 9, 2006)

2   (identifying "Baumann, Raymondo & Company" as "an independent accounting firm").

3             Of course, Respondents' proffered interpretation renders "independent"

4   meaningless.  If "independent" meant "not captive" (by which Respondents apparently mean

5   "not Blackstone's in-house accountants"), there would be no need for the Protection Agreement

6   to specify — as it does — that an "accounting *firm*" must be used.  Respondents' in-house

7   accounting departments are not "accounting firms," and thus Respondents' reading of

8   "independent" to mean "non-captive" renders the term "firm" superfluous.  Similarly, if

9   "independent" meant "reputable, widely used and *recognized*," there would be no need for the

10  Protection Agreement to provide that the accounting firm must be "nationally *recognized*."

11  Respondents' reading of the Agreement makes "nationally recognized" redundant, and therefore

12  must be rejected.  *See PNI, Inc.* v. *Leyton*, No. 03-1344, 2004 U.S. Dist. LEXIS 13335, *13 (D.

13  Or. 2004) (because, under plaintiff's reading of arbitration agreement, "[i]t would seem

14  superfluous for the parties to have a provision requiring 30 days notice to end the contract,"

15  plaintiff's reading incorrect); *Chiron Corp.* v. *Ortho Diagnostic Sys.*, No. 99-1538, 1999 U.S.

16  Dist. LEXIS 17348, *13 (N.D. Cal. Nov. 3, 1993) (because "adoption of Ortho's interpretation

17  would render a different section of § 13.13(b) meaningless," defendant's interpretation of

18  arbitration clause rejected).

19  **III.   RESPONDENTS' SLEW OF PROCEDURAL OBJECTIONS ARE WITHOUT
           MERIT**

20
             **A.   Respondents' Objection To "Standing" — Which Is Really a Challenge To
21                  Ripeness — Fails**

22             Because Respondents' argument on the merits fails, they instead make an

23  argument that they characterize as based on "standing,"[2] asserting that "there has been no refusal

24

25  _____

26  [2]       Blackstone's argument is not really a "standing" argument.  There is no question that the
    Petitioners have the "right" under a contract (*i.e.*, standing) to pursue their claim.  Respondents'
    complaint actually appears to be that the Petition is unripe — *i.e.*, that Petitioners have not *yet*
27  suffered an injury due to Respondents' refusal to arbitrate.  No matter how this argument is
    framed, Blackstone invites error.  *See Clearwater Ins. Co.* v. *Granite State Ins. Co.*, No. 06-
28  4472, 2006 U.S. Dist. LEXIS 74771, *7-8 (N.D. Cal. Oct. 2, 2006) (petition to compel
    arbitration was "ripe for adjudication" because "[d]espite respondents' repeated insistence that
    they have been willing and able to proceed with the arbitration mechanism at all times, there is

                                                -6-

                                                        REPLY IN SUPP. OF PETITION
                                                        TO COMPEL ARBITRATION

1    to arbitrate as required under § 4 of the Federal Arbitration Act." (Opp'n. at 12.)  To make that

2    assertion, Respondents simply ignore the FAA's plain language.  Section 4 of the FAA provides

3    that a petition to compel arbitration may seek "an order directing that such arbitration proceed *in*

4    *the manner provided for in such agreement*."  9 U.S.C. § 4 (emphasis added).  Respondents'

5    apparent view that, so long as they agree to have some form of arbitration, the FAA permits them

6    to ignore the terms of the arbitration clause is incorrect.

7            What is even more peculiar about this "standing" argument is that Blackstone has

8    itself brought suit in Illinois, seeking to compel *Petitioners* to arbitrate under the FAA.  (*See*

9    Steinberg Reply Decl. Exh. D.)  In that petition, Respondents "request that the Court order

10   [Petitioners] to provide the requisite list of potential arbitrators and to negotiate in good faith so

11   that the parties may jointly retain a nationally recognized independent public accounting firm."

12   (*Id.* Exh. D, ¶ 10.)  Yet under the view Blackstone presents here, Blackstone lacks "standing" to

13   assert that claim because Petitioners agree in principle to arbitrate.  No explanation is offered for

14   this obviously contradictory position.

15           Further still, Blackstone advances its contradictory position without the benefit of

16   authority.  Numerous decisions in this Circuit and others — which Respondents just ignore —

17   hold that a party may seek an order under Section 4 requiring arbitration in accordance with the

18   specific terms of the agreement, even if the other party agrees in principle to arbitrate.  (*See*

19   Mem. of Ps. & As. in Supp. of Am. Pet. to Compel Arb., Jul. 27, 2007, at 7.)

20           By refusing to provide information about the independence of the firms that

21   Blackstone is proposing, Respondents have failed to comply with the Protection Agreement's

22   requirement that the parties jointly select a "nationally recognized independent public accounting

23   firm" to arbitrate this dispute.  (Decl. of Warren E. Spieker, Jr., Jun. 7, 2007 ("Spieker Decl."),

24   Exh. A ¶ 2(d).)  Without any information regarding Respondents' business relationships with the

25   accounting firms Respondents have proposed, it is impossible for Petitioners to determine

26   whether those firms are "independent" within the meaning of the Protection Agreement.  (Decl.

27

28   no doubt that the parties have failed to proceed, and that each party blames the other for this
     failure").

-7-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1    of Michael H. Steinberg, Jun. 7, 2007 ("Steinberg Decl."), Exh. H; *see also* § VI *infra*.).

2    Accordingly, Respondents have refused to arbitrate "in the manner provided for" by the

3    Protection Agreement under Section 4.[3]

4        **B.**    <u>**The Court Has Personal Jurisdiction Over Blackhawk Parent**</u>

5            **1.**    **Blackhawk Parent has sufficient contacts with California.**

6            Respondents assert that the Court lacks personal jurisdiction over Blackhawk

7    Parent because it did not exist when the Protection Agreement was executed.  (Opp'n. at 16.)

8    Respondents, however, ignore two key facts that clearly establish personal jurisdiction.[4]

9            **a.**    **Blackhawk Parent is EOP Trust's successor, and EOP Trust**
                    **has extensive contacts with California.**

10

11           Blackhawk Parent is the *successor* to EOP Trust, EOP's former general partner.

12   (Petition ¶ 31; Decl. of Timothy J. Cornell, Aug. 10, 2007 ("Cornell Decl."), Exh. C, at 6.)  In

13   the Blackstone Merger, EOP Trust merged with Blackhawk Acquisition Trust, which was later

14   liquidated into Blackhawk Parent.  (Cornell Decl. Exh. C, at 6.)  EOP Trust, which was

15   responsible for directing EOP's business affairs prior to the Blackstone Merger, was central to

16   (1) EOP's acquisition of Spieker Properties (and hence the many Protected Properties located in

17   California (Spieker Decl. Exh. A, at 141-43; Steinberg Reply Decl. Exh. E, at 138-42)); (2) the

18   negotiation of the Protection Agreement; (3) the negotiation of the Spieker Merger, which

19   partially occurred in California (Cornell Decl. Exh. A, at 43); and (4) the Blackstone Merger,

20

---

21        [3]    Respondents' reliance (Opp'n. at 13) on *Hartford Accident & Indem. Co.* v.

22   *Equitas Reins. Ltd.*, 200 F. Supp. 2d 102 (D. Conn. 2002), is misplaced.  In *Hartford*, the
plaintiff sent a letter to the defendants demanding that they agree to arbitrate the dispute at issue

23   within thirty days, but then "initiated . . . th[e] litigation before the time set by Hartford for the
arbitration defendants to accept or reject Hartford's written request to arbitrate had expired." *Id.*

24   at 109.  Unlike Respondents, the defendants in *Hartford* did not refuse to comply with any terms
of the agreement to arbitrate.  *See also Colt's Mfg. Co.* v. *Devteck Corp.*, 961 F. Supp. 382, 384-

25   85 (D. Conn. 1997) (denying Section 4 petition where defendant did not refuse to comply with
any terms of arbitration agreement).

26

27        [4]    The California personal jurisdiction statute determines whether jurisdiction over
Blackhawk Parent is proper, and "California's long-arm statute permits this Court to exercise
personal jurisdiction over nonresident defendants on any basis not inconsistent with the

28   California or United States Constitution." *Joe Boxer Corp.* v. *R. Siskind & Co.*, No. 98-4899,
1999 U.S. Dist. LEXIS 9622, *10 (N.D. Cal. Jun. 25, 1999).

-8-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1  which triggered EOP's obligations under the Protection Agreement to several former Spieker

2  Properties limited partners located in California (*see* Petition to Compel Arbitration, Jun. 8,

3  2007).

4          Respondents have not disputed — and cannot dispute — that EOP and EOP Trust

5  had extensive contacts with California that are relevant to the Petition.  Obviously, EOP manages

6  (and EOP Trust formerly managed) billions of dollars worth of real estate located in California.

7  (Steinberg Reply Decl. Exh. E, at 138-42.)  Simply put, Respondents cannot dispute jurisdiction

8  over Blackhawk Parent, EOP Trust's successor.  *See Richmond* v. *Madison Mgmt. Group, Inc.*,

9  918 F.2d 438, 455 (4th Cir. 1990) ("Because, as concluded above, there was evidence supporting

10  the imposition upon GHA of successor liability, it was proper for the district court to assert

11  personal jurisdiction over GHA."); *Hartog* v. *Jots, Inc.*, No. 03-2986, 2004 U.S. Dist. LEXIS

12  24267, *11-12 (N.D. Cal. Jan. 9, 2004) ("[A]s the successor-in-interest to McKinney &

13  Associates, this Court may exercise personal jurisdiction over Jot's if it can impute to Jot's the

14  previous purposeful availment of McKinney & Associates," which the court could do because

15  the "real estate of Jot's Resort, as well as the business operation," had passed "from McKinney

16  & Associates to Jot's Inc."); *No Touch N. Am.* v. *Blue Coral, Inc.*, No. 95-1103, 1997 U.S. Dist.

17  LEXIS 16153, *3 (C.D. Cal. May 30, 1997) (where defendant accepted assignment of trademark,

18  "by accepting this assignment, Hurand stepped into the shoes of Blue Coral, and Blue Coral's

19  acts are imputed to Hurand" for personal jurisdiction purposes).

20          **b.    Blackhawk Parent negotiated with the California-based former**
21          **Spieker Properties partners regarding the arbitration and the**
           **underlying dispute.**

22          Even if this Court decided to ignore the fact that Blackhawk Parent is the

23  successor to EOP Trust, that would not defeat personal jurisdiction.  While Respondents

24  recognize that "the Amended Petition alleges a disagreement about the interpretation of an

25  arbitration clause in the [Protection Agreement]" (Opp'n. at 16), Respondents fail to

26  acknowledge that Blackhawk Parent has been negotiating with Petitioners on behalf of both itself

27  and EOP throughout that entire dispute.  When Mr. Spieker — the former CEO of Spieker

28  Properties, who is based in California (Petition ¶ 23) — asserted his right to indemnification

-9-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1  under the Protection Agreement, Blackhawk Parent and its counsel extensively corresponded

2  with Mr. Spieker concerning both that obligation and the conduct of the potential arbitration.

3  (Spieker Decl. Exhs. C, F; Steinberg Decl. Exhs. B, E, H.)  Blackhawk Parent accordingly has

4  sufficient contacts with California to subject it to personal jurisdiction here.  *See U. S. Titan, Inc.*

5  v. *Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153 n.13 (2d Cir. 2001) (in petition to

6  compel arbitration case, personal jurisdiction over defendant proper in New York because "Zhen

7  Hua sent telex or facsimile communications directly to Titan concerning arbitration" in New

8  York); *nMotion, Inc.* v. *Envtl. Tectonics Corp.*, 196 F. Supp. 2d 1051, 1058-59 (D. Or. 2001)

9  (where defendant's "numerous contacts with Oregon over a period of at least several months . . .

10 . included telephone calls, e-mails, and paper correspondence," personal jurisdiction over

11 defendant in Oregon proper); *OKI Am.* v. *Tsakanikas*, No. 93-20728, 1993 U.S. Dist. LEXIS

12 19475, *8 (N.D. Cal. Dec. 6, 1993) ("Defendant Tsakanikas' contacts with this forum, which

13 included numerous correspondence by letter, facsimile and telephone to Plaintiff's counsel,"

14 subjected defendant to personal jurisdiction).

15              2.    **Blackhawk Parent has waived the right to contest personal
                     jurisdiction.**

16

17              Rather than moving to dismiss the Petition for lack of personal jurisdiction or

18 filing an answer asserting that defense, Blackhawk Parent chose to file a "memorandum in

19 opposition" raising that and other issues.  Accordingly, Blackhawk Parent has waived any right

20 to claim that the Court lacks personal jurisdiction over it.  *See* FED. R. CIV. P. 12(h)(1) ("A

21 defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion

22 under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule

23 15(a) to be made as a matter of course."); *Hartford Fire Ins. Co.* v. *Evergreen Org., Inc.*, 410 F.

24 Supp. 2d 180, 184 (S.D.N.Y. 2006) (because "the individual respondents appeared by counsel in

25 opposition to the motion for provisional relief," respondents to petition to compel arbitration

26 waived right to challenge personal jurisdiction); *see also* FED. R. CIV. P. 81(a)(3) ("In

27 proceedings under Title 9 U.S.C., relating to arbitration . . . these rules apply only to the extent

28 that matters of procedure are not provided for in those statutes.").

-10-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1    **C.    Venue Is Proper in This District[5]**

2        1.    **Venue is proper under 28 U.S.C. § 1291(a)(1) because the Court has personal jurisdiction over both Respondents.**

3

4        Under 28 U.S.C. § 1391(a)(1), venue is proper in "a judicial district where any

5    defendant resides, if all defendants reside in the same State." Further, Section 1391(c) provides

6    that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it

7    is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

8    Limited partnerships and limited liability companies, such as EOP and Blackhawk Parent, are

9    treated as corporations in determining their "residences" under Section 1391(a)(1). *See Wells* v.

10   *Cingular Wireless LLC*, No. 06-03191, 2006 U.S. Dist. LEXIS 73664, *4 (N.D. Cal. Mar. 6,

11   2007) (under Section 1391(a)(1), limited liability company "is a resident of California" where it

12   was subject to personal jurisdiction in California); *MacCallum* v. *N.Y. Yankees Pshp.*, 392 F.

13   Supp. 2d 259, 264 (S.D.N.Y. 2005) ("Applying the corporate residence standards of section

14   1391(c) to [defendant partnership], venue will be proper pursuant to section 1391(a)(1) so long

15   as this court has personal jurisdiction over [defendant].").

16       As Respondents do not contest that the Court has personal jurisdiction over EOP,

17   and the Court has personal jurisdiction over Blackhawk Parent (as described above), EOP and

18   Blackhawk Parent "reside" in this District under Section 1391(a)(1) and venue is proper here.

19       2.    **Venue is proper under 28 U.S.C. § 1391(a)(2) because most of the Protected Properties are located in this District.**

20

21       As yet another ground for the laying of venue, under Section 1391(a)(2), venue is

22   proper in a District in which "a substantial part of the property that is the subject of the action is

23   situated." 28 U.S.C. § 1391(a)(2). Of the 90 Protected Properties, 48 are located in this District.

24   (Spieker Decl. Exh. A, at 141-43; Steinberg Reply Decl. Exh. E, at 138-42.) The Protected

25   Properties are central to the dispute over EOP's indemnity obligations because that dispute

26

27

28

---

[5]    Respondents accuse Petitioners of "ignor[ing] their obligation to address Intradistrict Assignment" (Opp'n. at 16), but doing so in the Amended Petition was unnecessary because this action has already been assigned to a Division of the Court. *See* N.D. Cal. L.R. 3-2(c).

-11-

SULLIVAN & CROMWELL LLP

1  concerns whether the Blackstone Merger constituted a "direct or indirect sale, exchange or other

2  disposal" of the Protected Properties under the Protection Agreement. (Petition ¶¶ 27, 34-35.)

3  Thus, a substantial part of the property at issue in this action — *i.e.*, the Protected Properties —

4  is located in this District, and venue is proper here. *See Reilly* v. *Chambers*, 215 F. Supp. 2d

5  759, 764 (D. W. Va. 2002) (venue proper in West Virginia because "the very property that is at

6  the center of the parties' dispute is located in this State" and contract at issue was for sale of such

7  property); *Champion Int'l. Corp.* v. *Bennett Forest Indus., Inc.*, 637 F. Supp. 170, 171 (D. Mont.

8  1986) (venue proper in Montana because case concerned "purchase of certain real property and

9  related assets in Ravalli County, Montana").

10      **3.    Venue is proper under 28 U.S.C. § 1391(a)(2) because the Spieker
               Merger occurred, and this dispute arose, in this District.**

11

12          As yet another independent basis for venue, under Section 1391(a)(2), venue is

13  proper in "a judicial district in which a substantial part of the events or omissions giving rise to

14  the claim occurred." 28 U.S.C. § 1391(a)(2). Here, (1) most of the Protected Properties are

15  located in this District (Spieker Decl. Exh. A, at 141-43; Steinberg Reply Decl. Exh. E, at 138-

16  42); (2) the Spieker Merger was partially negotiated, and Spieker Properties was located, in this

17  District (Cornell Decl. Exh. A, at 43); (3) Blackhawk Parent and its counsel sent correspondence

18  concerning the underlying dispute and the potential arbitration to Mr. Spieker, acting on behalf

19  of the former Spieker Properties limited partners (many of whom are located in this District) and

20  their counsel, who are located in this District (Spieker Decl. Exhs. C, F; Steinberg Decl. Exhs. B,

21  E, H); and (4) EOP has refused to meet its indemnity obligations to the California-based former

22  Spieker Properties partners. Accordingly, a substantial part of the events or omissions giving

23  rise to Petitioners' claims occurred in this District. *See OKI Am.*, 1993 U.S. Dist. LEXIS 19475,

24  *10 (because "[t]he claim itself was a direct result of Defendant's repeated threats to institute

25  patent infringement litigation against Plaintiff" and "[t]hese threats were directed to this district"

26  although defendant was located outside district, venue was proper); *Largotta* v. *Banner

27  *Promotions, Inc.*, 356 F. Supp. 2d 388, 391 (S.D.N.Y. 2005) (venue proper in New York

28

-12-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1  regarding contract finalized outside New York because "at least one party to the conversations

2  (Largotta) was always in New York").

3          **4.      Respondents have waived the right to challenge venue.**

4          Respondents were required to move to dismiss this action for lack of venue or

5  assert that defense in an answer to preserve their right to contest venue.  Respondents have failed

6  to do so, and thus they cannot claim that venue is improper in this District.  *See* FED. R. CIV. P.

7  12(h)(1) ("A defense of . . . improper venue . . . is waived . . . if it is neither made by motion

8  under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule

9  15(a) to be made as a matter of course."); *Lynch* v. *Alaska Tanker Co., LLC*, No. 03-2484, 2004

10  U.S. Dist. LEXIS 22930, *8 (N.D. Cal. Nov. 4, 2004) (because "Defendant did not file its

11  motion to dismiss for improper venue within twenty days after being served with the complaint

12  as required by Federal Rule of Civil Procedure 12," defendant waived right to contest venue);

13  *see also* FED. R. CIV. P. 81(a)(3).

14      **D.      The Petition Is Proper Under the Tax Protection Agreement**

15          Respondents next assert that the Protection Agreement requires the issue of

16  whether the parties have selected a "nationally recognized independent public accounting firm"

17  to be arbitrated, and thus that this suit is improper.  (Opp'n. at 19.)  Blackstone's argument

18  disregards the Protection Agreement's plain language.

19          Section 2(a) of the Protection Agreement requires EOP "not to directly or

20  indirectly sell, exchange, or otherwise dispose of any Protected Property."  (Spieker Decl. Exh.

21  A ¶ 2(a).)  Further, "[i]f [EOP] has breached or violated the covenant set forth in Paragraph

22  2(a)," the parties agreed "to negotiate in good faith to resolve any disagreements regarding any . .

23  . breach or violation and the amount of damages" resulting from EOP's breach of that covenant.

24  (*Id.* ¶ 2(d).)  If "any such disagreement," *i.e.*, a disagreement over whether EOP breached its

25  obligations under Section 2(a), "cannot be resolved," the parties "shall jointly retain a nationally

26  recognized independent public accounting firm . . . to act as an arbitrator to resolve as

27  expeditiously as possible all points of any such disagreement . . . ."  (*Id.*)  In other words, the

28  Protection Agreement only provides that the arbitrator is to resolve "disagreements" concerning

-13-

1   the existence and extent of *EOP's indemnity obligation* — not "disagreements" concerning the

2   arbitrator's own independence from the parties.

3          This action does not concern the existence or extent of EOP's indemnity

4   obligation, which are issues for the arbitrator to decide — it is about the selection of the

5   arbitrator to decide those issues.  Accordingly, the Protection Agreement does not require the

6   arbitrator to determine its own independence.  *See Cummings* v. *FedEx Ground Pkg. Sys.*, 404

7   F.3d 1258, 1262 (10th Cir. 2005) (because "[b]y its terms, the arbitration clause in the Operating

8   Agreement only covers acts by [defendant] to terminate the Operating Agreement," and plaintiff

9   did not allege that defendant terminated the agreement, plaintiff's claim was non-arbitrable);

10  *Tracer Rsrch. Corp.* v. *Nat'l. Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (where

11  agreement provided for arbitration "in the event any controversy or claim arising out of this

12  Agreement cannot be settled by the parties," tort claim not arbitrable because it did not "arise out

13  of the Agreement"); *Mediterranean Enters.* v. *Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.

14  1983) (where arbitration clause provided that "[a]ny disputes arising hereunder or following the

15  formation of joint venture shall be settled through binding arbitration," tort claims, which did not

16  "arise under" the agreement, were not arbitrable).[6]

17         Moreover, Section 5 of the FAA specifically authorizes the Court to order

18  Respondents to follow the arbitrator selection method designated by the parties.  *See* 9 U.S.C. § 5

19  ("If in the agreement provision be made for a method of naming or appointing an arbitrator . . .

20  and any party thereto shall fail to avail himself of such method, . . . then upon the application of

21

22       [6]    By contrast, Respondents' authorities (Opp'n. at 19-20) concerned arbitration
     clauses requiring the arbitrator to decide *all* issues concerning the contract — not just disputes
23   regarding the respondent's liability or damages.  *See Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S.
     444, 451-52 (2003) (because contract required arbitrator to decide "all disputes, claims, or
24   controversies arising from or relating to this contract or the relationships which result from this
     contract," parties' "dispute about . . . whether [the agreement] forbids the use of class arbitration
25   procedures[] is a dispute 'relating to this contract'" and thus arbitrable); *Howsam* v. *Dean Witter
     Reynolds*, 537 U.S. 79, 86 (2002) (where NASD rule stated that "arbitrators shall be empowered
26   to interpret and determine the applicability of all provisions under this Code," Code
     interpretation issue was for arbitrator to decide); *Trustmark Ins. Co.* v. *Fire & Casualty Ins. Co.*,
27   No. 02 C 0934, 2002 U.S. Dist. LEXIS 7923, *3 (N.D. Ill. May 2, 2002) (where arbitration
     clause provided that "in the event of any dispute . . . with respect to this Contract, it is hereby
28   mutually agreed that such dispute or difference of opinion shall be submitted to arbitration,"
     arbitrator required to decide hearing location).

-14-

REPLY IN SUPP. OF PETITION
TO COMPEL ARBITRATION

1   either party to the controversy the court shall designate and appoint an arbitrator . . . ."); *ATSA of*

2   *Cal, Inc.* v. *Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1987) (directing "the parties [to]

3   select an arbitral panel without recourse of the ICC unless they are unable to agree upon an

4   umpire," as "[u]nder 9 U.S.C. § 5, the parties' method of appointing arbitrators must be

5   followed"); *Fireman's Fund Ins. Co.* v. *Sorema N. Am. Reins. Co.*, No. 94-3617, 1995 U.S. Dist.

6   LEXIS 22236, *8-9 (N.D. Cal. Sept. 7, 1995) (granting petitioner's "request for a completed

7   disclosure statement from each appointed and nominated arbitrator . . . in accordance with the

8   terms of the agreement" because "the court has jurisdiction to regulate disclosures by proposed

9   arbitrators based on its ability to enforce the terms of the agreement"). Respondents' assertion

10  that arbitrator selection is presumptively "made outside of court" (Opp'n. at 20) cannot be

11  squared with the Court's explicit statutory authority to enforce the parties' arbitrator selection

12  procedure.[7]

13  Dated: August 17, 2007
          Palo Alto, California                    Respectfully submitted,

14

15
                                                   _____
16                                                 Michael H. Steinberg (CSB 134179)
                                                   SULLIVAN & CROMWELL LLP
17                                                 1888 Century Park East
                                                   Los Angeles, California  90067
18                                                 Telephone:    (310) 712-6600
                                                   Facsimile:    (310) 712-8800

19                                                 Christopher R. Edgar (CSB 229771)
                                                   SULLIVAN & CROMWELL LLP
20                                                 1870 Embarcadero Road
                                                   Palo Alto, California  94303
21                                                 Telephone:    (650) 461-5600
                                                   Facsimile:    (650) 461-5700

22
                                                   *Attorneys for Plaintiffs/Petitioners Joel*
23                                                 *Benoliel, et al.*

24

_____

25      [7]     Respondents point out that "[a]rbitration organizations . . . have devised widely-
    recognized procedures for selection of an arbitrator" (Opp'n. at 20 n.6), but this is a *non sequitur*.
26  The Protection Agreement does not state that an "arbitration organization" will select the
    arbitrator — it provides that the parties will do so "jointly" (Spieker Decl. Exh. A ¶ 2(d)) — and
27  Respondents have failed to participate meaningfully in that joint selection process by refusing to
    disclose their relationships with the accounting firms they propose. Nor do Respondents explain
28  why an "arbitration organization" rather than the accounting firm the parties select should
    determine the rules under which to proceed.

                                                   -15-